**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BACKPAGE.COM, LLC,

                Plaintiff,

     v.

THOMAS J. DART, Sheriff of Cook County, Illinois,

                Defendants.

No. _____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

For its complaint, Plaintiff Backpage.com, LLC ("Backpage.com") alleges as follows:

## **INTRODUCTION**

1.      This is an action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin, declare unlawful and recover damages for the actions of Cook County Sheriff Thomas J. Dart ("Sheriff Dart") demanding that credit card associations sever business relationships with Backpage.com, LLC and discontinue allowing use of their cards for purchases on the Backpage.com website, thereby effecting an informal extralegal prior restraint of speech without due process in violation of the First and Fourteenth Amendments and the Communications Decency Act ("CDA"), 47 U.S.C. § 230.

2.      For over six years, Sheriff Dart has pursued a campaign against online classified advertising websites—first Craigslist and then Backpage.com—demanding they shut down portions of their sites for adult-oriented ads posted by users.  At every turn, Sheriff Dart has been stymied by the Constitution, federal law, and court decisions holding that such ads are protected speech and that websites are immune from state-law civil or criminal liability.

3.      In 2009, Sheriff Dart sued Craigslist, alleging the website was a public nuisance and facilitated prostitution, but this Court summarily dismissed the action. *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009).  When, in 2010, Craigslist caved in to quasi-official pressure and removed its "adult services" category, Sheriff Dart shifted his focus to Backpage.com, threatening criminal investigations and prosecution unless it also eliminated its adult category and escort ads on the site.  Consistent with Backpage.com's longstanding efforts to preclude improper ads and assist law enforcement, it sought to work with Sheriff Dart's office on screening and security measures, including requiring the use of credit cards for adult ads, which Sheriff Dart requested at the time and Backpage.com has long done.  But Backpage.com refused to capitulate to the Sheriff's demands for censorship.

4.      Sheriff Dart has acknowledged that cases interpreting federal law preclude his efforts to censor Backpage.com, but decries the law as "antiquated," "nonsensical," and an "absurdity."  Thus, he decided to go "out-of-the-box" by disregarding the law and instead pressuring credit card companies—American Express, Visa and MasterCard—to cut off use of their cards for purchases on Backpage.com, with the aim of eliminating the website's ability to do business altogether.  Because of Sheriff Dart's officious "demand" that the card companies "defund" and "cease and desist" dealings with Backpage.com, Visa and MasterCard blocked use of their cards for any and all purchases on the website.  American Express did the same for purchases in the adult category.

5.      Sheriff Dart's actions are an unconstitutional prior restraint of speech without legal authority or due process. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).  The First Amendment precludes a government official from banning a forum of speech simply because he dislikes it.  Prior restraints are presumptively unconstitutional and can be imposed

only in the most exigent of circumstances, requiring the least restrictive means to further a compelling state interest and requisite procedural safeguards. Sheriff Dart's actions do not come close to passing constitutional muster.

6. Sheriff Dart's actions to cripple Backpage.com and all speech through the site are an especially pernicious form of prior restraint. He has achieved his purpose through false accusations, innuendo, and coercion, whereas, if he had brought suit directly or Cook County had attempted to pass a law to shut down the website, Backpage.com would have had a fair opportunity to respond and defeat such efforts, given well-established law. Backpage.com received no notice or opportunity to be heard before card services were terminated. Moreover, Sheriff Dart's actions have not only infringed Backpage.com's rights to publish and distribute speech, but the rights of millions of the website's users to post and receive protected speech.

7. Accordingly, in this action, Backpage.com seeks declaratory and injunctive relief and damages, including a declaration that Sheriff Dart's actions are unlawful and unconstitutional; an injunction requiring him to cease such actions and retract his letters to the credit card associations; a preliminary injunction returning the parties to the status quo before the credit card companies precipitously terminated services; damages to compensate Backpage.com for loss of revenues and goodwill and infringement of its constitutional rights; and punitive damages to provide punishment and as deterrence for Sheriff Dart's intentional conduct recklessly indifferent to protected rights.

## PARTIES

8. Plaintiff Backpage.com, LLC is a limited liability company, organized and existing under the laws of Delaware, with its principal place of business in Dallas, Texas.

Backpage.com operates an online classified advertising service available to the public in all fifty states and the District of Columbia.

9. Defendant Thomas J. Dart is, and was at all times relevant to this Complaint, the duly elected Sheriff of Cook County, Illinois. He is the highest-ranking law enforcement official for the County, whose powers and duties include acting as the "conservator of the peace" in the County to "prevent crime and maintain the safety and order of the citizens," as well as powers to arrest and refer offenders for prosecution. 55 ILCS 5/3-6021. Sheriff Dart is responsible for establishing and implementing policies for the County as related to his duties for public safety and policing. Sheriff Dart is sued in his official and personal capacities. *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000).

## JURISDICTION AND VENUE

10. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and the Communications Decency Act, 47 U.S.C. § 230.

11. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

12. This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

13. This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

14. This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

15.     Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this District and, on information and believe, the Defendant resides in this District.

## FACTUAL ALLEGATIONS

**A.  Background Regarding Backpage.com.**

16.     Backpage.com is an online classified advertising service, located at www.backpage.com, which began providing service in 2004.

17.     Backpage.com is available to users throughout the United States and is organized geographically by states and municipalities.  Thus, in Illinois for example, users can post and review ads for Bloomington, Carbondale, Chambana, Chicago, Decatur, La Salle County, Mattoon, Peoria, Rockford, Springfield, and/or Western Illinois.

18.     Users of Backpage.com may post and review ads in a number of categories (*e.g.*, local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, dating, adult and services) and subcategories.  Users post over six million ads every month. Backpage.com is the second-largest classified ad website in the United States, after Craigslist.

19.     Users provide all the content for ads they post on Backpage.com using an automated interface.  Backpage.com does not dictate or require any content, although it does block and remove user-supplied content (discussed below).

20.     Users may post individual ads for free in most categories, although up to July 6, 2015, Backpage.com charged for certain ads and services.  For example, Backpage.com charged $5-$17 for users to post in the adult category and $1 for dating ads, with charges payable by major credit or debit cards.  These charges discouraged abusive posting and provided data to help track users engaged in illegal activities.  Indeed, law enforcement officials, including Sheriff

Dart, have urged that classified ad websites such as Backpage.com should *require* payment by credit cards because of the user information this provides.

21. For ads of all types, until July 6, 2015, Backpage.com also charged users for ads posted nationally or in multiple markets, and for more prominent or repeat-ad placement.

22. The three major credit card companies—American Express, Visa and MasterCard—allowed use of their cards on Backpage.com and permitted banks to provide merchant services to the company for eleven years, from 2004-2015.

23. Backpage.com prohibits illegal content and activity on its website and takes extensive steps to prevent such misuse, especially to guard against any form of human trafficking or child exploitation. For example, Backpage.com's Terms of Use prohibit any ads for illegal services or posting "any material … that exploits minors in any way." http://chicago.backpage.com/classifieds/TermsOfUse. Before users can post or view ads in the adult category, they must affirm they are at least eighteen years old and accept the site's Posting Rules, which mirror the prohibitions of the Terms of Use and also state that any suspected child exploitation will be reported for law enforcement investigation. In addition, every ad on the website contains a link for users to report if they believe the ad may be improper, emphasizing that concerns about any possible threat to a child should also be reported to abuse@backpage.com.

24. Links are also provided at many places on the site to the Cybertipline of the National Center for Missing and Exploited Children ("NCMEC") and a User Safety page addressing the issue of human trafficking. In addition, Backpage.com prominently features an ad from a national support and rescue organization, Children of the Night ("Want Out? National Free Help 24/7: 1-800-551-1300. Tired of Turning tricks? Pimps Don't Care. We Do!").

25.     Backpage.com also takes extensive measures to police user posts.  This multi-tiered system includes automated filtering and two levels of manual review by over 100 personnel.  The filter scans for more than 100,000 terms, phrases, URLs and email and IP addresses.  The first manual review assesses ads in the adult and dating categories before they are allowed to appear on the site, and the second level examines nearly every such ad after posting, as a double-check for potentially improper content.  Through its review processes, Backpage.com blocks or removes over a million ads per month and immediately reports any ad that may concern child exploitation to NCMEC (approximately 300 per month).

26.     Backpage.com regularly works with local, state and federal law enforcement officials in connection with investigations and prosecutions, including responding to subpoenas and other information requests (most within 24 hours), providing training to law enforcement officials, and removing and blocking posts at their request.  In some instances, Backpage.com personnel conduct additional Internet research to provide law enforcement further information to assist in rescuing victims and arresting and prosecuting criminals.  Law enforcement officials often commend Backpage.com for its support and cooperation, and that includes praise from Cook County officials.

**B.  Sheriff Dart's Crusade Against Online Adult-Oriented Advertising.**

27.     On information and belief, Sheriff Dart began contacting Craigslist in 2007 objecting to its "erotic services" category, which at the time allowed users to post adult-oriented ads.  In March 2009, Sheriff Dart filed a civil action in this Court against Craigslist, *Dart v. Craigslist, Inc.*, No. 09 C 1385 (N.D. Ill. Mar. 5, 2009), claiming the erotic services section constituted a public nuisance and seeking an injunction to force Craigslist to eliminate adult-oriented ads.  The Court dismissed the suit under Fed. R. Civ. P. 12(c).  It held that Craigslist

was immune from liability under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, which provides that online services cannot be "treated as the publisher or speaker of any information provided by another information content provider," *id.* § 230(c)(1), *i.e.,* users who post ads on Craigslist. *Dart v. Craigslist*, 665 F. Supp. 2d at 961. As the Court stated, online services do not "cause" postings except "in the sense of providing a place where people can post," they "are not culpable for 'aiding and abetting' their customers who misuse their services to commit unlawful acts," and having an adult services category "is not unlawful in itself nor does it necessarily call for unlawful content." *Id.* at 966, 968-69. The Court concluded:

> Sheriff Dart may continue to use Craigslist's website to identify and pursue individuals who post allegedly unlawful content. But he cannot sue Craigslist for their conduct.

*Id.* at 969 (internal citations and footnote omitted).

### C. After Craigslist Succumbed to Public Pressure Tactics, Sheriff Dart Shifted His Crusade to Backpage.com.

28. In September 2010, Craigslist shut down its adult services category in response to public pressure from a group of state attorneys general (after initially resisting the pressure as improper censorship). Less than a week later, the AGs targeted Backpage.com, and Sheriff Dart joined, with his office announcing that it had "focused on Backpage.com as the new battleground."

29. In January 2011, Sheriff Dart's office wrote Backpage.com stating that it had been conducting "undercover online investigations" of the website, had determined "the site is being openly used as a conduit for illegal prostitution activity," and insisted that Backpage.com be brought "into legal compliance" by "remov[ing] the Personals and Adults sections of [the] website."

30.     Sheriff Dart's office wrote Backpage.com again in March and June, 2011, demanding, among other things, that Backpage.com "[r]equire posts in the Adults section be paid using credit cards" and provide customers' "identifying information to law enforcement agencies upon request."   Backpage.com responded to the Sheriff's office by explaining its screening procedures and cooperation with law enforcement, noting that the website *did* require payments by credit or debit cards and routinely provided identifying information from cards in response to valid law enforcement requests.  Following meetings with Backpage.com personnel, the Sheriff's office wrote:   "We all came away impressed not only with the work done so far by [Backpage.com], but also with [your] candor and sincerity …."

31.     Nonetheless, in January 2012, Sheriff Dart's office returned to its demand that Backpage.com eliminate the adult category, threatening prosecution under Illinois's human trafficking statute, 720 ILCS 5/10-9, if Backpage.com did not "immediately cease and desist[]." Sheriff Dart also made public statements, asserting that "Backpage is a conduit to criminality" and "need[s] to be held accountable."

32.     In January 2014, Sheriff Dart wrote Backpage insisting it respond to a twelve-page list entitled "Request for Information and Site Modification," which, among other things, demanded that Backpage.com "[r]equire user[s] to pay fees with major credit card."

33.     In response to Sheriff Dart and other politicians' demands that it shutter the adult category on its website, Backpage.com has steadfastly maintained that censorship is not a solution to human trafficking or child exploitation, but rather that law enforcement and other authorities should work with websites to prevent, investigate and prosecute criminal activity and to rescue victims.

**D. Cases Establish that Escort Ads on Backpage.com Are Protected Speech Under the First Amendment and CDA Section 230.**

34.     While Sheriff Dart continued his vendetta, legislatures in three other states—Washington, Tennessee, and New Jersey—passed criminal laws targeting Backpage.com.  In each instance, federal courts enjoined the laws, finding them unconstitutional under the First Amendment and preempted by Section 230 of the CDA.  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 805 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 23, 2013).  Noting that escort ads have long been permitted (and escort services are licensed and regulated in many states), these cases held that the states' efforts to regulate or effectively block such ads "would likely chill protected speech."  *McKenna*, 881 F. Supp. 2d at 1282.  The courts rejected arguments that the laws only prohibited advertisements for illegal transactions and instead found that they were overbroad and could not survive strict scrutiny.  *Hoffman*, 2013 WL 1249063, at *8.  Further, the laws violated CDA Section 230 because they sought to impose liability on websites for publishing third-party content, they "would encourage websites either to restrict speech or to relax their current self-policing," and Section 230 preempts all state civil *and criminal* laws.  *McKenna*, 881 F. Supp. 2d at 1273-75; *Cooper*, 939 F. Supp. 2d at 825.  As the Tennessee court summarized:

> Child sexual exploitation is an evil that states have an undisputed interest in dispelling.  However despicable this evil, though, the Constitution stands as a shield against broad assaults by states on the rights of their citizens.  The Constitution tells us that—when freedom of speech hangs in the balance—the state may not use a butcher knife on a problem that requires a scalpel to fix.

*Cooper*, 939 F. Supp. 2d at 813. In all three cases, the courts ultimately entered permanent injunctions and awarded Backpage.com attorneys' fees. *See, e.g.*, *Backpage.com, LLC v. Cooper*, 2013 WL 1249063 (M.D. Tenn. Mar. 27, 2013).

35. More recently, a federal court in Massachusetts barred tort claims against Backpage.com by plaintiffs who claimed they were victimized because of ads that appeared on the site. *Doe v. Backpage.com, LLC*, 939 F. Supp. 2d 805 (D. Mass. 2015). Consistent with *Dart v. Craigslist* and *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (2011), the court held Backpage.com immune under Section 230.

**E. Sheriff Dart's Admissions That He Cannot Censor Backpage.com Under the Law.**

36. Sheriff Dart is well aware of the federal law and cases—beginning with his own failed suit against Craigslist—holding that online escort ads are protected speech and governmental authorities cannot force websites to ban such ads. He has admitted this by railing that "Courts continue to follow antiquated laws to the point of nonsensical outcomes" and "absurdity," and asserting that "Congress is too hamstrung to act" to change "outdated language in the Communications Decency Act." *See* Dart Letter to Charles W. Scharf, CEO of Visa, Inc. (June 29, 2015), attached hereto as <u>Exhibit B</u>. Indeed, in June 2014, Sheriff Dart joined Senator Mark Kirk to propose that federal law be changed, publicly asserting their purpose was to "target" and "combat online advertisers like Backpage.com." Senator Kirk's proposed legislation was not enacted, and, as reported in the press, presented "thorny free speech concerns." *See* Juan Perez Jr., *Kirk joins Cook officials in push to fight Internet sex trade*, CHI. TRIB. (Mar. 24, 2014), http://articles.chicagotribune.com/2014-03-24/news/chi-kirk-joins-cook-officials-in-push-to-fight-internet-sex-trade-20140324_1_backpage-com-mark-kirk.

**F. Sheriff Dart's Alternative Tack to Shut Down Backpage.com By Cutting Off Credit Card Services.**

37.     As Sheriff Dart's spokesman has admitted, "[a]fter the legislative and litigious efforts failed," his office decided it "needed to come up with an out-of-the-box idea," and "looked to the financial route," recognizing that transactions on the website "would simply not be possible if Visa and MasterCard would say 'no more.'"  Kim Bellware, *Credit Card Companies Abandon Backpage.com Over Sex Trafficking Complaints*, Huffington Post (July 1, 2015), http://www.huffingtonpost.com/2015/07/01/backpagecom-credit-cards_n_ 7705708.html. The Sheriff's office then "moved 'full speed ahead' and devoted a team to working 'almost full-time' on the effort." *Id.*

38.     On June 29, 2015, Sheriff Dart sent letters to the CEOs of Visa and MasterCard in which he demanded and indicated he sought to compel them to "defund" and "sever ties with Backpage.com."  His press release about the letters said this expressly:

> SHERIFF DART'S DEMAND TO DEFUND SEX TRAFFICKING COMPELS
> VISA AND MASTERCARD TO SEVER TIES WITH BACKPAGE.COM

Press Release, Cook County Sheriff (July 1, 2015), attached hereto as <u>Exhibit A,</u> http://www.cookcountysheriff.com/press_page/press_BackPage_07_01_2015.html.

39.     The letters left no doubt about Sheriff Dart's demand, his threatened pressure and the consequences if the card associations did not accede.  Writing under his letterhead as Cook County Sheriff, he insisted the companies "immediately cease and desist from allowing your credit cards to be used to place ads on … Backpage.com."  *See* Ex. B (Visa letter); *see also* Dart Letter to Ajaypal Banga, President and CEO of MasterCard, Inc. (June 29, 2015), attached hereto as <u>Exhibit C</u>.  He wrote that his office "ha[d] objectively found" that Backpage.com "promote[s] prostitution and facilitate[s] sex trafficking," with no support for this statement and despite his

- 12 -

knowledge the site actively works to prevent trafficking or exploitation and regularly works with law enforcement (including Sheriff Dart's office) to combat it. Noting that he is the county authority "charged with eradicating such trafficking," the Sheriff not-subtly alluded to the card associations' "legal dut[ies]" to file "Suspicious Activity Reports," suggested they could also be required "to alert law enforcement authorities" of other possible problems, and made sure his threat was plain by citing statutes imposing criminal penalties for money laundering, allowing termination of a financial institution's status as an insured depository institution, and permitting investigations and enforcement actions   Sheriff Dart's letter also made clear he intended to continue oversight of the card associations by asking each company to identify a contact person "[w]ithin the next week." *See* Exs. B, C. And, Sheriff Dart has stated that the letters were only a part of a "larger campaign Cook County planned to launch [to] pressure the credit card companies." Tierney Sneed, *Under Pressure, Major Credit Cards Cut Ties With Backpage.com Over Sex Ads*, Talking Points Memo (July 1, 2015), http://talkingpointsmemo.com/news/mastercard-dumps-backpage; *see also* Aamer Madhani, *Backpage.com Thumbs Nose at Sheriff After Visa, MasterCard Cut Ties*, USA TODAY (July 9, 2015) (reporting that Dart wrote the U.S. Postal Service chief inspector to attempt to block users from buying credits for use on Backpage.com by mailing checks to the company), http://www.usatoday.com/story/money/              2015/07/09/backpage-free-adult-services-ads-mastercard-visa/29931651/.

40.    In less than 48 hours, MasterCard and Visa both announced they were terminating card services and would cease doing business with Backpage.com. Sheriff Dart wrote to the companies on Monday, June 29, 2015, and, as stated in a press release from his office, "[b]y

Tuesday afternoon, MasterCard agreed to disassociate itself from Backpage, with Visa following suit Wednesday morning." *See* Ex. A.

41.     Visa and MasterCard acknowledge they banned use of their cards on Backpage.com and terminated merchant services to the company because of Sheriff Dart's demands and compulsion.  In a press statement, MasterCard stated it terminated card services for Backpage.com because of the Sheriff's letter, regarding it as having "confirmed" "illegal or brand-damaging activities."   Aamer Madhani, *Under Pressure, MasterCard Stops Doing Business with Backpage.com*, USA TODAY (July 1, 2015), http://www.usatoday.com/story/money/2015/06/30/mastercard-ceases-doing-business-backpage/29536177/.     Visa wrote to Backpage.com's acquiring bank directing that it could no longer process transactions because Visa had "received allegations from US law enforcement that the merchant backpage.com is linked to child prostitution and human trafficking" and had been requested to impose an "immediate close down."  *See also* Mathew Zeitlin*, Backpage.com Cut Off From Credit Card System Over Sex Trafficking Claims*, BuzzFeed (July 1, 2015), http://www.buzzfeed.com/matthewzeitlin/backpagecom-cut-off-from-credit-card-networks#.uww892ZwD.

42.     Backpage.com received notice from its acquiring banks and credit card processors on July 1 and 2, 2015, that they could no longer process Visa and MasterCard transactions and were terminating their merchant agreements for Backpage.com effective immediately.

43.     On information and belief, Sheriff Dart's office previously contacted American Express and pressured it to terminate use of its cards on Backpage.com as well.  Bellware, *Credit Card Companies Abandon Backpage.com*, Huffington Post (July 1, 2015) ("Dart's office had previously reached out to American Express, which already complied.").  On April 30, 2015, American Express informed Backpage.com it was disallowing use of its cards for any purchases

in the adult category of the website. American Express did not indicate its reason for terminating, but Sheriff Dart has since stated that he contacted and caused American Express's decision.

44. MasterCard has also listed Backpage.com as a terminated merchant on the Member Alert to Control High-Risk (MATCH) file. This list, maintained jointly by MasterCard and Visa, prevents processing of credit card payments worldwide for any listed merchant, now including Backpage.com. Thus, because of Sheriff Dart's actions, Backpage.com is barred from credit card services of any of the three largest card companies or any acquiring banks or credit processing companies.

### G. Effects of Sheriff Dart's Actions and Coercion of MasterCard and Other Card Associations on Backpage.com and Its Users.

45. Sheriff Dart's actions and the credit card companies' acquiescence to his pressure have cut off nearly all revenue to Backpage.com (leaving only Bitcoin as a means of payment, which accounts for a small percentage of purchases on the website). This affects not only adult escort ads but also other ads for dating, housing, services, trades, and sales of goods, among others. In his zeal to prevent the few improper ads that users may post despite Backpage.com's efforts to prevent them, Sheriff Dart has taken it upon himself to eliminate the website altogether.

46. Beginning on July 6, 2015, Backpage.com ceased charging for ads after the credit card companies terminated as a result of Sheriff Dart's demands. Backpage.com began offering users a free promotional code in some areas ("FREESPEECH") to allow them to post ads free of charge until Backpage.com can obtain relief for Sheriff Dart's actions. It later allowed users to post ads free of charge without inputting a promotional code. Backpage.com took this step

because disrupting or precluding its ability to provide services to users severely harms the website's goodwill and users' rights to post speech on the site.

47.     Providing services for free can only be a temporary measure, however.  All publishers need revenues to survive, and the First Amendment precludes coercive government actions to choke off revenues to silence speech it disfavors.  Sheriff Dart's actions and the termination of credit card services have also harmed Backpage.com's efforts to police and preclude improper ads.  Imposing charges and requiring users to pay by credit cards discourages improper postings and provides information for law enforcement.  Without such charges, the volume of ads (including spam) increases and Backpage.com necessarily must devote resources and personnel to address these problems, detracting from its efforts to police the website.

## CLAIMS FOR RELIEF

### COUNT I
### Prior Restraint of Speech
### (First and Fourteenth Amendments, 47 U.S.C. § 230, and 42 U.S.C. § 1983)

48.     Backpage.com incorporates all previous paragraphs as if fully set forth herein.

49.     Backpage.com provides an online forum for speech of millions of users across the country.  Escort advertising and adult-oriented postings are protected speech under the First Amendment and Section 230 of the Communications Decency Act, as are ads in all of the many other categories on the Backpage.com website.

50.     Sheriff Dart and Cook County could not lawfully enact an ordinance to shut down the Backpage.com website, as such a law would be overbroad and would not survive strict scrutiny under the First Amendment.  Sheriff Dart also cannot bring suit to shutter Backpage.com or the adult category under state civil or criminal laws, as he well knows from his unsuccessful suit rejected in by this Court in *Dart v. Craigslist*, 665 F. Supp. 2d at 961.

51.     Sheriff Dart's actions constitute an extralegal and unconstitutional prior restraint of speech.  As established by *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), government officials cannot censor or chill speech through an informal process of coercive threats or insinuation.

52.     Prior restraints of speech are "the essence of censorship," *Near v. Minnesota*, 283 U.S. 697, 713 (1931), "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and "bear[] a heavy presumption against … constitutional validity."  *Bantam Books*, 372 U.S. at 70.

53.     Sheriff Dart's actions do not fit within any of the narrowly defined exceptions to the prohibition against prior restraints.  *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975).

54.     Sheriff Dart cannot establish that his actions in demanding that the credit card companies "defund" Backpage.com were the least restrictive means to accomplish a compelling state interest.  *See United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000).  If allowed to stand, Sheriff Dart's actions will eliminate an entire forum for online speech and millions of permissible and constitutionally protected posts in order to target a handful that may be unlawful but cannot be detected or blocked.

55.     Sheriff Dart's efforts to close down an entire forum for online speech are grossly overbroad and are governed by no discernable legal standards.  *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (1988).

56.     Sheriff Dart's actions also violate Section 230 of the CDA, 47 U.S.C. § 230, as he has no right or authority to preclude or seek to prosecute Backpage.com under state law for publishing third-party content.

57.     As a direct result of Sheriff Dart's actions, Backpage.com has suffered and absent relief from this Court will continue to suffer damages for lost revenue, harm to its business and goodwill, and infringement and deprivation of its rights under the Constitution and federal law. Also as a direct result of Sheriff Dart's actions, if not remedied, users of Backpage.com have suffered and will continue to suffer infringement and deprivation of their constitutional rights.

58.     At all times and for all actions as alleged in this Complaint, Sheriff Dart acted under color of state law. His actions have resulted in deprivation of rights and privileges secured by the Constitution and federal laws of Backpage.com and its millions of users. Accordingly, this Court may and should grant declaratory and injunctive relief, damages and attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

### COUNT II
### Deprivation of Due Process of Law
### (First and Fourteenth Amendments and 42 U.S.C. § 1983)

59.     Backpage.com incorporates all previous paragraphs as if fully set forth herein.

60.     A prior restraint of speech, if otherwise permissible, may be imposed only if it provides for requisite procedural safeguards to guard against suppressing constitutionally protected speech. *Southeastern Promotions*, 420 U.S. at 559; *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). Government actions effecting a prior restraint require a prompt judicial determination of whether speech is unlawful or protected, and, more specifically: (1) "the burden of instituting judicial proceedings, and of proving that material is unprotected, must rest on the censor," (2) "any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo," and (3) "a prompt final judicial determination must be assured." *Southeastern Promotions*, 420 U.S. at 560.

61.     Sheriff Dart's actions to accomplish *ultra vires* informal censorship had none of the procedural safeguards constitutionally required.  He did not institute any judicial proceeding to determine that *all* speech on Backpage.com is unlawful; indeed, when he filed a proceeding against Craigslist six years ago, his arguments were rejected by this Court.  Sheriff Dart has not indicated or proposed that he will file a judicial action to determine the legality of his actions, but instead has touted that he has achieved his objective extra-judicially.  Backpage.com's only recourse to obtain a prompt judicial determination is to bring this action and ask the Court to grant immediate relief.

62.     And, importantly, Sheriff Dart's actions and the informal prior restraint he has caused did not preserve the status quo, but rather destroyed it.  The status quo when Sheriff Dart set out to pursue his "out-of-the-box" unlawful actions was that the credit card companies allowed use of their cards for purchases on Backpage.com, as they had for over eleven years.  Backpage.com and its users are entitled to appropriate relief from this Court to reinstate the status quo to remedy Sheriff Dart's unlawful and unconstitutional actions.

63.     Sheriff Dart's actions have deprived Backpage.com due process of law.  Sheriff Dart gave Backpage.com no notice or opportunity to be heard before contacting Visa and MasterCard to demand they "cease and desist" providing services.  Sheriff Dart's actions have stigmatized and threaten to preclude Backpage.com from doing business altogether, which infringes its liberty and property interests under the Fourteenth Amendment.

64.     As a direct result of Sheriff Dart's actions, Backpage.com has suffered and absent relief from this Court will continue to suffer damages for lost revenue, harm to its business and goodwill, and infringement and deprivation of its constitutional rights.  In this regard, too,

Sheriff Dart acted under color of state law, and this Court should grant declaratory and injunctive relief, damages and attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

## COUNT III
### Declaratory Judgment and Preliminary and Permanent Injunctions
### (28 U.S.C. §§ 2201 and 2202; Fed. R. Civ. P. 57 and 65)

65.      Backpage.com incorporates all previous paragraphs as if fully set forth herein.

66.      This action presents an actual case or controversy between Backpage.com and Sheriff Dart concerning rights under the Constitution and federal law.  Declaratory relief is therefore necessary and appropriate.

67.      Injunctive relief is necessary and appropriate in this action because Sheriff Dart's actions are unconstitutional, violate federal law, and have caused and will continue to cause irreparable harm to Backpage.com and its users unless enjoined.  Sheriff Dart has continued his campaign to shut down Backpage.com even after succeeding with his demand that Visa and MasterCard terminate services.

68.      Immediate injunctive relief is also appropriate and fundamentally important in this case.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Absent immediate preliminary relief to enjoin and correct Sheriff Dart's actions, his informal and extralegal prior restraint may succeed by making it impossible for Backpage.com to continue doing business and offering its website as a forum for users across the country.

69.      Accordingly, with this Complaint, Backpage.com is also filing its Motion for Temporary Restraining Order and Preliminary Injunction, urging that the Court should grant emergency and immediate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Backpage.com respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Sheriff Dart and provide the following relief:

A.    A temporary restraining order and preliminary injunction granting appropriate relief to return the parties to the status quo before Sheriff Dart's actions to coerce and demand that credit card companies terminate use of their cards by users of Backpage.com;

B.    A declaratory judgment stating that Sheriff Dart's actions are unconstitutional, constitute an unlawful prior restraint under the First and Fourteenth Amendments, and violate 47 U.S.C. § 230;

C.    A permanent injunction to preclude Sheriff Dart from taking any actions to coerce, threaten, or intimate repercussions directly or indirectly to credit card associations, other financial institutions, or other parties concerning Backpage.com;

D.    An order directing Sheriff Dart to retract his "cease and desist" letters to Visa and MasterCard and any other similar communications to other financial institutions or other parties, including the United States Postal Service;

E.    Monetary damages in an amount to be determined by the Court to compensate for Sheriff Dart's actions, censorship, deprivation of constitutional rights and Backpage.com's losses of revenue and goodwill, and expenses;

F.    Punitive damages in an amount to be determined by the Court as punishment for Sheriff Dart's conduct and to deter repetition;

G.      Backpage.com's costs and expenses of this action, including attorneys' fees under

42 U.S.C. § 1988; and

H.      Such other and further relief as the Court deems just and proper.

DATED:  July 21, 2015.

By:    /s/ Christopher F. Allen

Christopher F. Allen
PAUL HASTINGS LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 499-6000

James C. Grant
Ambika K. Doran
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150
   (*pro hac vice* applications to be filed)

Robert Corn-Revere
Ronald G. London
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
   (*pro hac vice* applications to be filed)

Robert D. Luskin
Gerald S. Sachs
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1700
   (*pro hac vice* applications to be filed)

Thomas P. Brown
PAUL HASTINGS LLP
55 Second St.
San Francisco, CA 94105
Telephone: (415) 856-7000
   (*pro hac vice* application to be filed)

Attorneys for Plaintiff