**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BACKPAGE.COM, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  15 C 06340** |
| | ) | |
| **THOMAS J. DART, Sheriff of Cook County, Illinois.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendant Thomas J. Dart, in his official capacity as the Sheriff of Cook County, by his attorney, Anita Alvarez, State's Attorney of Cook County, through assistant State's Attorneys, Daniel F. Gallagher, and Jill V. Ferrara, responds to the Emergency Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Backpage.com, LLC ("Plaintiff") and states as follows:

## <u>TABLE OF CONTENTS</u>

Relevant Facts and Background ............................................................................1

Argument ..............................................................................................................2

   I.  Temporary Restraining Order/Preliminary Injunction Standard ............................2

  II.  Plaintiff Cannot Make the Extraordinary Showing to Justify Imposition
      of a Temporary Restraining Order or a Preliminary Injunction ............................4

     A.  Plaintiff has no likelihood of success on the merits of his claims ...................4

        1.   Plaintiff cannot establish it has standing........................................4

        2.   Sheriff Dart is entitled to qualified immunity for his actions ...................8

        3.   Plaintiff fails to establish a First Amendment violation ..........................10

            a.   Sheriff Dart's actions do not amount to an informal process
               of coercive threats or insinuation........................................10

            b.   Sheriff Dart's actions do not constitute unlawful prior restraint
               of speech ........................................................................12

            c.   Plaintiff cannot establish an interest protected under the First
               Amendment.....................................................................14

        4.   Plaintiff cannot establish a due process violation ......................................16

        5.   Plaintiff will not succeed on its claim for declaratory relief......................17

        6.   Plaintiff will not succeed on its claim for injunctive relief.........................18

     B.  Plaintiff lacks an irreparable injury in the absence of an injunction...................20

     C.  Defendant and the public would suffer greater harm than plaintiff would
       with the imposition of the injunction....................................................23

Conclusion ..........................................................................................................24

## <u>TABLE OF AUTHORITIES IN SUPPORT OF MEMORANDUM OF LAW</u>

**Cases**

*ACLU v. City of Pittsburgh*, 586 F. Supp. 417 (W.D. Pa. 1984) ......................................14

*ACLU of Ill. V. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ....................................................23

*Alcan Aluminium, Ltd. v. Department of Revenue*, 724 F.2d 1294, 1298 (7th Cir. 1984). 17

*American Hospital Assoc. v. Harris*, 625 F.2d 1328 (7th Cir. 1980) ..............................20

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) .........................................19

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................................9

*Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 667 N.E.2d 1296 (Ill. 1996) ......................21

*Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440 (7th Cir. 2009). .......................5

*Ashcroft v. ACLU*, 55 U.S. 564 (2002) .............................................................................15

*Ass'n of Am Physicians & Surgs., Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014) ....6

*Backpage.com LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) ................. 15-16

*Backpage.com, LLC v. Hoffman*, 2013 U.S. Dist. LEXIS 119811
(D.N.J. Aug. 23, 2013). .......................................................................................... 15-16

*Backpage.com LLC v. McKenna*, 881 F. Supp 2d 1262 (W.D. Wash. 2012) ............ 15-16

*Bantam Books*, 372 U.S. 58 (1963) ............................................................................ 9-10

*Bd. of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217 (2000) .................. 18

*Cabral v. City of Evansville*, 759 F.3d 639 (7th Cir. 2014) .................................................5

*Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188 (7th Cir. 1993) ......................................4-5

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..............................................................5

*County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629 (Ill. 2nd Dist. 2005) ...................3-4

*Corsican Productions v. Pitchess*, 338 F.2d 441 (9th Cir. 1964) ....................................14

*Davis v. Scherer*, 468 U.S. 183 (1984) ...............................................................................8

*Drive In Theatres, Inc., v. Huskey*, 435 F.2d 228 (4th Cir. 1970) ...................................14

*Entertainment Software Ass'n. v. Chicago Transit Auth.,* 696 F. Supp. 2d 934
  (N.D. Ill. 2010) ...............................................................................................................23

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ......................................................3

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .....................................................................8, 9

*Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't
  of Human Servs.*, 60 F. Supp. 3d 856, 877 (N.D. Ill. July 21, 2014) ..............................3

*Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) ...........................................................3

*Keller v. State Bar of Cal.,* 496 U.S. 1 (1990) ..................................................................18

*Kole v. Village of Norridge*, 941 F. Supp. 2d 933 (N.D. Ill. 2013) ..................................13

*Lambert v. Buss,* 498 F.3d 446 (7th Cir. 2007) ..................................................................3

*Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) .....................3

*Lewis v. Continental Bank Corp.*, 491 U.S. 472, 477 (1990) .............................................5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................5-8

*McGrath v. Gillis*, 44 F.3d 567 (7th Cir. 1995) .................................................................9

*Mischkin v. State of New York*, 383 U.S. 502 (1966) ........................................................16

*Mitchell v. Forsyth,* 472 U.S. 511 (1985) ..........................................................................9

*Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 U.S. Dist.
  LEXIS 71434 (N.E. Ill. 2012) ....................................................................................... 17

*NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559 (7th Cir. 1996) ............................................19

*Old Republic Ins. Co. v. Employers Reinsurance Corp.,* 144 F.3d 1077 (7th Cir. 1998) .18

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................................................9

*Penthouse Ltd. v. Meese*, 939 F. 2d 1011 (D.C. Cir. 1991) ...................................9-11, 12

*Personal PAC v. McGuffage*, 858 F. Supp. 2d 963 (N.D. Ill. 2012) ...............................23

*Pleasant Grove City, Utah v. Summum,* 555 U.S. 460 (2009) ...........................................18

*Rakovich v. Wade*, 850 F.2d 1180 (7th Cir. 1988)............................................................. 9

*Reichle v. Howards*, 132 S. Ct. 2088 (2012) ....................................................................9

*Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 2015 U.S. LEXIS
  43823 (N.D. Ill. Apr. 2, 2015) ................................................................................. 2-3

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)........................ 19

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ......................18

*Rust v. Sullivan*, 500 U.S. 173 (1991) ..............................................................................18

*Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046 (7th Cir. 2008)........................13

*Sid Berk, Inc. v. Uniroyal, Inc*., 425 F. Supp. 22 (C.D. Cal. 1977) ....................................3

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ..................................................7

*Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412 (Ill. 1st Dist. 1991). ......4

*Stuller, Inc. v. Steak N Shake*, 695 F.3d 676 (7th Cir. 2012) ........................................3, 22

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..........................................................5

*Triumph Packaging Grp. v. Ward*, 834 F. Supp. 2d 796 (N.D. Ill. 2011) .........................3

*Tun v. Whitticker*, 398 F.3d 899 (7th Cir. 2005) .................................................................9

*United States v. Jalas,* 409 F.2d 358 (7th Cir. 1969) ........................................................20

*Warner Bros. Pictures v. Gittone*, 110 F.2d 292 (3rd Cir. 1940) ...................................... 3

*Wisconsin Environmental Decade, Inc. v. State Bar of Wisconsin*,
  747 F.2d 407 (7th Cir. 1984). ....................................................................................5

*X-Men Sec., Inc. v. Pataki*, 196 F.3d 56 (2nd Cir. 1999)...............................................9-12

## RELEVANT FACTS AND BACKGROUND

On June 29, 2015, Sheriff Dart sent letters to the Chief Executive Officer of two credit card companies, Visa Incorporated and MasterCard Incorporated. Plaintiff's Complaint ("Pl.'s Compl.), CM/ECF Docket entry no. 1 at ¶38. The letters are attached as Exhibits B and C to Plaintiff's Complaint and are identical in their content. In the letters, Sheriff Dart petitioned each credit card company "[a]s the Sheriff of Cook County, a father and a caring citizen . . . to request that [the] institution immediately cease and desist from allowing your credit cards to place ads on websites like Backpages.com, which we have objectively found to promote prostitution and facilitate online sex trafficking." Pl.'s Compl. at Exs. B & C. Sheriff Dart's letters appealed to each company's role in the community and provided information that over 20,000 ads for prostitution are placed monthly on Plaintiff's site in the Chicago area alone. *Id.* Sheriff Dart also indicated that his officers have made over 800 arrests relating to ads appearing on Plaintiff's site, including for prostitution and child trafficking. *Id.* He informed the credit card companies of their right to block illegal transactions and close accounts, and analogized "adult services" ads to online gambling, marijuana purchases and pornography, for which financial institutions have blocked card usage. *Id.* In closing, the Sheriff asked for contact information from each company with whom he could work on the issue. *Id.* Thereafter, both Visa and MasterCard, who are not parties to this suit, terminated credit card services for persons seeking to advertise on Plaintiff's site. Pl.'s Compl. at ¶40.

Missing from Sheriff Dart's letters was any threat of legal action, explicit or implicit, against the companies. *Id.* Also absent was any demand for action of any sort. *Id.*

Many of Plaintiff's allegations rely more on improper hearsay from media coverage than actual first hand factual allegations. Notwithstanding, according to Plaintiff, following the credit

1

card companies' termination of services, customers' ads still appear on the website Backpage.com, but now Plaintiff posts "adult escort" ads without a charge. Pl.'s Compl. at ¶¶45-46. Options still exist by which customers can pay to place ads, including Bitcoin and credits that can be purchased by check, cash or money order. Pl's Compl. at ¶¶40-41; Ex. K Declaration of Lisa Zycherman to Plaintiff's Memorandum in Support of Temporary Restraining Order and Preliminary Injunction.

Plaintiff's emergency motion seeks entry of an immediate temporary restraining order directing Sheriff Dart to cease and desist his "coercive actions" and a preliminary injunction finding Sheriff Dart's actions unconstitutional, prohibiting him from further such actions, and directing him to retract his letters to Visa and MasterCard as well as any similar communications. (Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction "Pl.'s Motion", CM/ECF Docket entry no. 4 at 2). Plaintiff is not entitled to preliminary injunctive relief where there is no likelihood of success on the merits and where it has not demonstrated irreparable harm if a preliminary injunction is denied or that it has no adequate remedy at law. Accordingly, Plaintiff's Motion should be denied where the *status quo* is preserved until the trail court can consider the case on the merits.

<u>**ARGUMENT**</u>

## I. TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION STANDARD.

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, No. 15 C 551, 2015 U.S. Dist. LEXIS 43823, 2015 WL 1497821, at *12 (N.D. Ill. Apr. 2, 2015). To obtain a preliminary injunction, Plaintiff must show that it has: "(1) no adequate remedy at

law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *Triumph Packaging Grp. v. Ward*, 834 F. Supp. 2d 796, 805 n.7 (N.D. Ill. 2011) (to obtain a preliminary injunction, a plaintiff "must show that it is 'reasonably likely to succeed on the merits'") (collecting cases). A party seeking injunctive relief "has the burden of proving by a clear showing" that the injunction is warranted. *Lambert v. Buss*, 498 F.3d 446, 452 (7th Cir. 2007). If the moving party meets these threshold requirements, the court must consider whether the injunction is in the public interest. *Stuller, Inc. v. Steak N Shake Enters*, 695 F.3d 676, 679 (7th Cir. 2012). The court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell*, 651 F.3d at 694. "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Servs*., 60 F. Supp. 3d 856, 877 (N.D. Ill. July 21, 2014).

Issuing a preliminary injunction is a "discretionary exercise by the court of a very far-reaching power, 'never to be indulged in except in a case clearly demanding it.'" *Sid Berk, Inc. v. Uniroyal, Inc*., 425 F. Supp. 22, 29 (C.D. Cal. 1977), quoting *Warner Bros. Pictures v. Gittone*, 110 F.2d 292, 293 (3rd Cir. 1940). At the preliminary injunction stage, the court is "concerned with the equities of maintaining the *status quo* pending the ultimate determination on the merits." *Lawson Products, Inc. v. Avnet, Inc*., 782 F.2d 1429, 1440 (7th Cir. 1986). Moreover, "the *status quo* is defined as 'the last actual, peaceable, uncontested status which [preceded] the pending controversy.'" *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 638

(Ill. 2nd Dist. 2005), *citing Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 417 (Ill. 1st Dist. 1991).

Here, Sheriff Dart's letters were previously sent on June 29, 2015. Compl. at Exs. B & C. Thereafter, MasterCard and Visa terminated card services and ceased doing business with Backpage.com. Pl.'s Compl. at ¶40. At the time of the filing of the instant emergency motion, the *status quo* in the instant action is that Visa and MasterCard, non-parties, are not providing credit card services for Plaintiff's website. Granting preliminary injunctive relief will not alter this *status quo* pending the ultimate determination on the merits. Plaintiff does not want to maintain the *status quo*, but instead attempts to undue the credit card companies' termination of services without actually suing them. The *status quo ante* is preserved and, therefore, preliminary injunctive relief is not warranted.

## II.   PLAINTIFF CANNOT MAKE THE EXTRAORDINARY SHOWING TO JUSTIFY IMPOSITION OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION.

### A.   Plaintiff Has No Likelihood of Success on the Merits of Its Claims.

Plaintiff contends that it is likely to prevail on its claims that Sheriff Dart's informal scheme of prior restraint violates the First and Fourteenth Amendments. However, Plaintiff's claims fail where it has no standing to bring the instant action, where Sheriff Dart has qualified immunity, where there is no First Amendment violation, where Plaintiff cannot demonstrate a due process violation and where Plaintiff is not entitled to declaratory or injunctive relief.

#### 1.   Plaintiff Cannot Establish It Has Standing.

This Court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Plaintiff

bears the burden of proof as to standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 491 U.S. 472, 477 (1990). Abstract injury is not enough to confer Article III standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). "Federal courts established pursuant to Article III do not render advisory opinions." *Wisconsin Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984). "The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit." *Id.* It is Plaintiff's burden to establish that it has standing to raise a First Amendment claim. From the face of Plaintiff's Complaint and the documents referenced therein, it certainly has not.

As the Seventh Circuit has recognized, "Standing ensures that the parties have a vested interest in the case and guarantees that the court only adjudicate 'cases and controversies.'" *Cabral v. City of Evansville*, 759 F.3d 639, 641 (7th Cir. 2014). In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the United States Supreme Court recognized "the irreducible constitutional minimum of standing" as the following three elements:

1. the plaintiff must have suffered an injury in fact, which is the invasion of a legally protected interest that is concrete and particularize and actual or imminent;
2. a causal connection exists between the injury and the challenged conduct; and
3. the alleged injury is likely to be redressed by a favorable decision.

*Id.* at 560-61; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff fails to satisfy all three elements.

As to the first element, there has been no injury in fact to a legally protected interest of Plaintiff. The alleged injury is a prior restraint to asserted First Amendment rights of free

5

speech. Pl.'s Compl. at ¶5. Plaintiff makes clear in its Complaint, however, that the content of the ads that appear on its web site is solely the customers' or "users'" content, and not Plaintiff's. *Id*. at ¶¶18-19. As the Supreme Court has observed, "The injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563. Although Plaintiff contends that its customers' ads are protected free speech (Pl.'s Compl. at ¶43), Plaintiff nowhere explains how its own First Amendment rights have been impacted by the Sheriff's letters to the credit card companies. Furthermore, Plaintiff acknowledges that its customers are continuing to post ads of any and all nature on Plaintiff's site up to this very day. Pl.'s Compl. at ¶46. Thus, obviously Plaintiffs' customers' speech has not been impacted by the Sheriff's letters. There also is no threat of prosecution against Plaintiff or its customers for merely posting the ads and its posting forum remains open. (As Exhibits B and C to the Complaint show, the threat of prosecution for the conduct that results from some of the ads posted on Plaintiff's site is an entirely different matter, with over 800 arrests having been made in Cook County alone in connection with such posts.) Absent a cognizable First Amendment injury, Plaintiff lacks standing to bring this suit.

With respect to the second element, the independent actions of Visa and MasterCard in terminating their card services for persons seeking to place "adult services" advertisements on Plaintiff's site break the chain of causation required to establish standing. As the United States Court of Appeals for the Seventh Circuit has noted, "In a market economy everything is connected to everything else through the price system. To allow a long, intermediated chain of effects to establish standing is to abolish the standing requirement as a practical matter . . . ." *Ass'n of Am Physicians & Surgs., Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014)(Plaintiff association and physician lacked standing to challenge the Affordable Care Act because their suit

6

was premised upon a chain of causation, not actions taken against them personally). Similarly, Visa and MasterCard could have opted to ignore Sheriff Dart's letter, respond with a firm denial, or remove card coverage for only some portion of the customer's ads. A review of Sheriff Dart's letters to each, reflecting the Sheriff's "request," shows a total absence of compulsion, threat or "insinuation." Pl's Compl. at Exs. B & C. Instead, each company independently and voluntarily chose to break ties with persons seeking to place paid ads with Plaintiff. For this reason, Plaintiff cannot establish the causation element for standing.

Third, Plaintiff also fails to plead how its claimed injury would be redressed by a decision in its favor. As the Supreme Court has cautioned, standing requires that such redress must be "likely" and not "speculative." *Id.* at 561. "The relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Here, Plaintiff contends that Sheriff Dart sent a letter to Visa and MasterCard that resulted in the two credit card companies severing their relationships with Plaintiff. As a result, persons seeking to place ads in the categories Plaintiff euphemistically terms "adult services" and "dating" must pay for such ads another way, with Bitcoin being one such mechanism, as well as credits purchased by check, cash or money order. Pl.'s Compl. at ¶¶40-41, Exs. B & C; Pl.'s Memo. at Ex. K Declaration of Lisa Zycherman. The Supreme Court has recognized that situations in which the independent actions of third parties break the causal chain between the government's actions and the plaintiff's alleged harm result in an additional burden upon plaintiffs, because when

> [t]he existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . , it becomes the burden of the plaintiff to adduce

7

> facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury.

*Lujan*, 504 U.S. at 562. Here, even if Plaintiff is successful in obtaining all of the relief it requests against Sheriff Dart, Plaintiff will not be able to demonstrate that Visa and MasterCard would reverse course and once again provide credit card services for persons placing adult services ads. In the absence of such likelihood, Plaintiff lacks standing.

### 2. Sheriff Dart Is Entitled To Qualified Immunity for His Actions.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The central purpose of affording public officials qualified immunity from suit is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Id*. at 806. "The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984),citing *Harlow*, 457 U.S. at 814, 818-819. "Higher level executives who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them." *Id*. Such officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively. In these circumstances, officials should not err always on the side of caution." *Id*.

Analysis of whether qualified immunity applies requires a two-step inquiry.[1] First, viewing the facts in the light most favorable to the plaintiff, the Court must determine whether the official violated a constitutional right. *Tun v. Whitticker*, 398 F.3d 899, 901-02 (7th Cir. 2005). If so, the Court must determine whether that right was clearly established at the time of the violation. *Id.*

Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of "legal facts." *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Harlow*, 457 U.S. at 818. The plaintiff bears the burden of proof on the issue. *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995); *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) (*en banc*).

As argued in Section 3, *infra*, Sheriff Dart did not violate Plaintiff's First Amendment rights because escort advertising is not protected. Moreover, even in the light most favorable to Plaintiff, the case law as illustrated by *Bantam Books*, 372 U.S. 58 (1963), *Penthouse Int'l Ltd. v. Meese,* 939 F.2d 1011 (D.C. Cir. 1991), *X-Men Sec., Inc. v. Pataki,* 196 F.3d 56, 72 (2d Cir. N.Y. 1999), do not support a determination that Sheriff Dart's letters were anything more than the exercise of his own First Amendment speech.   Plaintiff cannot show that it had a First Amendment right, or that the right was clearly established. Therefore, Sheriff Dart is entitled to qualified immunity for such actions.

---

[1] The Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all.  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). The right allegedly violated must be established, "'not as a broad general proposition,' [citation omitted] but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*).

3.  Plaintiff Fails to Establish a First Amendment Violation.

   a.  *Sheriff Dart's Actions Do Not Amount To An Informal Process of Coercive Threats or Insinuation.*

Relying on a line of cases under *Bantam Books*, Plaintiff argues that Sheriff Dart's actions violate the First Amendment as they censor or chill speech through an informal process of coercive threats or insinuation.  P.'s Memo at 14.

*Bantam Books* is distinguishable. There, the Rhode Island Commission to Encourage Morality In Youth, which was empowered to investigate and recommend the prosecution of state violations, sent notices to book distributors that certain book sellers, to which the distributors contracted, sold "objectionable" publications.  372 U.S. at 60 n. 1, 62 n. 5.  The Supreme Court found a violation of the First Amendment because the notices were deemed to be threatening because they informed the recipients that the Attorney General would act on their behalf in cases of non-compliance, were followed up by police visits, and were phrased in terms of orders.  *Id.* at 67-72.

Sheriff Dart's letters in no way rise to the level of the threats found in *Bantam Books*. Moreover, where the book distributors in *Bantam Books* "faced a genuine threat of prosecution," which became the central basis for the Court's determination that a violation existed (*Penthouse*, 939 F. 2d at 1015), Plaintiff does not face any genuine threat of prosecution.  Sheriff Dart has no authority or power over Visa or MasterCard to determine where their credit cards can be used. Rather, Sheriff Dart's actions amount to advocacy and an exercise of his own First Amendment speech.  In this manner, Sheriff Dart's actions are similar to actions found constitutional in *Penthouse* and *X-Men* .

In *Penthouse*, the Commission on Pornography held public hearings where it heard from a witness, Reverend Wildmon, that "household name" corporations were selling pornography. 939 F. 2d at 1015. During his testimony, Reverend Wildmon referred to Penthouse and Playboy magazines as "porn magazines." Thereafter, the Commission sent letters seeking response from twenty-three corporations identified by Reverend Wildmon to have been selling pornography regarding their position on Reverend Wildmon's accusations. *Id.* Along with the letter, the Commission attached a transcript of Wildmon's testimony. *Id.* Relying on *Bantam Books*, Penthouse magazine brought an action against the Attorney General alleging the actions amounted to "an informal scheme of government censorship" in violation of its First Amendment rights. 939 F. 2d at 1014. The court distinguished *Bantam Books* because the letter had no tie to prosecutorial power, nor authority to censor publications, "did not contain threat to prosecute, nor intimation of intent to proscribe the distribution of the publications." *Id.* The court noted that it "has never found a government abridgement of First Amendment rights in the absence of some actual or threatened governmental power or sanction." *Id.*

In *X-Men*, the Second Circuit Court of Appeals held that, in the absence of threats, intimidation, or coercion, legislators' "disparaging, accusatory, or untrue statements about the X-Men fail to state a claim for violation of X-Men's constitutional rights." 196 F.3d at 71.

> What the legislators are alleged to have done is to express their views. The only concrete acts ascribed to them are attending meetings, making statements, and writing letters. The statements attributed to the legislators are that they accused X-Men of being controlled by the Nation of Islam and Farrakhan, of being part of a "hate group" that practiced racism, gender discrimination, anti-semitism, and other religious discrimination, of being fraudulently mismanaged, and of forcing its religious views on the Ocean Towers tenants by distributing religious literature while on duty; and the legislators are alleged to have "ridiculed" HUD findings to the contrary and to have urged that X-Men not be retained. Even if false, as alleged by the complaint, the legislators' statements are entitled to First Amendment protection.

11

> While the complaint alleges that the legislators exerted "pressure" on the decisionmakers, there is no allegation that such "pressure" took the form of anything other than speech. Though they are alleged to have communicated with State and federal regulators, a Congressional committee, and the public, the legislators are not alleged to have threatened the decision makers in any way or to have engaged in coercive or intimidating conduct.

*Id.* (citations omitted).

Here, Sheriff Dart's letters makes no threat, intimidation or coercion against Plaintiff, the credit card companies or any other entity or individual. Rather, the letters are appeals by Dart as "Sheriff of Cook County, a father, and a caring citizen" to the credit card companies to cease allowing their credit cards to be used on websites like Plaintiff's. Sheriff Dart has no role in determining whether the credit card companies will cease. Sheriff Dart has made no threat against the credit card companies. These letters, even if they are considered to have "pressured" the credit card companies, constitute criticism and condemnation of the credit card companies' policies, which amounts to a valid exercise of Sheriff Dart's own free speech.

> As parties of the duties of their office, these officials surely must be expected to be free to speak out to criticize practices, even in a condemnatory fashion, that they might not have the statutory or even constitutional authority to regulate.
>
> ***
>
> If the First Amendment were thought to be violated any time a private citizen's speech or writings were criticized by a government official, those officials might be virtually immobilized.

*Penthouse*, 939 F. 2d at 1015-16 (citations omitted). Thus, Sheriff Dart's actions do not violate Plaintiff's First Amendment rights.

                *b. Sheriff Dart's Actions Do Not Constitute Unlawful Prior Restraint Of Speech.*

Plaintiff alleges Sheriff Dart's actions constitute unlawful prior restraint of speech. Pl.'s Memo. at 14. Sheriff Dart's actions are not unlawful prior restraint of speech, but an exercise of his own First Amendment speech rights. Plaintiff incorrectly applies the principle of the unlawful prior restraint of speech in this context.

"In the First Amendment context, 'prior restraint' is a term of art. It does not apply to every restriction that affects speech." *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 952 (N.D. Ill. 2013). The Seventh Circuit explained that a restriction is a prior restraint if it meets four elements**:**

> (1) the speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the decision maker.

*Id.* at 953, citing *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008) (citations omitted). "Ultimately, prior restraints are unconstitutional if they stifle speech by allowing the decision maker unlimited discretion or unlimited time to issue a permit. Id.

Plaintiff cannot meet any of the elements of prior restraint under *Kole* and *Samuelson*. Plaintiff does not have to apply to Sheriff Dart to exercise its purported right to provide escort advertisement; Sheriff Dart is not empowered to determine whether Plaintiff can allow escort advertisement or whether escort advertisement must be paid; Sheriff Dart takes no role or any other "affirmative action" to approve escort advertisement. Sheriff Dart's actions are not regulatory at all, nor does he have any power over Visa or MasterCard to determine where their credit cards can be utilized. Thus, prior restraint is inapplicable here.

Cases cited by Plaintiff are distinguishable. In support of their emergency motion, Plaintiff cites three prior restraint cases. In all three of these cases, the government officials accused of engaging in prior restraint of the plaintiffs' First Amendment rights explicitly expressed their intent to limit the plaintiffs' speech. First, in *ACLU v. City of Pittsburgh,* the mayor released a statement to the local media addressed to all magazine dealers not only expressing his distaste for the contents of the pornographic magazine, but the mayor also requested businesses to remove it from their shelves to eliminate "the need for the City to engage in a massive sweep of all newsstands and stores and the initiation of criminal proceedings." 586 F. Supp. 417, 419 (W.D. Pa. 1984). Next, in both *Drive In Theatres, Inc. v. Huskey,* 435 F.2d 228, 229 (4th Cir. 1970) and *Corsican Productions v. Pitchess*, 338 F.2d 441 (9th Cir. 1964), the sheriff threatened theatre owners who showed obscene films with prosecution.

In the present case, Sheriff Dart does not threaten the credit card companies with criminal prosecution. Nor does he have the ability or authority to do so. Importantly, Sheriff Dart does not limit any speech. Sheriff Dart's actions have no impact on the content or amount of the speech on the website. Rather, Sheriff Dart merely requested that a private credit card company cease taking credit card payments from users on the website Backpage.com, which has no restraint on speech. Plaintiff can still operate with other forms of currency, such as cash, ACH debits, Bitcoin, cashier's check, bank checks, etc. Sheriff Dart, in no way, explicitly limits any speech, and therefore, Plaintiff reliance on the prior restraint cases is similarly misplaced.

        *c.  Plaintiff Cannot Establish An Interest Protected Under the First Amendment.*

Under Section A3 and A4 of Plaintiff's Memorandum, Plaintiff makes sweeping generalizations and misplaced arguments with respect to Sheriff Dart's alleged violation of "all

first amendment principles" (Pl.'s Memo. at 21-24) and imposition of a "standardless [sic] and unbounded restriction on protected speech" (Pl.'s Memo. at 24-26). Plaintiff's arguments are premised upon an assumption that it has articulated a right protected under the First Amendment. Plaintiff mischaracterizes the case law in support.

Plaintiff erroneously relies upon cases where it brought suit against three states. *See Backpage.com LLC v. McKenna*, 881 F. Supp 2d 1262 (W.D. Wash. 2012); *Backpage.com LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 U.S. Dist. LEXIS 119811 (D.N.J. Aug. 23, 2013). Upon review, it is apparent that these cases simply do not stand for the proposition that escort advertising postings are protected speech, nor can Plaintiff provide any other legal support for such position. In these three cases, which were brought against the states of Washington, Tennessee and New Jersey, Backpage.com challenged statutes criminalizing, in relevant part, commercial advertising of sexual abuse of minors. *Id*. Importantly, these decisions were for purposes of ruling on motions for temporary restraining or preliminary injunction orders and, thus, their analyses found a "likely" violation of the First Amendment. *McKenna*, 881 F. Supp 2d at 1276-77, *Cooper*, 939 F. Supp. 2d at 830-33, *Hoffman*, 2013 U.S. Dist. LEXIS 119811 at **20-23. Moreover, reasons for the "likely" violations were because the criminal statutes did not contain scienter requirements. *See Hoffman*, 2013 U.S. Dist. LEXIS 119811 at *20 ("[w]hile a state can bar *unprotected speech*, it cannot do so without a scienter requirement" and "in order to prevent chilling expression protected by the First amendment, statutes criminalizing obscenity must require proof of scienter.") (emphasis added). Importantly, obscenity is not protected under the First Amendment. *See Ashcroft v. ACLU*, 535 U.S. 564, 574 (2002), ("Obscene speech, for example, has long been held to fall outside the purview of the First Amendment.") The primary concern of the statutes in the

15

Plaintiff's cases was not that the criminal statutes were violating Plaintiff's First Amendment rights to provide a forum for escort advertising, it was because without the scienter requirement the criminal statutes would have a chilling effect on protected speech in addition to the unprotected speech. *See Cooper*, 939 F. Supp. 2d at 829, citing *Mischkin v. State of New York*, 383 U.S. 502, 511 (1966) ("[t]he Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity.") and *McKenna*, 881 F Supp. 2d at 1282 ("The most problematic aspect of [the criminal statute] is not the protected speech that it regulates by its terms, but the likelihood that it will chill a substantial amount of protected speech in addition to the unprotected speech that the [government] argue the statute was meant to address."). Thus, the courts in the *Backpage.com* cases did not determine that escort advertising postings were protected under the First Amendment.

### 4. Plaintiff Cannot Establish A Due Process Violation.

Count II of Plaintiff's Complaint contends that Plaintiff was denied due process of law in connection with the Sheriff's letters to Visa and MasterCard. Count II, however, is premised upon the assumption that Sheriff Dart's letters constituted a prior restraint of speech. Because the petitions to the credit card companies are in no way prior restraints, as argued in Paragraph III.B above, the foundation of Count II does not exist.

Further, there is no case establishing that a letter from a government official that contains no threats constitutes government action for purposes of invoking a party's due process rights. What Plaintiff essentially is contending is that the Sheriff should have conducted a hearing, with Plaintiff being given an opportunity to be heard, before he sent his requests to Visa and MasterCard. Here, there were no constitutionally guaranteed procedural safeguards invoked.

Ultimately, the termination of the credit card companies' services was their decision alone, and nothing prevents Plaintiff from writing Visa and MasterCard, just as the Sheriff did, to convince them to reinstate their services. Count II accordingly should be dismissed.

### 5. Plaintiff Will Not Succeed on Its Claim For Declaratory Relief.

Plaintiff's Memorandum is silent with respect to its claim for declaratory relief which is contained in Count III of the Complaint. Nevertheless, Plaintiff will not likely prevail on its claim for declaratory relief. Plaintiff seeks a declaration that Sheriff's Dart's actions are unconstitutional, constitute an unlawful prior restraint and violate the Communications Decency Act. Count III will likely fail where Sheriff Dart took no regulatory action and instead exercised his own First Amendment right to petition businesses to consider changing their business practices. The only constitutional right invoked in this litigation is the Sheriff's, not the Plaintiff's. Here, there is no actual legal controversy with respect to the Sheriff's request to the credit card companies and, accordingly, no basis for declaratory relief.

"The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 U.S. Dist. LEXIS 71434, **44-45 (N.E. Ill. 2012), citing *Alcan Aluminium, Ltd. v. Department of Revenue*, 724 F.2d 1294, 1298 (7th Cir. 1984). "This 'actual controversy' requirement is equivalent to Article III's case-or-controversy requirement and thus incorporates Article III doctrines of ripeness and standing." *Id*. (citations omitted). The party seeking the declaratory judgment bears the burden of demonstrating that an actual controversy exists and even if jurisdiction is proper, the court has discretion to decline to exercise it. *Nathan*, 2012 U.S. Dist. LEXIS 71434 at 44-45.

As argued in Section II A.I., Plaintiff does not have standing under Article III and therefore, Plaintiff cannot establish a substantial controversy.

In addition, this lawsuit represents Plaintiff's response to the Sheriff's petitions to Visa and MasterCard. The Complaint claims (incorrectly) that the Sheriff has blocked the speech rights of Plaintiff's advertisers, but ironically ignores the Sheriff's own First Amendment rights to ask businesses to conduct themselves in a certain way. Further, Plaintiff has no interest whatsoever in the Sheriff's right, whether as Sheriff, father or citizen, to protest the practices of Visa and MasterCard and suggest modifications. As the Supreme Court has noted, "Government is not restrained by the First Amendment from controlling its own expression" and has the right to "speak for itself." *Bd. of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995). Similarly, the government has the right to select the views that it wants to express. *Rust v. Sullivan*, 500 U.S. 173, 194 (1991). As the Court recently noted, "[I]t is not easy to imagine how government could function if it lacked this freedom. 'If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, quoting *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13 (1990). Plaintiff has no legal, tangible interest in the Sheriff's speech to the credit card companies and no controversy exists as to the legality of its content. Plaintiff's request for declaratory relief therefore must fail.

6. Plaintiff Will Not Succeed on Its Claim For Injunctive Relief.

Plaintiff develops no argument in its Memorandum with respect to its request for injunctive relief. Plaintiff seeks an injunction "precluding Sheriff Dart from taking any action to

coerce, threaten, or intimate repercussions directly or indirectly to credit card associations, other financial institutions, or other parties concerning Backpage.com." Pl.'s Compl. at 21, ¶C. Plaintiff's request is specious. Sheriff Dart has not taken any action "to coerce, threaten, or intimate repercussions to credit card companies concerning Backpage.com." In any case, Plaintiff cannot establish the elements necessary to obtain injunctive relief.

A party seeking injunctive relief must demonstrate: (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the non-prevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest. *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998), citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1567 (7th Cir. 1996); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386-88 (7th Cir. 1984).

Plaintiff cannot demonstrate any of the elements necessary to obtain injunctive relief. As argued above, Plaintiff does not have standing and cannot show a violation of its due process or First Amendment rights. Moreover, any alleged harm at issue is solely monetary. In this manner, an adequate remedy at law exists and Plaintiff will not suffer irreparable harm without injunctive relief. In the unlikely event that Plaintiff can prevail on this case, they would be able to make a claim for monetary damages. Plaintiff continues to permit the posting of the advertisements at issue for free and, indeed, may obtain fees for such postings in other forms of payment. Therefore, should Plaintiff prevail, it may look to the number of free advertisements posted in lieu of using Visa or MasterCard credit cards as compensation. As it cannot show that it will suffer irreparable harm without injunctive relief, Plaintiff cannot establish that the harm

19

would outweigh any possible suffering by Sheriff Dart. Finally, any injunction would harm the public interest where the interest at stake is Sheriff Dart's right to exercise his First Amendment.

Furthermore, Plaintiff's injunctive request essentially seeks a court order to prohibit illegal or criminal activity, which is improper. *See United States v. Jalas*, 409 F.2d 358, 359 (7th Cir. 1969) ("courts have no power to enjoin the commission of a crime").

### B. Plaintiff Lacks an Irreparable Injury in the Absence of an Injunction.

Plaintiff claims that it has suffered irreparable injury because Sheriff Dart's actions caused suppression of all speech on its website and such suppression of First Amendment rights inherently cause irreparable harm. Pl.'s Memo. at 26. Further, Plaintiff claims that it has and will continue to suffer irreparable harm without an injunction because it has, and continues to, lose significant revenues. *Id.* at 26-27. [T]o constitute irreparable harm the threatened injury must be, in some way, 'peculiar.' Mere injuries however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *American Hospital Assn., v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980). Plaintiff cannot carry its burden of showing that it will suffer imminent irreparable harm unless the requested injunctive relief is granted.

Foremost, as demonstrated above, Sheriff Dart's actions do not violate Plaintiff's First Amendment rights or any other legal rights. His actions in no way burdened protected speech. Rather, Sheriff Dart's conduct constitutes pure advocacy on behalf of his constituents and for those who do not have a voice. Sheriff Dart utilized his position as an elected official and voiced his concerns on the issue of human trafficking. In addition, Plaintiff admits that the website Backpage.com is still operating. Comp. at ¶46; Pl.'s Memo. at 27. At the time of this filing, users are able to post ads. Compl. at ¶¶45-46. Options still exist by which customers can pay to

20

place ads, including Bitcoin and credits that can be purchased by check, cash, or money order. Compl. at ¶¶40-41, 45; Pl.'s Memo. at Ex. K, Declaration of Lisa Zucherman. In fact, by Plaintiff's own admission, the volume of adult ads on the website has increased significantly. Pl.'s Memo. at 31, n.12. Thus, Plaintiff has not demonstrated that it will suffer any harm, let alone irreparable harm, if injunctive relief is not granted. Moreover, even if the preliminary injunctive relief is granted, there is no indication that Visa or MasterCard would change their course of conduct and provide services to Plaintiff.

In addition, Plaintiff asserts that "even if this case lacked a constitutional dimension, and Sheriff Dart merely set out to destroy Backpages.com's business for reasons unrelated to speech, his actions still would support injunctive relief." Pl.'s Memo. at 26. If there is no constitutional violation, then Plaintiff's claims fail. Apparently Plaintiff is suggesting another cause of action, which would only hinder Plaintiff's claims for injunctive relief. Without a constitutional "dimension," Plaintiff's allegations sound in tortious interference with prospective economic advantage or business relationship. *See Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 667 N.E.2d 1296, 1299, (Ill. 1996) (setting forth the elements of tortious interference under Illinois law). Thus, Plaintiff would clearly have an adequate remedy at law. In addition, if Plaintiff ultimately prevailed, its lost revenue could easily be calculated since Plaintiff is currently allowing for users to post ads free of charge.

Plaintiff claims a damages award would be "seriously deficient as a remedy for the harm suffered." Pl.'s Memo. at 28. However, Plaintiff has not shown that damages would not compensate it for the lost revenue associated with Visa and MasterCard terminating their business relationship with Plaintiff. Since Plaintiff is currently permitting users to post ads for free, Plaintiff could easily calculate the number of ads posted for free at the conclusion of the

litigation.

According to Plaintiff, without an injunction it faces the risk of going out of business due to loss of revenue. Pl.'s Memo. at 27. Plaintiff cites *Stuller* in support of its contention that the loss of revenue supports injunctive relief against Sheriff Dart. *Stuller, Inc.*, 695 F.3d at 680. In *Stuller*, a franchisor adopted a new policy requiring all franchisees to follow the franchisor's menu pricing and promotions. *Id.* at 677. The franchisee refused to implement the new policy, believing that it was still authorized to set menu prices under its existing franchise agreements with the franchisor. *Id.* The franchisee requested injunctive relief to prevent the franchisor from enforcing the new policy, from finding the franchisee in default, and from terminating the franchisee's franchises. *Id.* at 677-678. The appellate court determined that the district court did not abuse its discretion in granting the franchisee's motion for a preliminary injunction because the franchisee showed that it would suffer irreparable harm without a preliminary injunction since the franchisee presented evidence that the new pricing policy would be a significant change to its business model and that it would negatively affect its revenue, possibly even to a considerable extent. *Id.* at 680.

This case is factually inapposite to the current action. Foremost, Sheriff Dart and Plaintiff do not have a contractual relationship or even a business relationship as in *Stuller*. Importantly, the franchisor in *Stuller* had the ability to take action and cause harm against the franchisee if it did not comply by terminating its franchises, thereby significantly effecting its ability to generate revenue. Here, Sheriff Dart did not and does not have the ability or authority to terminate the credit card's services with Plaintiff. Accordingly, *Stuller* is wholly distinguishable.

Plaintiff has failed to demonstrate that preliminary injunctive relief against Sheriff Dart is

necessary to prevent irreparable harm to Plaintiff.

     **C.**    **Defendant and the Public Would Suffer Greater Harm Than Plaintiff With the Imposition of the Injunction.**

Plaintiff argues that the public interest favors immediate injunctive relief.  Plaintiff cites *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir.), *Entertainment Software Ass'n v. Chicago Transit Auth*, 696 F. Supp. 2d 934 (N.D. Ill. 2010), and *Personal PAC v. McGuffage*, 858 F. Supp. 2d 963 (N.D. Ill. 2012) for the proposition that "injunctions protecting First Amendment freedoms are always in the public interest." Pl.'s Memo. at 29. However, all three cases are distinguishable as they sought to enjoin the enforcement of enacted statues or ordinances, including the Illinois Election Code (*Personal PAC*), the eavesdropping statute (*Alvarez*), or the City of Chicago's CTA advertising ordinance (*Entertainment*).  Here, there is no statute, ordinance, or law that the Plaintiff is seeking to restrain.  Rather, Plaintiff asks this Court for a preliminary injunction to direct Sheriff Dart to retract a letter that Sheriff Dart wrote to Visa and MasterCard. For the reasons explained in his letters, retraction of Sheriff Dart's letters would not benefit the public. Foremost, retraction of the letters does not undo the termination of services by Visa and MasterCard.  And currently, the public is able to utilize Backpage.com for free.   The three cases cited by Plaintiff are also distinguishable where they all specifically deal with the defendants' restraints on speech. In this case, Sheriff Dart's actions neither burdened nor threatened to eliminate any protected speech.  As such, Plaintiff's reliance on these cases is misplaced.  Plaintiff has failed to establish that the public interest favors immediate injunctive relief.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's request for a temporary restraining order and a preliminary injunction should be denied.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     <u>*/s/ Jill V. Ferrara*</u>

Daniel F. Gallagher
Jill V. Ferrara
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois  60602
312.603.4320

24