**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BACKPAGE.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-06340 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THOMAS J. DART, Sheriff of Cook County, Illinois, | ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

**BENCH MEMORANDUM
ON ILLEGALITY DISCOVERY**

Thomas J. Dart, Sheriff of Cook County Illinois, by his undersigned Special Assistant States Attorneys, respectfully submits this memorandum regarding the materiality and relevance of discovery pertaining to the lawful or unlawful character of ads placed on Backpage.com's adult services pages to the issue of damages pursuant to this Court's March 30, 2016 Order (Doc. No. 137):

**Introduction**

Contemporaneous with the filing of this bench memorandum, Sheriff Dart is filing a supplement to his motion to compel. That supplement addresses why discovery into the character of the Backpage.com ads is relevant to whether those ads are protected speech in the first instance. However, even were this Court to deny discovery into the ads' character for that purpose, it should permit Sheriff Dart such discovery in order to prove that Backpage.com may not lawfully recover claimed lost profits from ads for illegal conduct, especially since Backpage.com knows that such ads make up the vast majority, if not all, of the ads on its adult services pages.

1

As this Court previously noted in its August 24, 2015 Order, "Backpage.com's adult services section overwhelmingly contains advertisements for prostitution, including the prostitution of minors. Backpage uses filters that prevent certain words and phrases from being posted, but many of the advertisements nevertheless clearly solicit payments for sex." Doc. No. 63 at 3. However, Backpage.com does more than just filter out certain words. New evidence obtained by the United States Senate Committee on Homeland Security and Governmental Affairs, via its Permanent Subcommittee on Investigations (the "Senate Subcommittee"), reveals that Backpage.com's review process "also entails editing and deleting content within advertisements," which changes the nature of the posts and makes Backpage.com a co-author of them. Specific internal Backpage.com e-mails reveal that Backpage.com actually unilaterally conducts moderation/sanitization of ads that reference illegal activity before permitting them to be posted on its website. Copies of certain e-mails appended to the Senate Subcommittee's Recommendation to Enforce a Subpoena Issued to the CEO of Backpage.com, LLC (a full copy of which is attached as Exhibit 9 to Sheriff Dart's motion to compel (Doc. 130)) are attached hereto as Exhibit A. However, such moderation/sanitization does not change the type of "service" (*e.g.,* child prostitution) the user is advertising, thereby leaving it outside the purview of First Amendment protection. If anything, Backpage.com's moderation/sanitization of advertisements heightens Backpage.com's participation and involvement in the illegal activity, making its own actions potentially illegal, and stripping it of its disputed Communications Decency Act immunity.[1] Ad moderation/sanitization attempts to conceal the underlying criminal

---

[1] The Communications Decency Act does not immunize a party from federal criminal liability. *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) (*citing* 47 U.S.C. § 230(e)(1)).

act, making Backpage.com a possible coconspirator for concealing criminal activity,[2] and thereby rendering it liable for all activities of the conspiracy. *United States v. Saulter*, 60 F.3d 270, 277 (7th Cir. 1995 (Flaum, J.) ("Once a defendant has joined a conspiracy, as shown here, he can be held liable for all acts of his co-conspirators in furtherance of the conspiracy that he could have reasonably foreseen").

Moreover, this Court also noted that "[i]n over 800 sting operations responding to Backpage ads since 2009, Dart's officers have made arrests for prostitution, child trafficking, or a related crime 100% of the time." Doc. No. 63 at 3. Nonetheless, "Backpage maintains that there is legitimate commerce advertised in the adult section, but it has adduced no evidence of what, if any, percentage of ads in the adult section relates to non-criminal "escort" or other legal "adult" activity." *Id.* at 3-4. In fact, Backpage.com has yet to produce any evidence of any legitimate ads in the adult services section to support its claims. Nonetheless, Backpage.com claims it has suffered millions of dollars in damages as a result of Sheriff Dart's actions. Transcript of Proceedings (July 23, 2015), at 56 (attached as Exhibit B). However, as discussed

---

Moreover, the act states that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C.A. § 230(e)(3).

[2] "Any person who knowingly performs, *offers* or agrees to perform any act of sexual penetration…for anything of value, or any touching or fondling of the sex organs of one person by another person, for anything of value, for the purpose of sexual arousal or gratification commits an act of prostitution. 720 ILCS § 5/11-14 (emphasis added). The Illinois legislature has "defined three categories of prohibited conduct which constitute the crime of prostitution. The legislature apparently has determined that the offer or the agreement to perform a sexual act is as serious a social problem as the act itself." *People v. Thompson*, 407 N.E.2d 761, 764 (Ill. App. 1st Dist. 1980).

more fully below, Backpage.com cannot recover damages for lost profits from ads for illegal activities. As such, to fully assess Backpage.com's damages claim, Sheriff Dart must now be permitted to explore what percentage of the alleged millions of dollars in damages results from ads for unlawful activity.

## I. BACKPAGE IS NOT ENTITLED TO CRIMINAL PROCEEDS

Initially, it is a plaintiff's burden to prove its damages, therefore, requiring Backpage.com to identify which portion of its lost revenues can be attributed to legal advertising is not Sheriff Dart's onus. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992) (Posner, J.). It is far more likely that Backpage.com is vigorously resisting this discovery because it knows legal advertisement comprises but a trace of its lost revenue. Furthermore, "illegality" is a permitted defense and goes straight to the ecumenical issue whether the speech *in quo* is protected, as Backpage.com at most will be able to recover only for lost revenues pertaining to protected speech. Specifically, as discussed more fully below, Backpage.com cannot recover damages based on: (1) lost profits from ads for illegal activities and (2) illegal contracts.

### A. Backpage.com cannot collect damages for lost profits from ads for illegal activities

The unlawful character of the ads placed in the adult services section of Backpage.com is relevant, among other reasons, for assessing Backpage.com's purported damages from lost profits for ads being posted on its website. If Backpage.com is a party to illegal conduct by being integrally involved in the moderation/sanitization of prostitution ads that it can be found a co-author of them, then Backpage.com can recover no damages for that illegal conduct. The cases discussed below demonstrate that if such co-authorship exists, Backpage.com is *not* entitled to the lost profits from ads placed for illegal services such as adult and child prostitution

4

and human trafficking. As such, Sheriff Dart is entitled to explore the content of the ads in the adult services section, the extent to which those ads are for illegal rather than legal activities and Backpage.com's involvement in moderation/sanitization of those ads. "It is beyond dispute that [a plaintiff] cannot recover lost profits that are 'predicated on the completion of illegal activity.'" *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.,* 432 F. Supp. 2d 1319, 1348 (S.D. Fla.2006) (quoting *Carruthers v. Flaum,* 365 F. Supp. 2d 448, 470 (S.D.N.Y. 2005); *see also In re Gabapentin Patent Litig.,* No. CA 00-CV-2931 FSH, 2011 WL 1807448, at *3 (D.N.J. May 12, 2011) (same holding). In *Schiller & Schmidt,* Judge Posner, in examining plaintiff's expert damages calculation, held that the calculation was deficient because it did not separate the damages resulting from lawful *versus* unlawful conduct. Judge Posner explained that:

> For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. *Patton v. Mid–Continent Systems, Inc.*, 841 F.2d 742, 748 (7th Cir.1988) (and cases cited therein); *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1165 (7th Cir.1987). *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories that make a joke of the concept of expert knowledge. The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor—Nordisco—from the damages that resulted from particular forms of misconduct allegedly committed by that competitor, of which the theft of the mailing list, however morally reprehensible, was the lightest. No such effort was made.

*Schiller & Schmidt, Inc*., 969 F.2d at 415-16.

In addition, as far back as 1925, the Illinois Supreme Court held that "[i]t is a general principle of undoubted acceptance that courts of justice will not assist a person who has participated in a transaction forbidden by statute to claim damages growing out of such transaction or relieve himself of the consequences of his illegal act. When the unlawful act of

5

the plaintiff concurs in causing the damage he complains of he cannot recover compensation for such damage, and if he suffer injury while violating a public law, though the party injuring him is likewise a transgressor, he cannot recover for the injury if his unlawful act was a contributing cause thereof. The court will not assist either party to an illegal transaction, but will leave them where they have chosen to place themselves." *Newton v. Illinois Oil Co.*, 316 Ill. 416, 422, 147 N.E. 465, 467 (1925).

This holding by the Supreme Court has been carried to modern times by a number of Illinois Appellate Courts. In *People v. McCormick*, 774 N.E.2d 392, 399 (4th Dist. Ill. App. 2002), the defendant, a convicted criminal, argued "that ordering him to reimburse [the victim of his crime] for her own illegal activity violates public policy." The Court agreed. *Id.* The Court explained that "[v]iolating a municipal parking ordinance is illegal. The triviality of the offense does not make it any the less illegal. The fines were the penalty for the offense. Courts will not award damages growing out of the claimant's own illegal act or assist parties in relieving themselves of the consequences of their illegal activities." *Id.* (*citing Newton*, 147 N.E. at 467).

Similarly, in *Buttitta v. Newell*, 886, 531 N.E.2d 957 (Ill. App. 1st Dist. 1988), the Court held that there is a "general principle that the courts do not aid parties whose causes of action are founded on any illegal or immoral acts, including the violation of a statute, to assert rights growing out of such acts or to relieve themselves of the consequences of those acts." *Id.* at 961 (collecting cases).

Likewise, the Sixth Circuit has held in accordance with the above cases. *Gibbs v. United Mine Workers of Am.*, 343 F.2d 609, 618 (6th Cir. 1965), *rev'd on other grounds*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Specifically, the Court held that "loss of profits may not be considered as an element of damages, where the business from which they would have

resulted was, or would have been, conducted in violation of law.*" Gibbs,* 343 F.2d at 618. The court explained that the plaintiff's "only proof of loss was his estimate based on the expenses of three and one-half weeks' operations. Such assumption as to production is too speculative to justify submission of such evidence to the jury. Any possibility of doubt, however, is removed by reviewing the finding of illegality in the proposed operations. Without going into detail, it is clear that [the plaintiff's] statement of the manner in which he proposed to perform his hauling contract involved violation of the existing laws limiting axle weights." *Id.* The Circuit Court agreed with the District Judge's "conclusion that estimates of profits based on proposed violation of state axle-weight laws are of no probative value. Loss of profits may not be considered as an element of damages, where the business from which they would have resulted was, or would have been, conducted in violation of law. The District Judge correctly relied on *Shelley v. Hart*, 112 Cal. App. 231, 297 P. 82 (1931), for his view that profit estimates which contemplate illegal operations will not support an award, especially where they provide no means of separating the legal from the illegal. It is impossible to know how [plaintiff's] estimated profits would have been affected by legal operation instead of illegal. When this infirmity is added to an already uncertain showing, it must be agreed that no proper evidence was offered to support the jury verdict." *Gibbs*, 343 F.2d at 618 (citations and quotations omitted).

The Oregon Supreme Court agreed with the holding in *Gibbs.* The Court stated that "a plaintiff generally cannot recover damages derived from an illegal activity.*" Hogan v. Gridelli*, 129 Or. App. 539, 544-45 (1994) (*citing Gibbs*, 343 F.2d at 618) (regarding damages from illegal gamecock fighting).

The Utah Supreme Court similarly held that "[n]o legal damages flow from the inability to engage in an unlawful activity. Loss of profits may not be considered as an element of

7

damages where the business from which they would have resulted was, or would have been, conducted in violation of law." *Gillmor v. Wright*, 850 P.2d 431, 438 (Utah 1993) (citations and quotations omitted). In *Gilmore*, "[t]he trial court found that Shirley had lost $10,940 in profits from hunters who had purchased permits to hunt but were not allowed access to her property. However, because the trial court determined that hunting violated a Summit County ordinance, no damages were awarded. This conclusion of law is correct." *Id.*

Of course, adult and child prostitution and human trafficking are not trivial crimes. They are felonies which are punishable by fifteen years' imprisonment. If Backpage.com is complicit in such crimes by being a co-author of ads which promote them, Backpage.com certainly is not entitled to recover from Sheriff Dart the profits which it claims it has lost as a result of no longer being able to receive payment for such illegal conduct. On this basis alone, discovery into the nature of the ads and Backpage.com's involvement in their moderation/sanitization should be allowed.

### B. Backpage.com cannot collect any damages based on illegal contracts

There is a "general rule that a party to an illegal bargain cannot recover damages for breach of contract." *Costello v. Grundon*, 651 F.3d 614, 627 (7th Cir. 2011) (Tinder, J.); *see also Fed. Land Bank of St. Louis v. Walker*, 571 N.E.2d 242, 244 (Ill. App. 5th Dist. 1991) ("[e]xamples of contracts that have been legislatively declared illegal and unenforceable are gambling contracts and contracts for prostitution"); *Mani Elec. Contractors v. Kioutas*, 611 N.E.2d 1167, 1169 (Ill. App. 1st Dist. 1993) (accord). As far back as 1829, the Supreme Court held that "[t]here can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal." *Bank of U.S. v. Owens*, 27 U.S. 527, 539 (1829). This legal concept is well settled and "[t]he authorities from the earliest time to the present

unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract." *McMullen v. Hoffman*, 174 U.S. 639, 654, 19 S. Ct. 839, 845, 43 L. Ed. 1117 (1899).[3] Moreover, even when a contract is valid and "*prima*

---

[3] The illegality defense has been carried to this country from English common law, with one of the earliest cases being the 1725 case of *Everet* and *Williams* (also known as the "Highwayman's Case"), regarding the enforceability of contracts to commit crimes. Note, "The Highwayman's Case," 9 L.Q. Rev. 197, 197–99 (1893) (*Everet v. Williams* (Ex. 1725)). In the case, the contract was to share the spoils of armed robbery, which the court refused to uphold. *Id.* (cited with approval *Schlueter v. Latek,* 683 F.3d 350, 355 (7th Cir. 2012)). Moreover, the illegality defense has been widely adopted by state supreme courts. *See United States Fidelity & Guaranty Co. v. Charles*, 31 So. 558, 660 (Alabama 1901) agreement by payee not to prosecute another for embezzlement in violation of state law); *Whitney-Fidalgo Seafoods, Inc. v. Beukers*, 554 P.2d 250, 252 (Alaska 1976) (employment contract with illegally employed minor); *White v. Mattox*, 619 P.2d 9, 11 (Ariz. 1980) (contract to sell liquor license under the table); *Womack v. Maner*, 227 S.W.2d 438 (Ark. 1957) (suit to recover money paid as a bribe); *Bowyer v. Burgess,* 351 P.2d 793, 794 (Cal. 1960) (agreement not to prosecute for a crime); *Woodward v. Jacobs*, 541 P.2d 691, 692 (Colo. 1975) (contract to build dwelling where parties knowingly violated their building permit); *Smith v. David B. Crockett Co.*, 82 A. 569, 572 (Conn. 1912) (contract with salesman that contemplated the bribing of purchasing agents); *Lincoln Nat. Life Ins. Co. v. Joseph Schlandger 2006 Ins. Trust*; 28 A.3d 436, 441 (Del. 2011) (insurance policy held void under state law); *Spiro v. Highlands General Hosp.*, 489 So. 2d 802, 803 (Fla. Dist. Ct. App. 2d Dist. 1986) (contract to provide medical services where signee does not hold a medical license); *Craven v. Bates*, 23 S.E. 202, 203 (Ga. 1895) (contract void to the extent it violated usury laws); *Quiring v. Quiring*, 944 P.2d 695, 702 (Idaho 1997) (agreement to not report sexual improprieties with a child in return for quitclaim deed held unenforceable); *Kenworthy v. Stringer*, 1897 WL 3110 at *1 (Ind. 1867) (officer, in violation of duty, permitted prisoner to escape and sued to recover consideration); *An-Cor, Inc. v. Reherman,* 835 P.2d 93 (Okla. 1992) (contract between developer and consultant where agreement based upon agreement to bribe public official); *Miller v. Marshall County*, 641 N.W.2d 742, 752 (Iowa. 2001) (contract between lessor and County Board where Board did not have statutory authority to enter contract); *Martin v. Seabaugh,* 128 La. 442 (La. 1911) (gambling partnership); *Gurlach v. Skinner*, 8 P. 257, 258 (Kan. 1885) (sale of land and liquor where state liquor laws prohibit sale of liquor); *Smilansky v. Mandel Bros, et al.*, 236 N.W. 866, 867 (Mich. 1931) (contract with foreign corporation not authorized to do business in state); *Jacobsen v. Barnes*, 222 N.W. 341, 342 (Minn. 1928) (agreement for purchase of mutual insurance company and for permanent employment as officer

*facie* good," extrinsic evidence can be used to "show it has been tainted with moral turpitude, which overthrows its *prima facie* appearance, and exposes its baseness and illegality." *Dougherty v. Seymour*, 16 Colo. 289, 290 (Colo. 1891) (a landlord was not permitted to recover rent from a tenant because "extrinsic evidence" demonstrated that the landlord knew the property was going to be used as a brothel for the purpose of prostitution). Such extrinsic evidence can include "very large consideration," which is evidence that a party knew of the illegal purpose of a contract. *Rundle-Spence Mfg. Co. v. Jakopichek*, 229 N.W. 550, 553 (Wis. 1930) (lease was void as an illegal contract because a landlord was found to know that a property was intended to be used by subtenants for the illegal sale of alcohol based, in part, on having received very large consideration over the normal rent).

Based on the well-settled legal concept that there can be no recovery of damages on illegal contracts, Backpage.com cannot collect damages from Sheriff Dart based on lost profits from the illegal contracts it had and continues to have with prostitutes and pimps to pay for ads in Backpage.com's adult services section. Put another way, Backpage.com would <u>not</u> be permitted to file suit against pimps or prostitutes who placed ads on Backpage.com offering their illegal services if these pimps and prostitutes failed to pay for their ads. Such a recovery would

---

of corporation); *Morrissey v. Bologna*, 123 So.2d 537, 542-43 (Miss. 1960) (recovery of money paid for illegal liquor); *Nelson v. General Credit Corp.*, 90 N.W.2d 799, 804 (Neb. 1958) (contract for sale of automobile that violated state usury laws); *Stone v. Freeman,* 82, N.E.2d 571, (N.Y. 1948) (Held that a broker or agent, knowingly participating in criminal scheme of his employer, is a principal in pari delicto with employer, so that neither may sue the other for breach); *International Aircraft Sales, Inc. v. Betancourt*, 582 S.W.2d 632, 636 (Tex. Civ. App. Corpus Christi 1979) (contract that involved both vendor and buyer smuggling goods); *Peterson v. The Sunrider Corporation*, 48 P.3d 918, 930-31 (Utah 2002) (held that contract should be held unenforceable if it violated the Pyramid Scheme Act).

10

be not be permitted as the contracts are illegal. *See, e.g., Costello*, 651 F.3d at 627. As such, Backpage.com may not collect damages from Sheriff Dart based on its failure to earn profits from those same ads for illegal services. To ensure that Backpage.com does not seek to collect damages based on illegal contracts, Sheriff Dart should be permitted to explore the unlawful vs. lawful nature of the ads in discovery.

Moreover, Sheriff Dart should be permitted to explore in discovery that evidence which will "expose" the "baseness and illegality" of ads on Backpage.com which may seem legal on their face, and Backpage.com's knowledge of their true nature. *Dougherty*, 16 Colo. at 290. Such evidence may include that the "millions of dollars" in consideration Backpage.com receives for ads in the adult services section is of an amount so large that no reasonable person would believe that Backpage.com did not know that it was entering into illegal contracts with prostitutes and pimps for adult and child prostitution and human trafficking. In addition, while Backpage.com may argue it has immunity under the Communications Decency Act and therefore cannot be held liable for the prostitutes and pimps posting ads for illegal services, this purported immunity has no effect on Backpage.com's recoverable damages. The Communications Decency Act does not permit Backpage.com to collect damages based on the criminals advertising on Backpage.com.

Accordingly, based on the above cases and the fact that Backpage.com seeks millions of dollars in damages for lost profits from ads placed on its website, Sheriff Dart is entitled to explore the unlawful nature of the ads in the adult services section of Backpage.com.

## II.    PROPOSED DISCOVERY

It is not likely that Backpage.com categorizes its income by categories such as "child prostitution ad revenue," "human trafficking ad revenue," "consenting adult prostitute ad

revenue" versus "used car sales ad revenue," and since Backpage.com has yet to produce a single document about its financial accounting and claimed losses, it is a bit unfair to constrain Sheriff Dart to any particularized discovery plan. Likewise, it is not anticipated that Backpage.com keeps records of how much criminal activities its ads comprise. Much of how discovery will have to be conducted depends on how Backpage.com accounts for its revenue, and characterizes its ads, in the ordinary course of its business, as is yet to be shown in discovery. However, Sheriff Dart presently envisages the following discovery procedures:

1. Initial review of Backpage.com revenue reports (before and after American Express, Visa and MasterCard departed the business—same period for all discovery below, likely September, 2010 to date)

2. Initial review of Backpage.com ads

3. Initial review of Backpage.com moderation/sanitization protocols (necessary to show Backpage.com is engaged in criminal acts)

4. Initial review of differentiated pricing for Backpage.com ads based on content, the section they appear and geographical location

5. Interrogatories requesting Backpage.com to segregate legal income

6. Interrogatories requesting Backpage.com to segregate legal ads

7. Interrogatories on how pricing was established, the sections providing the most revenue, the geographical locations providing the most revenue etc.

8. Follow-up document requests indicated by the foregoing

9. Depositions of persons with knowledge how legal income was segregated

10. Depositions of persons with knowledge how legal ads were segregated

revenue" versus "used car sales ad revenue," and since Backpage.com has yet to produce a single document about its financial accounting and claimed losses, it is a bit unfair to constrain Sheriff Dart to any particularized discovery plan. Likewise, it is not anticipated that Backpage.com keeps records of how much criminal activities its ads comprise. Much of how discovery will have to be conducted depends on how Backpage.com accounts for its revenue, and characterizes its ads, in the ordinary course of its business, as is yet to be shown in discovery. However, Sheriff Dart presently envisages the following discovery procedures:

1. Initial review of Backpage.com revenue reports (before and after American Express, Visa and MasterCard departed the business—same period for all discovery below, likely September, 2010 to date)

2. Initial review of Backpage.com ads

3. Initial review of Backpage.com moderation/sanitization protocols (necessary to show Backpage.com is engaged in criminal acts)

4. Initial review of differentiated pricing for Backpage.com ads based on content, the section they appear and geographical location

5. Interrogatories requesting Backpage.com to segregate legal income

6. Interrogatories requesting Backpage.com to segregate legal ads

7. Interrogatories on how pricing was established, the sections providing the most revenue, the geographical locations providing the most revenue etc.

8. Follow-up document requests indicated by the foregoing

9. Depositions of persons with knowledge how legal income was segregated

10. Depositions of persons with knowledge how legal ads were segregated

11. Depositions on how pricing was established, the sections providing the most revenue, the geographical locations providing the most revenue etc.

12. Depositions of persons with knowledge about moderation/sanitization of illegal ads

13. Depositions of persons who know where Backpage.com markets itself

14. Follow-up document requests indicated by deposition

15. Reports of plaintiff's experts

16. Depositions of plaintiff's experts

17. Preparation of defense expert reports and submission to deposition

## Conclusion

Certainly, Backpage.com is represented by competent counsel, so certainly it knows it cannot recover for posting illegal ads. While the onus is on Backpage.com to prove that the damages it seeks stem from legal, rather than illegal, activities, nevertheless Sheriff Dart should in no way be precluded from engaging in discovery on this vital issue.

    Respectfully submitted,

    THOMAS J. DART,
    SHERIFF OF COOK COUNTY, ILLINOIS

    By:____/s/ Paul J. Kozacky_____
    One of his attorneys

Paul J. Kozacky
Alastar S. McGrath
Jerome R. Weitzel
KOZACKY WEITZEL McGRATH, P.C.
55 West Monroe, 24th Floor
Chicago, Illinois 60603
312-696-0900

## CERTIFICATE OF SERVICE

      The undersigned attorney, on oath, certifies that on April 6, 2016, he served the foregoing BENCH MEMORANDUM ON ILLEGALITY DISCOVERY via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.

                                            /s/ Paul J. Kozacky