UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BACKPAGE.COM, LLC, | |
| Plaintiff, | Case No. 1:15-cv-06340 |
| v. | Honorable John J. Tharp, Jr. |
| THOMAS J. DART, Sheriff of Cook County, Illinois | |
| Defendant. | |

### BACKPAGE.COM'S OPPOSITION
### TO SUGGESTION OF MOOTNESS

Backpage.com hereby responds to the Court's request for position papers or motions addressing the question of whether this case is moot (Dkt. 195).

### BACKGROUND AND INTRODUCTION

On January 9, 2017, Backpage.com announced it had removed its "Adult" sections from the website, effective immediately, as the direct result of government censorship.[1] On January 11, 2017, the Court set a status hearing for January 19, 2017 (Dkt. 193), which was later reset for February 7, 2017 (Dkt. 194). At the status hearing, the Court raised *sua sponte* the issue of whether the case is moot, directed the parties to meet and confer regarding that point, and elicited position papers or motions or questions addressing that question by

---

[1] *See* http://www.backpage.com/classifieds/Media. *See also*, *e.g.*, *People v. Ferrer, Lacey & Larkin*, No. 16FE19224 (Dec. 9, 2016) (granting demurrer dismissing charges against Backpage.com principals), *refiled* No. 16FE024013 (Sup. Ct. Sacramento Cty. Dec. 23, 2016); *Senate Permanent Subcomm. on Investigations v. Ferrer*, -- F.Supp.3d ---, 2016 WL 4179289 (D.C. Cir. Aug. 5, 2016) (ordering Backpage.com CEO to produce documents), *appeal docketed and expedited*, Nos. 16-5232, 16-5274 (D.C. Cir. argument scheduled Mar. 3, 2016); *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015).

February 21, 2017. The parties conferred on February 13, 2017, by telephone call, during which counsel for Plaintiff Backpage.com set out to counsel for Defendant Sheriff Dart a proposal for addressing the Court's concerns about mootness, which was later outlined in writing at defense counsel's request. *See* Declaration of James C. Grant in Support of Opposition to Suggestion of Mootness, ¶¶ 2-3, and Ex. 1.

Specifically, Backpage.com suggested a stipulation to reflect and confirm the positions stated on Sheriff Dart's behalf during the February 7 status hearing that, because Backpage.com's adult sections were removed, the Sheriff has no interest taking action to terminate or hamper financial services for the website. *Id.* Backpage.com in furtherance of this made two simple requests bearing on mootness: that in closing out the case the Sheriff agree to a stipulation mirroring the preliminary injunction ordered by the Seventh Circuit, and that he send a letter to Visa, MasterCard and other recipients of his prior threat stating that, given the adult-category shutdown, he has no objection to provision of credit card, payment processing or other financial services to Backpage.com.[2] To date Backpage.com has not received a response from the Sheriff. *Id.* ¶ 4.

This submission accordingly responds to the Court's request for briefing on the issue of mootness. As discussed below, Sheriff Dart's silence underscores not only Backpage.com's ongoing need for injunctive and declaratory relief on issues that remain "live" in which it has "a legally cognizable interest," *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000), but also the several reasons why this case is not moot.

---

[2] *Id.* The letter also addressed payment of attorney's fees, or a path forward on that issue.

2

*First*, as the Seventh Circuit noted, the Sheriff did not target only Backpage.com's adult section and demand that card companies stop providing services in that limited regard. Rather, he set his sights on and made demands with respect to the site as whole, as part of a "campaign" to "crush Backpage, period." *Dart*, 807 F.3d at 230, 231-32. Backpage.com is still operational in all respects other than its adult categories, and thus remains at risk.

*Second*, to whatever extent Sheriff Dart disclaims further interest in Backpage.com, "mere cessation of [] conduct sought to be enjoined does not moot a suit to enjoin [it], lest dismissal … leave the defendant free to resume." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544-45 (7th Cir. 2016). The affirmative steps needed to support mootness are not present here, and any promises that might be conceived are undermined by the Sheriff's track record.

*Third*, Sheriff Dart's actions against Backpage.com are "capable of repetition but will evade judicial review." *Id*. at 546. This case was precipitated by quick-hit action by the Sheriff's office that paid immediate dividends, even if it was later preliminarily enjoined. *See Dart*, 807 F.3d at 232 ("So the threats had worked."); *id*. at 239. Injunctive relief will cut off such future efforts before they can begin.

For all of these reasons, the Court should hold this case is not moot and expeditiously proceed to Plaintiff's motion for summary judgment.

## DISCUSSION

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to [a] prevailing party." *Knox v. SEIU Local 1000*, 132 S. Ct. 2277, 2287 (2012); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (same). As defendant, Sheriff Dart "carries a heavy burden" if he wishes to have Backpage.com's claims held moot. *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001).

3

Because he cannot carry that burden here, and because grant of Backpage.com's motion for summary judgment will afford it "effectual relief" from further meddling by the Sheriff, the Court should hold that this action is not moot and decide the pending dispositive motions.

## I. THE SHUTDOWN OF BACKPAGE.COM'S ADULT SECTION DOES NOT MOOT THIS CASE.

Under the plain facts of this case, closing Backpage.com's adult category does not moot the case because Sheriff Dart's letters were not directed just to the site's adult category, but to the service as a whole. *Dart*, 807 F.3d at 235. As the Seventh Circuit pointed out, the Sheriff in his letters "doesn't demand that [the recipients] refuse to allow 'your credit cards' to be used to pay *just* for ads on Backpage's website that promote illegal products or services—he demands [they] cease and desist from placing *any* ads 'on websites like Backpage.com'" and "*a fortiori* on Backpage's own website … even though 'adult' ads are only one of eleven types of classified ad published." *Id.* at 231-32. These letters, the court held, were "more likely aimed at bankrupting Backpage—lest the ads that the sheriff doesn't like simply migrate to other sections of the website." *Id.* at 233.

And, indeed, the site is still operating, and all categories other than "adult" are available, including "dating," "services," and "local places," among others. *See*, *e.g.*, http://chicago.backpage.com. Notably, prior to sending his letters at issue in this case, the Sheriff's office sought to have Backpage.com eliminate not just the adult sections, but the personals as well. Dkt. 6 ¶¶ 18, 19 & Exs. I, J. There is no guarantee that material posted in these remaining categories will not prompt future illegal censorship demands, as the Sheriff's past behavior portends.

4

What is clear, however, is that Sheriff Dart believes he has the authority to pressure Backpage.com or third parties to close down any category on the site that offends him, as his counsel made clear to the Seventh Circuit. That Court's questions contemplated precisely this state of affairs, *i.e.*, shutdown of the adult category. When Judge Posner asked "where does it stop" and "what if Dart said I don't like flirtatious activity so even if Backpage abandons [] escorts and [] body rubs and so on, and really is just a dating service," the answer from Dart's counsel was that letters like those at issue in this case would be proper.[3] Asked whether it would be permissible for the Sheriff to write "Bonwit Teller or something and s[ay] I don't like your selling short skirts" because "I think it promotes sexual improprieties," his counsel's response was unqualified: "That would be proper Your Honor." *Id*. 10. In short, asked whether it would be constitutional for "everything that Sheriff Dart doesn't like [to] receive[] letters from the Office of the Sheriff," counsel's unequivocal response was that "Sheriff Dart has his own First Amendment right and can express his opinion." *Id*.

The Seventh Circuit held otherwise, of course, *Dart*, 807 F.3d at 235, wondering "where would such official bullying end, were it permitted to begin?" Noting that "public officials [could] doubtless disapprove of bars, … or lawyers, or … men dating men or women dating women" and that "ads for all these things can be found in non-adult sections of Backpage," the court held "it would be a clear abuse of power for public officials to try to eliminate them." *Id*. Given the Seventh Circuit's observations and holdings in these regards, a permanent injunction to prevent such abuses of power remains a "live" need.

---

[3] Unofficial Transcript of Oral Argument on Backpage.com's Appeal of Denial of Preliminary Injunction at 9-10, *Backpage.com, LLC v. Dart*, No. 15-3047 (7th Cir. Nov. 13, 2015) (attached as Grant Decl. Ex. 2).

One may hope no public official would go so far, and Dart's counsel tried to suggest at the status hearing that the Sheriff no longer was interested in censoring Backpage.com. But such assertions are far from sufficient to moot the case. It is basic law that "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010). As in *Stevens*, this case "is itself evidence of the danger in putting faith in government representations of prosecutorial restraint." *Id*. Sheriff Dart may suggest that the Court can take him at his word when he says, in effect "trust me"—but "[t]hat would require a broad trust indeed from a generation of judges not far removed from the attacks on James Joyce's *Ulysses* as obscene"—or, from the abusive acts in *Bantam Books*. *See ACLU v. Reno*, 929 F.Supp. 824, 857 (E.D. Pa. 1996) (Sloviter, C.J.), *aff'd*, 521 U.S. 844 (1997).

As a separate matter, closing the adult section of the website does not moot the case as a matter of law if there is a possibility—even a remote or improbable one—that its operations could resume. The Supreme Court addressed a closely analogous situation in *City of Erie v. Pap's A.M.* where the owner of an adult club closed his business, sold the building, and retired to Florida. The Court nevertheless held these actions did not moot the case. 529 U.S. at 287. The Court observed that Pap's was "still incorporated under Pennsylvania law, and [] could again decide to operate a nude dancing establishment," and that "the 'advanced age' of Pap's owner (72) d[id] not make it 'absolutely clear'" such resumption was beyond the pale. *Id*. at 287-88. Accordingly, it held the case was not moot in that the company "still ha[d] a concrete stake in the outcome of the case … to the extent Pap's has an interest in resuming operations." *Id*. at 288. Backpage.com similarly has a "concrete stake" in the issuance of injunctive and declaratory relief here. Backpage.com has prevailed in numerous

6

challenges to its First Amendment rights and continues to fight those battles. The current change in the status of the adult sections does not forecast the outcome of those cases.

## II. MERE CESSATION OF ACTIONS TARGETING BACKPAGE.COM CANNOT MOOT THE CASE.

A mootness finding also does not lie based on a notion or assertion that Sheriff Dart will change course and stop targeting speech at Backpage.com because it has shut down its adult category, given the "general rule [] that voluntary cessation of a challenged practice rarely moots a federal case." *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002). This rule exists because, otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off." *Norwood*, 817 F.3d at 544. Accordingly, "a defendant seeking dismissal based on its voluntary change of practice or policy must clear a high bar" by making it "***absolutely clear*** that the allegedly wrongful behavior could not reasonably be expected to recur," with that "heavy burden" lying at all times "with the party asserting mootness." *Id*. at 545 (emphasis added).

Sheriff Dart in this case faces two roadblocks to satisfying this burden right out of the gate. First, a change in policy, adopted after commencement of suit, not embodied by any statute or regulation, is not the kind of voluntary cessation that eliminates controversy so as to support finding mootness. *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998). Here, there is no such codification to formally restrain Sheriff Dart's future targeting of Backpage.com, and he has declined invitation to even issue letters saying his concerns have been satisfied and that the defunding he previously demanded is no longer necessary. *See generally* Grant Decl. Second, the rule that voluntary cessation does not moot a case applies with special force if the defendant sought to impose a prior restraint under the First

7

Amendment. *Pleasureland*, 288 F.3d at 999-1000. And that is exactly what Sheriff Dart effected in this case. *See Dart*, 807 F.3d at 235 ("Threatening penalties for future speech goes by the name of 'prior restraint,' … the quintessential first-amendment violation.").

Even beyond this, nothing in Sheriff Dart's history or actions supports a finding that it is "absolutely clear" his conduct found unlawful by the Seventh Circuit will not recur. The Sheriff's efforts in this arena date back nearly a decade. First, Sheriff Dart targeted adult ads at Craiglist.com by bringing a lawsuit that was on its face an affront to the First Amendment and a violation of the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). *See Dart*, 807 F.3d at 231 (citing *Dart v. Craigslist*, 665 F.Supp.2d 961 (N.D. Ill. 2009)). Though rebuffed by the courts, that effort proved successful, *id.*, and he moved on to Backpage.com.

Claiming to have conducted "undercover investigation" of the site, Sheriff Dart's office demanded Backpage.com be brought "into legal compliance" by "remov[ing] the Personals and Adults sections." Dkt. 6 ¶¶ 18, 19 & Exs. I, J. He later repeated the demand, coupled with threat of prosecution under Illinois's human trafficking statute, *id.* Ex. L, and made public statements that "Backpage is a conduit to criminality" that "need[s] to be held accountable." Dkt. 7 Ex. E; Dkt. 173 ¶ 1. Later, frustrated that "legislative and litigious efforts" failed, Sheriff Dart brought on new hires and formed a team for the specific purpose of "exploring legal, legislative, and ***all other angles***" to eliminate adult ads on Backpage.com, "legally or otherwise,"[4] leading to the letters to the card companies underlying this suit, and follow-on "pressure tactics" by the Sheriff's office to gain their acquiescence. *Dart*, 807 F.3d at 233, 237.

---

[4] Dkt. 82-1 (emphasis added); Dkt. 82-2; Dkt. 83, Hr'g PX 68 (sealed).

8

Even after the card companies caved, he continued to monitor their activity and to bring additional pressure to bear when vestiges of card services remained available. Dkts. 82-23, 82-24, 82-32, 82-42. When he learned of the availability of alternative payment methods, Dart's team contacted the governor and attorney general of Texas, and urged the Chief Postal Inspector of the United States Postal Service to investigate or prosecute for these payments by mail. Dkts. 82-35, 82-36. Sheriff Dart also maintained contact with federal legislators in their pursuit of Backpage.com. *See*, *e.g.*, Dkt. 136-1 at 62 (CCSO Priv. 004026-4030: communication with Kirk's office). His efforts ceased only when the Seventh Circuit ordered entry of a preliminary injunction. Even now, the Sheriff cannot agree to put in writing—not even to this Court, but simply to those he previously wrote—that he has no ongoing objection to restoring card, payment and other financial services to Backpage.com.[5]

This pattern of indifference to legal limits is why this Court should be "understandably skeptical" to the extent Dart "seeks dismissal of [the] injunctive claim as moot on the ground that [he] has changed [his] practice while reserving the right to go back to [his] old ways." *Norwood*, 817 F.3d at 544. Nothing in Sheriff Dart's history with Backpage.com indicates he will refrain from his prior wrongful behavior if he finds something at the site he finds objectionable, or if there is any shift in the current status quo.

Not only is Sheriff Dart's "voluntary cessation" not captured and governed by any kind of legal mandate like an amended statute or formal policy statement, *see supra* 7, this is

---

[5] Grant Decl. ¶¶ 2-4 & Ex. 1. The Court in this connection also should not lose sight of the scorched-earth approach Sheriff Dart has taken to this case, including among other things not only intransigence and dissembling in producing documents, but also making repetitive motions to gain invasive discovery of Backpage.com's practices with which he disagrees, and of its principals, even when there is no relevance to issues in the case. *See* Dkts. 130, 132, 143, 145, 152, 153, 161, 162, 171, 179, 189; *see also* Dkts. 172, 192.

9

not a case where a law or rule of general application was applied and could be revised to show unlawful conduct will not recur. Rather, it involves "official bullying" targeted to a specific company whose speech the Sheriff disliked. *Dart*, 807 F.3d at 235. When a government official takes repeated actions in excess of lawful authority, targeted on an individual basis, as opposed to applying wider policy, the court considering mootness must account for the "real prospects … plaintiffs would again face the treatments they were challenging." *Norwood*, 817 F.3d at 544 (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999)).

### III. THIS CASE IS NOT MOOT BECAUSE THE SHERIFF'S ACTIONS ARE CAPABLE OF REPETITION YET EVADING REVIEW.

This case also is not moot because Sheriff Dart's "alleged wrongdoing is capable of repetition but will evade judicial review." *Norwood*, 817 at 546. This exception to mootness applies when "the challenged action is in its duration too short to be fully litigated prior to expiration," and "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*. Here, Sheriff Dart has proven himself capable of conceiving "outside the box" strategies to "disrupt Backpage.com," Dkt. 82-4 at CCSO16112, that have the capacity to quickly do harm that cannot be undone by resort to the courts, even on an ultimately successful constitutional challenge.

The reasonable expectation that Backpage.com will face adverse action from Sheriff Dart again in the future is largely addressed in Sections I and II above, especially the latter. The Sheriff has made no commitment not to similarly pursue Backpage.com, and eschewed the opportunity to inform stakeholders that his prior threats need no longer be heeded. *See supra* 2, 9. And his history is that he will try anything that he thinks might work if he decides to take issue with Backpage.com (or similar online intermediaries). *See supra* 8-9.

Significantly, courts have held that this prong can be satisfied even without the "precise historical" predicate that exists here. *Ralls Corp. v. Committee on Foreign Inv. in United States*, 758 F.3d 296, 324 (D.C. Cir. 2014). It also "is not to be applied with excessive stringency," such that "a controversy need only be *capable* of repetition, not more probably than not." *Id*. (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009); *Honig v. Doe*, 484 U.S. 315, 318 n.6 (1988); *Doe v. Sullivan*, 938 F.2d 1370, 1378-79 (D.C. Cir. 1991)) (internal quotation marks omitted). Sheriff Dart is certainly "capable" of resuming his unconstitutional "campaign to … crush Backpage," *Dart*, 807 F.3d at 230, should anything on the site motivate him to do so.

On the other half of the test, "challenged action evades review if it is too short in duration to be fully litigated in the United States Supreme Court before it expires" which, as "a rule of thumb," requires two years. *Ralls*, 785 at 321. This case is well into its second year, it has not advanced beyond summary judgment (which has been briefed and submitted), and it has been 20 months since credit cards could be used at Backpage.com, due to Sheriff Dart's letters. The Sheriff may argue "[t]he ordinary course of injunction litigation should suffice to address the merits of a challenge to any possible repetition" of his actions. *Norwood*, 817 F.3d at 547. But even though a TRO issued, and Backpage ultimately secured a preliminary injunction, the card companies Dart threatened had already acceded to his demand that their use be disallowed at Backpage.com, a state of affairs that continues to this day, despite the injunctive relief. There is every reason to believe the Sheriff's next gambit will be equally amenable to causing immediate harm, notwithstanding Backpage.com's ability to pursue and even prevail in seeking preliminary injunctive relief. *Cf. Matter of Establishment of Inspection of Caterpillar, Inc.*, 55 F.3d 334, 337 (7th Cir. 1995) (evading

review prong "do[es] not require litigants to subject themselves to civil or criminal sanctions"). And given the fact that Sheriff Dart proceeded by using informal letters that had an immediate effect, the only feasible remedy is to enjoin such lawless behavior.

## CONCLUSION

For the foregoing reasons, this case is not moot, and the Court should proceed to Backpage.com's Motion for Partial Summary Judgment.

Dated: February 21, 2017

        Respectfully submitted,

    By:   *s/ Robert Corn-Revere*
        Robert Corn-Revere (admitted *pro hac vice*)
        Ronald G. London (admitted *pro hac vice*)
        Lisa B. Zycherman (admitted *pro hac vice*)
        DAVIS WRIGHT TREMAINE LLP
        1919 Pennsylvania Ave., N.W., Suite 800
        Washington, DC 20006
        Telephone: (202) 973-4200

        James C. Grant (admitted *pro hac vice*)
        Ambika K. Doran (admitted *pro hac vice*)
        DAVIS WRIGHT TREMAINE LLP
        1201 Third Avenue, Suite 2200
        Seattle, WA 98101
        Telephone: (206) 622-3150

        Charles H.R. Peters
        SCHIFF HARDIN LLP
        233 South Wacker Drive, Suite 6600
        Chicago, IL 60606
        Telephone: (312) 258-5500

        *Attorneys for Plaintiff Backpage.com, LLC*

# CERTIFICATE OF SERVICE

The undersigned certifies that on the 21st day of February, 2017, he electronically filed the foregoing Plaintiff Backpage.com, LLC's Opposition to Suggestion of Mootness with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following counsel of record:

To: **Jill V. Ferrara**
Cook County State's Attorney's Office
Assistant State's Attorney
50 W. Washington St., Room 500
Chicago, IL 60602

**Sisavanh Baccam Baker**
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602

**Alastar Sean McGrath**
**Jerome Raymond Weitzel**
**Paul J. Kozacky**
**Brian P. O'Connor**
**Jessica Fricke Garro**
Kozacky Weitzel McGrath, P.C.
55 W. Monroe, #2400
Chicago, IL 60603

**Barack S. Echols**
**Hariklia Carrie Karis**
**Zachary D. Holmstead**
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

**Tom E Henze**
**Janey Henze Cook**
Henze Cook Murphy, PLLC
4645 North 32nd Street
Suite 150
Phoenix, AZ 85018

This pleading was served upon the attorneys as listed above, pursuant to the Northern District of Illinois General Order on Electronic Case Filing.

[x] Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on: February 21, 2017.

s/ *Robert Corn-Revere*
Robert Corn-Revere