# EXHIBIT B

*Backpage.com, LLC v. Dart*
United States Court of Appeals for the Seventh Circuit, No. 15-3047
Argument on Backpage.com's Appeal of Denial of Preliminary Injunction
Friday, November 13, 2015; 9:30 a.m., Chicago, Illinois

Before:  Judges Richard Posner, Ken Ripple and Diane Sykes

| | |
|---|---|
| J. Posner | Ladies and Gentlemen.  Our first case for argument is *Backpage v. Dart*.  Mr. Corn-Revere. |
| | Before you start, there's a problem.  The disclosure, disclosure statement in your brief says that Backpage is a Delaware limited liability company and a wholly-owned subsidiary of another company, which is privately held.  You haven't disclosed the name of that company, as you are required to do. |
| Corn-Revere | Your Honor, I would have to defer to my colleague Mr. Grant who is with me who can speak to that point. |
| J. Posner | Okay. |
| Grant | I am happy to respond Your Honor.  We can either supplement the statement for the court's purposes or I can indicate at this point that the immediate parent is a company called |
| J. Posner | Excuse me.  I am sorry. |
| Grant | The immediate parent is a company called IC Holdings LLC.  There's a chain of a variety of different companies, but if the court's pleasure, we will |
| J. Posner | Well that's find.  Could you, did you say IC |
| Grant | IC. |
| J. Posner | Capital I? Capital C? |
| Grant | That's right, Your Honor. |
| J. Posner | And what's the rest of it? |
| Grant | IC Holdings LLC.  It's also privately held. |
| J. Posner | IC Holdings and is there an LLC or something? |
| Grant | There is, that's correct. |
| J. Posner | So that's the, that's the parent. |

Grant | That's the immediate parent and there are other parents above that. As I say, we're happy to submit a supplemental statement.

J. Posner | Ok. I'd appreciate, we'd appreciate that. The problem of course is that the judges have to know who the owners are, who the corporate owners are because there might be recusal. It's very unlikely with the LLC, but it's a possibility.

Grant | Understood Your Honor. We're happy to do that.

J. Posner | That's fine. Yes. Okay.

Corn-Revere | Thanks for clearing that up. And good morning your honors. And may it please the court. Let me start with three points on which all parties agree. First, Sheriff Dart set up a task force for the specific purpose of taking down Backpage.com as they put it legally or otherwise. Secondly, this was not limited to just a couple of letters being sent. The office set up a task force that sent letters engaged in aggressive follow-up which the court found could reasonably, the district court found could be reasonably perceived as a threat. And third, that Visa and MasterCard responded immediately to those letters, met Sheriff's Dart deadline, and severed all ties with Backpage.com as Sheriff Dart had demanded. Now the parties don't disagree on any of these findings, but simply on the application of law to those findings. In this case, our position is that the district court's failure to grant preliminary injunction is based on three fundamental errors of law. First, that the court misapplied the Supreme Court precedent of *Bantam Books v. Sullivan*, and its progeny. That informal threats of official sanctions represent an informal prior restraint in violation of the First Amendment. Secondly, that the court in reaching this conclusion misallocated the burden of proof requiring proof of the company's motivations in responding to the letters. And also shipping the burden of proof on whether or not the speech was something that the government could regulate. And third, the court applied the wrong standard for preliminary injunction, disregarding the factors that are uniquely applicable in First Amendment cases.

First with respect to *Bantam Books* point, the court interestingly agrees that the letters and the efforts of Sheriff Dart's office could reasonably be perceived as a threat and agreed that after those threats were issued, that the companies responded to that letter. Now where the court differs and the reason it reached the conclusion it did is to say that it wasn't clear that they were responding to the threat in the letter or just to the general requests that the card companies be good citizens. But in fact in every *Bantam Books* case there is a combination of a request for action and an appeal to being a good citizen and threats. And that's what makes the difference between a case where you find an unconstitutional informal prior restraint and one where it's simply a government agency imploring someone to act like a good citizen.

| | |
|---|---|
| J. Sykes | Yeah, I didn't see in any of the cases applying *Bantam Books* in other circuits this idea of separating out the threatening and nonthreatening parts of the communique. |
| Corn-Revere | No, as a matter of fact, that is an innovation that Sheriff Dart has come up with and which the district court applied. There is no separation, there's no effort to parse out threatening from nonthreatening language. And that's true just as a general proposition under First Amendment cases, because you're not required to demonstrate, once the government has crossed the line, not required to demonstrate why speech is affected or why speech is chilled. *Street v. New York* is the case that we cite for that proposition. But also in the *Bantam Books* cases, it would be impossible |
| J. Sykes | It's an objective test. |
| Corn-Revere | I'm sorry. |
| J. Sykes | It's an objective test. |
| Corn-Revere | Exactly. If, once you're reached the conclusion that it is a reasonable person would perceive the communication as a threat, then that crosses the threshold for a *Bantam Books* violation. And then when you have an extreme reaction to it, as you did in this case, in this case cutting off all ties, then you've made your Bantam Books case. And I don't know how you can maintain a *Bantam Books* challenge otherwise. Because then it would place an impossible burden on the plaintiff to psychoanalyze what someone is responding to. And there's not a single case where a threat has been found where the court didn't find that it was a colorable *Bantam Books* claim, or grant injunctive relief. |
| J. Ripple | But you do take the position that there has to be a threat plus a reaction to make out the cause of action. Is that right? |
| Corn-Revere | I think as a practical matter, all of the cases have found both where there is a threat and a reaction as you do here. I think in First Amendment terms, finding a threat, a threat enough is something the government isn't permitted to do. But as a practical matter you have cases that come to courts where there has been both a threat and a reaction – as you had in this case. I mean you had not just the letters being sent, but you had an aggressive follow-up, both before the card companies made their decisions and afterwards. For example, after the letters were sent, you had what the district court below described as hounding the card companies for a response, giving them a deadline, threatening them with a virtual perp walk if they didn't come around. And so not surprisingly both Visa and MasterCard announced by the morning of Sheriff Dart's threatened press conference that in fact they had reached that decision. But it didn't stop there. Right. The district court found that there was follow-up. They followed-up to make sure that you couldn't use cards on Backpage.com. Sheriff Dart's office tried to place ads using credit cards and they extended it beyond that, the record reflects showing |

|  |  |
|---|---|
|  | that they wanted to make sure that there were no replacements found to replace the credit cards as a source of income for Backpage.com. Contacting the governor's office of Texas. Contacting the postal inspector. Contacting American Express even to make sure that you couldn't use a generalized credit for anything in the adult section. So, there was the aggressive follow-up. And you did have a reaction. So both elements of those *Bantam Books* cases have been met. By contrast, all of the cases cited by Sheriff Dart that suggest that there hasn't been a *Bantam Books* case made are cases where the courts specifically found there was no threat. So just based on the findings of the district court, if you properly apply the law, then you would find in this case an informal prior restraint, and a violation of First Amendment. |
| J. Sykes | There is this ambiguous language in the *Bantam Books* case that's picked up in some of the case law from the other circuits about the recipients' reaction to the threat as not being voluntary. And that suggests the injection of a sort of subjective element in the legal standard and again some of the case law from the other circuits seems to pick up on this, but I'm not sure that one line or one passage in the Bantam Books case should be read for all its worth on that score. |
| Corn-Revere | They really are trying to squeeze a lot out of that, aren't they? It's interesting because both sides tend to quote that language about how it was found that this was perceived as threatening. But it's followed immediately by the line saying that this is based on common experience, that people don't likely regard veiled threats from the law enforcement official. And that means is an objective test, as you suggested earlier. |
| J. Sykes | And so the recipients or the listeners' actual response may be evidence that bears on the question, the objective test question. But it's not a necessary element of the |
| Corn-Revere | Exactly. In this case, if we had come to you and the credit card companies had not reacted at all, and we alleged that Sheriff Dart had violated our First Amendment rights by making the threat with no reaction, then it would be a harder case, for that reason. |
| J. Ripple | Picking up on my sister's question, I mean this obviously from my earlier question bothers me as well. Why couldn't we simply say that the cause of action is complete when there is in fact a threat on an objective basis and that the question of reaction or no reaction really goes to the question of whether a preliminary injunction is warranted in the particular case. |
| Corn-Revere | I think it could be divided that way but I don't think it's necessary to, again in the First Amendment context where you look at the history of cases where government officials had issued threats and even a chilling effect of the possibility of a reaction is enough. Again I think it is the specific First Amendment context that makes a significant difference here where you do have a very tangible reaction. To your question about whether or not preliminary injunctive relief is |

|   |   |
|---|---|
|   | warranted, I think that the efforts that Sheriff Dart has made that there be no replacements for MasterCard and Visa, looking beyond just their immediate reactions to it, the stated purpose of this task force and of this campaign as set forth in the strategy memo that was laid out in the record, was to choke off all revenues for Backpage.com, and they took steps to make sure that happened. So whatever the motivations may have been for MasterCard and Visa, once that was accomplished they have gone out of their way to make sure that those revenue sources are not replaced. And that's the reason why preliminary injunctive relief is particularly called for in this case because it simply is the completion of Sheriff Dart's effort to choke off all revenues to Backpage.com |
|   | You know, as I say, I think the question of whether or not the *Bantam Books* case has been made out, certainly it's clear from this record. And certainly enough for a preliminary injunctive relief. We're not evaluating the entire merits of the case at this point, just whether or not we have made a sufficient case to show that we're likely to succeed on the merits. And as I say, the findings of the district court certainly support that that is the case. |
| J. Sykes | There seemed to be some conceptual confusion in the district court's opinion as well about the element of causation here, and how it applies in the context to the First Amendment. That it seems to me was one of the problems with this parsing out of the letter into threatening and nonthreatening aspects and then suggesting that you're going have to prove or bear the burden of establishing to the court's satisfaction at least at the preliminary injunction stage that the threatening elements of the letter were the but-for cause of the disaffiliation of the credit card companies with your client's website. And I think that gets First Amendment causation doctrine wrong. |
| Corn-Revere | Yes. |
| J. Sykes | It's not a but-for requirement, at least not that's not the plaintiff's burden. |
| Corn-Revere | Yes Your Honor. I couldn't agree more and for two reasons. I mean, one is the fact that the court agreed that the letter was the cause of the termination and once you've reached that conclusion I think that is the completion of making the case for a preliminary injunction in a *Bantam Books* context. The second issue the court took on was to suggest that if there's a burden of proof it should be imported from this circuit's cases on retaliation where you have a burden shifting kind of analysis. And again, there under those cases I think the answer is clear that preliminary injunctive relief should be granted. First of all, where the letter itself is the cause of the credit card companies' actions I think there we've established that it is a motivating factor, and at which point under that test, under *Surita v. Hyde*, then it would be incumbent upon Sheriff Dart to prove that it wasn't a reaction to the threats that caused the credit card companies to act as they did. |
| J. Sykes | Right. And that's relevant only on the question of damages, right? That's not relevant on an injunctive prospective injunctive remedy. |

| | |
|---|---|
| Corn-Revere | I don't think you need it for injunctive relief. I agree with you there. |
| J. Sykes | I mean it may, you know, minimize or have some bearing on the measure of damages, but not, not really in the context of whether there's been a First Amendment violation that's enjoinable, seems to me. |
| Corn-Revere | That's right, but it's one of the ways in which the court improperly changed the burden of proof, or shifted the burden of proof onto Backpage.com. You'll see in a variety of places in the opinion where it says it is up to Backpage.com to prove how much of its site has legal speech. Well, again, in the First Amendment context the government doesn't get to presume that the speech is illegal. And it's particularly interesting the background that led Sheriff Dart to this point in addressing that entire question. He tried to make exactly the same argument when he brought a nuisance case in the Northern District of Illinois against Craigslist, arguing that all of Craigslist, because it has an adult section, is therefore illegal. Improperly equating anything having to do with adult services with illegality. He's done the same thing in this case. You could substitute the briefs in this case for the ones submitted in the Craigslist case. And in that case the Northern District quite properly said no, the burden of proof is on the government and you don't get to presume that those things are equivalent. It's important in this case because that's one of the issues that the district court used in weighing the balancing of factors saying that it really is up to Backpage.com to prove legality when in fact in the First Amendment context exactly the opposite is true. Sheriff Dart has expressed frustration with the fact that other states have passed laws trying to ban adult services sections on Backpage and other classified advertising websites, and those cases reached exactly the same conclusion that the First Amendment doesn't allow you to presume the illegality and ban whole categories of speech, which Sheriff Dart tried to bypass in this case simply by using informal methods. But again under *Bantam Books* that's simply not permitted. |
| | And then finally the third issue, the main issue, is that the court improperly used the wrong standard for preliminary injunction in First Amendment cases. As your question suggests the First Amendment is an overriding factor in seeking preliminary injunction. It simply wasn't part of the district court's considerations. It simply looked at whether or not business failure alone would be a sufficient cause where this court and the Supreme Court have long held that damage to First Amendment interest is by definition irreparable harm justifying preliminary injunctive relief. The court also erred in underestimating the likelihood of success on the established *Bantam Books* precedents and then ultimately tried to balance out the equation using factors that are not justified by the law, assuming that Sheriff Dart has First Amendment interests that are going to be infringed, when in fact he was speaking as the government, and the government doesn't have First Amendment interests. |
| | Overall I think the case for preliminary injunction is made. But I think beyond that it is important for the court to recognize that the issues here go far beyond any impact on Backpage. As the amicus brief by Center for Democracy and |

|   |   |
|---|---|
|   | Technology indicated, that this issue was trying to put pressure on intermediaries to regulate speech that is disfavored by the government has broad application and if Sheriff Dart is not enjoined would be used as a tactic across the board. Unless the court has any further questions, I would … |
| J. Posner | Ok. Thank you Mr. Corn-Revere. Ms. Karis or Mr. Karis? |
| Karis | Yes Your Honor. |
| J. Posner | Ms. Karis. |
| Karis | Good Morning Your Honors. Hariklia Karis on behalf of Appellee. May it please the court. Not a single case cited finds that there could possibly be a prior restraint … |
| J. Posner | You know a police official has to be very careful in what he says. This is not Tom Dart as a private citizen writing a letter to a newspaper or something saying he doesn't like Backpage. This is all done Office of the Sheriff, official stationary. Well, anybody receiving an official communication from a sheriff is going to feel there is an implicit threat to follow this up with legal action. |
| Karis | Your Honor, Visa and MasterCard have both established that they did not receive or perceive this as an official threat. So while Sheriff Dart, as a private citizen and as a member of the public, has the right to … |
| J. Posner | And you believe that? |
| Karis | I absolutely believe in the evidence and the evidence is undisputed … |
| J. Posner | Well, that's ridiculous. These people, these companies, they don't feel they can defy an official with the authority. There's nothing, you know, that Dart has. |
| Karis | Visa has spoken and submitted an affidavit in this court which the district court considered in which their vice president for global brand reputations specifically said he did not view the letter … |
| J. Posner | Well what do you expect him to say? |
| Karis | Your Honor, we expect … |
| J. Posner | We're knuckling under the threats? |
| Karis | Visa's action was taken out of concern that their brand … |
| J. Posner | Look, the tone of this is so unprofessional. He talks about a violent industry. Is phone sex violent? |
| Karis | The content of … |

| | |
|---|---|
| J. Posner | Is phone sex violent? |
| Karis | It can be. |
| J. Posner | Really? |
| Karis | It certainly can be. |
| J. Posner | How? |
| Karis | Depending on whether children are involved, where here, there are numerous instances … |
| J. Posner | We're not talking about children here. |
| Karis | Respectfully Your Honor … |
| J. Posner | All the adults are getting swept up with the children? |
| Karis | The adults are not getting swept up with the children … |
| J. Posner | Well they are adults who participate in phone sex with each other are potential targets. And what about also old people, old men who would like to be seen with a young woman, right? That is an aspect of the escort service. It's not all sex. |
| Karis | Sheriff Dart did not take down the content or propose to take down the content of webpage, of Backpage's webpage which was not illegal conduct. MasterCard in particular to Your Honor's question of the recipient receiving this and what can they say, MasterCard had already decided that they no longer wanted to be affiliated with Backpage one week before Sheriff Dart ever sent that letter out. That evidence is undisputed. |
| J. Posner | Well I'm sure Visa and MasterCard don't want to spend their time fending off whacks from Sheriff Dart, right? |
| Karis | MasterCard made the decision … |
| J. Posner | The companies make, they make a decision, right? |
| Karis: | MasterCard … |
| J. Posner | They don't want to be slandered by a high government official. |
| Karis | MasterCard made the decision to terminate its relationship with Backpage before they ever received Sheriff Dart's letter. The letter could not have possibly had the effect that is required under *Bantam Books* in order for there to be a prior restraint. *Bantam Books* is quite clear that it is necessary not only to have a threat, if the letter is even a threat. But there has to be a course of affect. In this case, the record was undisputed that MasterCard had made the decision to terminate |

|  |  |
|---|---|
|  | their relationship with Backpage before ever receiving that letter. There could not have been an affect. Similar to the facts and circumstances in *Henderson* decided by this court, that there has to be a but-for cause showing in order for there to be a prior restraint. Here there was no such showing. In fact the evidence was exactly the opposite, that MasterCard had decided before they ever received this letter. Visa and the CEO of Backpage testified … |
| J. Posner | Why did he send them a letter if they'd already decided? |
| Karis | Sheriff Dart was unaware of the decision of MasterCard before he sent the letter. But we took discovery in this case … |
| J. Posner | What about Visa? |
| Karis | Visa made the decision as they told … |
| J. Posner | No, that's not my question. |
| Karis | Visa made the decision after receiving Sheriff Dart's letter. |
| J. Posner | Yes. That's different from MasterCard. |
| Karis | That is true. It's different from MasterCard. However, the reason for the decision was because they did not want reputational concerns associated with their brand in light of the knowledge that American Express and MasterCard were no longer going to be associated j… |
| J. Posner | So are you saying the letter had no effect on Visa? |
| Karis | The letter had no effect, no coercive effect on Visa. |
| J. Posner | Well why hadn't they, why hadn't they abandoned Backpage before they received the letter? |
| Karis | Visa was not aware that MasterCard and American Express had terminated their services with Backpage until after they received the letter. Once they received the letter they learned that they were going to be the only credit card company who was going to remain doing business with the website that was prolific in posting ads that trafficked women and children for sex. Visa's representatives told Sheriff Dart's representatives that that, that they did not want such an association. They told the CEO of Backpage … |
| J. Posner | But where does it stop? I mean what if Dart said I don't like flirtatious activity so even if Backpage abandons the escorts and the body rubs and so on, and really is just a dating service. Still I think it's outrageous violence on and if a credit card company knuckles under to that, that's no problem? |

| | |
|---|---|
| Karis | If there is the threat and there is an affect that is a problem. However, that is not the facts and circumstances of this case. The court heard ample evidence including testimony |
| J. Ripple | Mean threats, threats are okay with effects? |
| Karis | *Bantam Books*, your honor, finds it particularly relevant that the content had the intended effect of terminating the service for the relationship or causing the subscriptions to no longer be issued. In … |
| J. Posner | What if Sheriff Dart wrote to a Bonwit Teller or something and said I don't like your selling short skirts. I think it, I think it promotes sexual improprieties. Would that be proper? |
| Karis | That would be proper Your Honor. |
| J. Posner | That would be proper? |
| Karis | That would be proper. Sheriff Dart |
| J. Posner | We're gonna have a whole, so everything that Sheriff Dart doesn't like receives these letters from the Office of the Sheriff? |
| Karis | Sheriff Dart has his own First Amendment right and can express his opinion |
| J. Posner | He used the Office of his Sheriff to express any antipathy that he has to anything? |
| Karis | He can speak both as a citizen and as a public official to express his opinion and view |
| J. Posner | So you're saying there's no limit. He can express his opinion on his office stationary on any subject that occurs to him. What if he doesn't like, what if he doesn't like pets? He doesn't think people should have animals in their house. He can write a, he can suggest to everyone that they euthanize their pets? |
| Karis | Your Honor, in order |
| J. Posner | But answer my question. |
| Karis | As long as there is no threat, he can. |
| J. Posner | No, no, that is not an answer to my question. Can he do that? Can he say let's get rid of all these animals in peoples' houses? |
| Karis | He can express his opinion. Yes. |
| J. Posner | Excuse me? |
| Karis | He can express his opinion. |

| | |
|---|---|
| J. Posner | Well, why don't you just say yes? |
| Karis | Yes Your Honor. |
| J. Posner | Instead of fencing with me. |
| J. Sykes | This letter goes well beyond the expression of opinion. This is a cease and desist letter. And requires an immediate response and is followed up by emails and telephone calls by his staff. And it's phrased in terms of a demand. And it references legal obligations to report suspicious activity and not participate in money laundering and it's on his official stationary, and he's expressing himself as Sheriff of Cook County, not as a private citizen. |
| Karis | Yes Your Honor. |
| J. Sykes | This is objectively threatening. Whether the credit card companies will subjectively admit that or not, they have a public relations interest in not subjectively admitting that, I think. And there's, you know, plenty of evidence that their action was precipitated by this letter because it followed immediately on the heels of receiving the letter. |
| Karis | As the district court recognized, the letter could, a jury could possibly find that the letter is a threat at the merits stage. With respect to preliminary injunction, however, a necessary element for a prior restraint is to find an effect, and … |
| J. Sykes | Not, not but-for causation, but that the letter was a motivating factor in producing the disaffiliation, which is the restraint. That's the suppression part of the equation. And it did have that effect. That was clearly the intended effect on Sheriff Dart's part based on the language of the letter. And it had that effect. Whether the credit card companies would have gotten around to disaffiliating on their own is a subject for a damages trial. But it doesn't defeat the First Amendment violation. |
| Karis | The court in *Green* indicated that after, if the plaintiff is able to establish that it was a motivating factor … |
| J. Sykes | Right. There is plenty of evidence on that. |
| Karis | The burden then shifts to the defendant to establish that there was not but for causation. |
| J. Sykes | Right, for purposes of the damage claim. But we're here on a motion for a preliminary injunction. And the basic First Amendment violation has been established here. |
| Karis | Under a preliminary injunction, the plaintiff has the burden of establishing the likelihood of success. The likelihood of success takes into account … |

| | |
|---|---|
| J. Sykes | Right, on the existence of a First Amendment violation. Not whether damages can be limited because the credit card companies would have gotten around to disaffiliating at some point anyway, and we're on that road without the assistance they received from Sheriff Dart. |
| Karis | Even at preliminary injunction there can be no cause of action when there is no effect. |
| J. Sykes | Well, there was an effect. They immediately terminated their affiliation with Backpage. That's a per se effect. |
| Karis | American Express and MasterCard had already made that decision before this letter ever went out. |
| J. Sykes | Right. American Express had already disaffiliated. MasterCharge was on the road, but had not yet disaffiliated, it disaffiliated immediately after receiving the letter from Sheriff Dart. And there's evidence in the record that shows that that was the precipitating cause of the ultimate decision. The fact that they had thought about doing it ahead of time doesn't defeat the First Amendment violation. |
| Karis | They had not only thought about doing it ahead of time, they had made the final decision in advance that they were going to terminate their relationship with MasterCard. That is the undisputed evidence in this case. In fact, when Backpage attempted to reengage their services, their CEO was expressly told that due to reputational concerns neither Visa nor MasterCard wanted to reengage. And so at a preliminary injunction stage … |
| J. Sykes | That was after the TRO issued, right? |
| Karis | That was after the TRO issued, correct. At a preliminary injunction stage … |
| J. Sykes | Right. They were not going to get back into this business in light of ongoing litigation. There's other interpretations of that. You're suggesting that it's all undisputed; I think it's very hotly disputed in this case. |
| Karis | Your Honor, Your Honors, in order for there to be a prior restraint, there has to be an effect. And we … |
| J. Sykes | Right, and the effect is established very clearly by the undisputed, this much is undisputed that the decision to disaffiliate was made within 24 hours on the part of one credit card company and within 48 hours on the part of the other, under threat of this press conference that was going to follow on the heels of the letter. |
| Karis | The announcement of that decision was made … |
| J. Sykes | And it was phrased in terms of the demand, a cease and desist letter, and characterized by Sheriff Dart in his press conference as a demand that he made |

|  |  |
|---|---|
|  | and then he took credit for the disaffiliation for taking down Backpage by removing its financial sources of financial support. |
| Karis | The institution … |
| J. Sykes | I mean these are his own words.  He clearly set up to shut them down.  That's a prior restraint. |
| Karis | There is no question that Sheriff Dart was passionate about terminating the content of, the illegal content that was posted on Backpage's website.  He sent the letter … |
| J. Posner | What precisely did he want Backpage to do? |
| Karis | He wanted Backpage to no longer, I'm sorry, he wanted Visa and MasterCard to … |
| J. Posner | No, no.  Did he, does he want, does he want Backpage to close out its adult section,  Is that the idea? |
| Karis | Unless … |
| J. Posner | So the credit card companies will come back.  Is that the idea? |
| Karis | Sheriff Dart wants Backpage to either institute better measures to filter out unlawful conduct that is posted on Backpage, or stop using |
| J. Posner | Where did he talk about better measures? |
| Karis | Sheriff Dart and Backpage had years of prior history in which they had engaged in discussions in an attempt to get Backpage to institute better measures to stop the trafficking of women and children on Backpage's website.  That had been ongoing dialogue, all of which fell on deaf ears. |
| J. Posner | Does he think that Backpage is violating the law in not instituting all the protective measures he wants? |
| Karis | He thinks that post … |
| J. Posner | Now answer my question please. |
| Karis | He does not think that Backpage is violating the law for any ads that do not involve unlawful conduct. |
| J. Posner | No, no.  You're not answering my question.  Does he think that Backpage is currently violating the law, that it's an aider or abettor of illegal sexual activities? |
| Karis | I cannot speak to that because I, I do not … |

J. Posner First of all, keep your voice up so I can hear you …

Karis Sure. Sorry.

J. Posner And secondly, please try to answer the question rather than give a speech on a different subject. Does he think that Backpage is violating the law?

Karis Yes with respect to adult services that elicit unlawful conduct.

J. Posner So, in other words he thinks Backpage is violating the law, and the next step would be to suggest that any credit card company that does business with Backpage is an accomplice. Right?

Karis No, Your Honor.

J. Posner Why? Of course they're accomplices.

Karis They are not …

J. Posner They are assisting Backpage in what Dart regards as criminal activities. They're doing it knowingly. They know what Backpage is, right?

Karis They do not, they were unaware of this conduct. In fact, MasterCard communication

J. Posner Now, come on. Unaware of the adult section of Backpage?

Karis Your Honor, what the evidence in this case showed is when MasterCard began its investigation of this issue in March of 2015, the investigation began by citizens communicating, shareholders communicating to MasterCard that they had become aware of this.

J. Posner And you think MasterCard didn't know that Backpage had this adult section before citizens started writing letters? That is beyond naïve. Everyone knows what Backpage is. Certainly, certainly the people who do business with Backpage such as the credit card companies. Of course they know what it is, right? So my question is, isn't it implicit in everything that he, he believes that Backpage is engaged in illegal activities. And doesn't that mean that he believes that MasterCard and Visa and any credit card company that does business with Backpage is an accomplice in illegal activity? No?

Karis No, Your Honor.

J. Posner No? How do you figure that out?

Karis Visa …

J. Posner You think the credit card companies are ignorant? They don't know there's an adult section in Backpage?

*Backpage.com v. Dart*, Seventh Circuit Argument, November 13, 2015  Page 14

| | |
|---|---|
| Karis | Visa and MasterCard conduct, they provide the service for the underlying, for the affiliated banks. In fact, for Visa, that is Visa Europe. There was no evidence in this case … |
| J. Posner | MasterCard and Visa don't know that people use their cards to get onto Backpage's adult section and, you know, hire escorts and so on? |
| Karis | They, yes … |
| J. Posner | They didn't know that? |
| Karis | They're likely aware that it's used for Backpage. What they're not aware of is the amount of illegal conduct that comes from those ads … |
| J. Posner | What do you mean? They don't know the amount? They know there is illegal conduct. If you know and you assist in illegal conduct, it doesn't matter whether it's much illegal or little illegal. You are engaged in criminal activity. |
| Karis | Your Honor, Visa and MasterCard were never suggested, in fact nowhere in Sheriff Dart's letter does it say that he thought that they were accomplices to a crime … |
| J. Posner | But you know as a lawyer that they're accomplices. If Backpage was engaged in criminal activity, MasterCard and Visa were assisting in that activity by providing financing, a financing channel. |
| Karis | Sheriff Dart's own experience with Craigslist in which his complaint against Craigslist was dismissed due to the Communication Decency Act did not support that he thought that Visa and MasterCard were accomplices to a crime. He did not … |
| J. Posner | But you realize they are. |
| Karis | No, Your Honor. |
| J. Posner | If Backpage was engaged in criminal activities and MasterCard and Visa were aware of this and though being aware provided a, provided, you know, financial services that assisted Backpage and its customers and so on, then MasterCard and Visa would be accomplices, wouldn't they? |
| Karis | They would not. Backpage is hosting or posting these ads and the Communication Decency Act gives Backpage certain protection based on Sheriff Dart's own experience in this space. And therefore he was not saying to Backpage that what they were doing in posting these ads were illegal. Nor was he saying to Visa and MasterCard that what they were doing was being accomplices to this. He was bringing it to Visa and MasterCard's attention that Backpage's ads result in unlawful conduct. |

J. Posner      He says it has become "increasingly indefensible for any corporation to continue to willfully play a central role in industry that reaps its cash from the victimization of women and girls across the world." That willfully, the will, that's addressed to MasterCard, right? It says that it's indefensible for MasterCard to continue to willfully play a central role in an illegal industry. That's what he said.

Karis          It is what he said, Your Honor.

J. Posner      Ok. Well thank you very much Ms. Karis. And Mr. Corn-Revere, do you have anything further?

Corn-Revere    Thank you Your Honor. I would like to briefly address a couple of the references to the record to make sure that there's a full appreciation of something beyond Sheriff Dart's broad generalities about credit card companies' reactions. As a matter of fact, the record doesn't show that the credit card companies had already made a decision to defund Backpage.com. The most that it shows is that one of the acquiring banks for MasterCard had made a decision in mid-June that it was going to cease affiliating with Backpage.com. But that that decision was not going to be implemented until the end of July. It was only after Sheriff Dart's letter was sent that this decision for the one acquiring bank was escalated to being immediate and not a month hence, and that's when the decision was spread not just to that one acquiring bank but all of the acquiring banks for MasterCard. As a matter of fact, if you look at the record, the Appendix at pages 268 to 270, it shows that this escalated the concern because then it was because this was a law enforcement referral. Thus this was considered to be a brand damaging activity. And because of that, Backpage was put on a match list, which prevented other acquiring banks from stepping in. So it wasn't the decision that it was done even for MasterCard, let alone for the other card companies.

J. Sykes       What if the Sheriff had removed the language about cease and desist and money laundering and the suspicious activity report obligation and put the rest of this content of this letter into a press release?

Corn-Revere    I think that takes it further afield from a direct threat. All of those are factors that go into it. I think the fact that Sheriff Dart was following on, on the heels of years of advocacy to shut down certain parts of a website would provide a context to evaluate a press release. But in this case he went far beyond by having these veiled threats. And it was because it was a law enforcement referral that then escalated the decision at MasterCard.

J. Sykes       What if the, what if the cease and desist demand was limited to the credit card companies' affiliation with Backpage to the extent of its adult section.

Corn-Revere    It would still be equally significant as a First Amendment violation because for the same reason that the state laws failed in trying to close down classified advertising sections to have a blanket threat against this category of speech.

J. Sykes       Not everything on the adult section is illegal speech?

Corn-Revere   That's right.  And because that itself represents a prior restraint, just as in the *Bantam Books* cases, people were claiming that all of the books on their list were obscene without a prior judicial determination.

J. Sykes   Some of it may be proscribable?

Corn-Revere   Excuse me?

J. Sykes   Some of what …

Corn-Revere   Some of it may be, but the government doesn't get to decide that in advance.  In the case of MasterCard, there was no decision before Sheriff Dart's letter arrived to terminate them.  As a matter of fact, if you look at the record, even as referred to by the district court, it says that officials at Visa were referring to this as blackmail and the language as threatening.  In fact, in one of the exchanges by MasterCard officials in plaintiff's exhibit 52 down below, one of them quotes a reaction by the Electronic Frontier Foundation saying that we "shouldn't have informal pressure from public officials forcing financial service companies into deciding which types of speech should and shouldn't be allowed.  MasterCard and Visa are not supposed to be the arbiters of free speech on the Internet."  And the Visa official responds internally "I think this is the first time I've ever agreed with EFF."

[LAUGHTER]

Corn-Revere   So, then the decision is made to terminate Backpage.com.  And you get this one line in an affidavit I managed to secure from someone at that Visa.  And it comes down to the old Groucho Marx line.  Who are you going to believe, me or your own two eyes?  The record is pretty clear that they saw this as blackmail and that's the reason they made the decision and that's what the district court found.  And for those reasons I think preliminary injunctive relief should be granted in this case.

J. Posner   Ok.  Well, thank you very much, Mr. Corn-Revere and Ms. Karis.  We will move on to our next case.