**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BACKPAGE.COM, LLC,

               Plaintiff,

     v.

THOMAS J. DART, Sheriff
of Cook County, Illinois

               Defendant.

No. 1:15-cv-06340

Judge John J. Tharp, Jr.

Magistrate Judge Young B. Kim

**PLAINTIFF'S MOTION FOR SANCTIONS
BASED ON SHERIFF DART'S FRAUD ON THE COURT**

## I.      INTRODUCTION

From the outset of this case, Sheriff Thomas Dart has withheld thousands of pages of documents from production based on various shifting claims of privilege – documents that appear to go to the heart of what the Seventh Circuit described as an unconstitutional scheme "intended to crush Backpage's adult section—crush Backpage, period, it seems." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015). Many, if not most, of these documents were associated with Stephanie Zugschwert, a former policy analyst Dart hired to devise a strategy to "take down" Backpage, as she put it in one of the few documents of hers the Defendant produced. Dart initially withheld the documents on various claims of deliberative process and attorney-client privilege. Plaintiff challenged these privilege assertions, noting Dart had maintained he was acting unofficially and that Ms. Zugschwert was neither licensed to practice law nor employed by the Sheriff as an attorney. Doc. #132 at 10-16. This Court did not rule on the dispute at the time, noting Plaintiff's then-pending motion for summary judgment and denying the motion to compel without prejudice.

Now, however, in a recent complaint filed in the Circuit Court of Cook County alleging wrongful termination, Ms. Zugschwert has revealed these assertions of attorney-client privilege were fabricated, and made with full knowledge she had not been hired as an attorney and was not acting in a legal capacity for Sheriff Dart. She states that "the Cook County Sheriff's Office intentionally lied and misrepresented her employment relationship to the U.S. District Court, Northern District of Illinois, in order to prevent the production of Ms. Zugschwert's work product pursuant to written discovery requests in the case *Backpage.com v. Thomas J. Dart, Cook Co. Sheriff*, Case No. 15-CV-6340." *Zugschwert v. Cook Co. Sheriff's Office et al*., No. 2017-L-010368 (filed Oct. 12, 2017) ¶ 1 (attached as Appendix A to the Declaration Marni J. Shapiro ("Shapiro Decl."), Exhibit 1 hereto). Zugschwert's complaint alleges she was fired after telling

her supervisors "that if she was ever asked by the U.S. District Court, by Backpage.com counsel, or by the State of Illinois, she would tell them that she was expressly *not* providing legal advice when she completed Backpage.com-related policy analysis." *Id.* ¶ 69 (emphasis in original).

The false and shifting claims of attorney-client privilege asserted by counsel for Sheriff Dart constitute a fraud on the Court and violate the Federal Rules of Civil Procedure, which, among other things, require that every discovery response or objection be certified by counsel as having a sound basis in law and fact. Fed. R. Civ. P. 26(g)(1). Where a false certification is made, "the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Plaintiff therefore asks this Court to impose appropriate sanctions in response to the Defendant's duplicitous actions. Specifically, Plaintiff is seeking an order requiring that:

- Defendant immediately produce any documents authored by or associated with Ms. Zugschwert that were withheld based on claims of attorney-client or work product privilege;

- Defendant and his counsel reimburse the Plaintiff for all fees and costs arising from this motion and all pleadings associated with Plaintiff's motion to compel production of documents;

- A schedule be set for briefing and argument on Plaintiff's motion for summary judgment.

## II.    BACKGROUND

The relevant facts and supporting materials related to the Defendant's privilege claims have been set forth previously in the record, including in Plaintiff's Motion to Compel Production of Documents Withheld on Grounds of Privilege (Doc. #132), Plaintiff's Amended Motion to Compel (Doc. #136), Transcript of the March 30, 2016 hearing (Doc. #141), Backpage.com's Supplement Regarding Discovery Motions (Doc. #144), Response of Backpage.com in Support of Motion to Compel Production of Documents (Doc. #152), Response by Thomas J. Dart to

Motion to Compel Production of Documents (Doc. #154), Minute Entry on Motions Hearing (Doc. #172), and in the Transcript of the Aug. 9, 2016 hearing (Doc. #174). These previous submissions and in-court representations, and new disclosures from Ms. Zugschwert, provide the basis for this motion.

### A. The Defendant Withheld Documents Based on the False Claim That Ms. Zugschwert Was Engaged by Sheriff Dart as an Attorney

When discovery in this case commenced, Sheriff Dart withheld from production some 4,382 pages of documents as purportedly privileged. He provided no privilege log initially, but his counsel disclosed at an August 13, 2015 hearing that he was withholding "about 4 or 5,000 documents," describing them as "documents between attorneys for the most part … legal documents or [deliberative] process or work product." Motion to Compel at 2 (Doc. #132 at 8),[1] & Ex. G (Doc. #132-8), at 22:25-23:13 (statement of Daniel Gallagher, Cook County State's Attorney's Office). *See also id*. at 23:18-19 ("it appears the parties took a different approach to their document productions") (statement of Hariklia Karis, Kirkland & Ellis LLP, counsel to Sheriff Dart).[2] After Backpage.com's counsel expressed concerns about the excessive and unsupported privilege claims, *id*. at 24:16-25:2, the Court ordered the Sheriff to provide a privilege log. *Id*. at 25:1-25:13.

---

[1] Citations to briefs as docket entries (*e.g.*, Doc. #132) use the ECF-affixed pagination as it appears in the docket, not the original pagination supplied by the filing party.

[2] Dart's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents objected to Plaintiff's requests "to the extent they seek information protected from disclosure by the attorney-client privilege, the work product privilege, the deliberate [sic] process privilege, the investigatory privilege or any other applicable privilege or immunity." The response said Dart would "provide Backpage.com with a log of privileged documents identifying all withheld documents, a brief description of the document withheld, and the privilege asserted." That response was signed by Jill V. Ferrara, Assistant State's Attorney and verified in a sworn statement by Nicholas Scouffas, General Counsel of the Cook County Sheriff's Office on August 10, 2015. Doc. #132-2.

The Sheriff eventually produced a 75-page privilege log that listed 686 documents, totaling 4,382 pages. Doc. #132-9 ("2015 Log") (signed by Assistant State's Attorney Jill V. Ferrara). The log listed 302 documents totaling 3,050 pages associated with Ms. Zugschwert, asserting various forms of attorney-client or deliberative process privilege or both.[3] The log's descriptions were stated in general terms, making it impossible to determine the propriety of the privilege claims. For example, it identified scores of communications as merely "re: Backpage.com" or "Backpage.com initiative." Backpage.com's counsel raised the various problems of Dart's privilege log in a call with the Sheriff's counsel on December 17, 2015. Dart's counsel disagreed with Backpage.com's positions and refused to produce any of the withheld documents. Doc. #132 at 10. Faced with an impasse, Plaintiff filed a motion to compel.[4]

In a March 30, 2016 presentment hearing, the Court suggested that Backpage.com's motion seemed meritorious on several grounds, including the inapplicability of the deliberative process and law enforcement privileges and with regard to subject matter waiver, given Dart's

---

[3] The claims included various assertions of privilege, either singly or in combination, including attorney-client (6 documents); work product (2 documents); deliberative process (100 documents); law enforcement investigative (7 documents); attorney-client and work product privilege (24 documents); attorney-client and deliberative process (136 documents); attorney-client, deliberative process, and work product (1 document); attorney-client, deliberative process, and investigative (7 documents); attorney-client, work product, and investigative (1 document); deliberative process and work product (2 documents); and deliberative process and investigative (21 documents). Doc. #132-9. *See* Shapiro Decl. ¶ 7.

[4] Doc. #132. Among other things, Plaintiff argued that all assertions of deliberative process privilege were improper, particularly since Dart had claimed that his actions were not taken in an official capacity. *Id*. at 10-14. For all claims of attorney-client privilege, the motion objected that members of Dart's staff were functioning as policymakers, not lawyers. *Id*. at 15-16. More specifically, with respect to claims of attorney-client and work product privilege, the motion argued that Ms. Zugschwert was not a licensed attorney and had not been an active member of the Bar for many years. *Id*. at 15.

broad public disclosure of plans and strategies for his "project" to target the card companies.[5] In response to the Court's suggestion that "it[] would behoove you to revisit your concerns and your privilege log," Doc. #141 at 27:3-5, Dart's counsel responded: "perhaps [our privilege claims] were overly designated," and gave the assurance "if we had a meet and confer, we may have been able to resolve this as we've gone back to it, *and we certainly will*." *Id*. at 27:6-11 (statement of Barack S. Echols, Kirkland & Ellis LLP, counsel to Sheriff Dart) (emphasis added).[6] The Court then directed the parties to meet and confer about the pending discovery motions and that each party supplement its respective motions to explain issues that remained in dispute. *Id*. at 35:12-17; Doc. #144 at 1.

Counsel for the parties held meet-and-confer calls on April 1 and 5, 2016. In the April 5 call, Dart's counsel said they would withdraw their claims under the law enforcement privilege for some documents, but that the Sheriff's office would otherwise stand on its attorney-client privilege claims. *Id*. at 1-2. The next day, Dart provided a second privilege log, asserting grounds for withholding 629 documents, totaling approximately 4,000 pages ("2016 Log").[7] The Defendant continued to claim privilege for 328 documents associated with Ms. Zugschwert (totaling 2,425 pages), now claiming all of the documents were covered by attorney-client

---

[5] *See* Transcript of March 30, 2016 hearing, Doc. #141 at 26:1-10 ("I share Backpage's sense of irony that some of the claims of privilege seem to be inconsistent with the fact positions that the sheriff has taken with respect to what was going on here. To the extent you're claiming that the sheriff was not speaking as a public official but as a caring father, one would question the application of the deliberative process privilege . . . [and] it's hard to understand how a law enforcement privilege would apply.").

[6] This representation failed to mention the meet and confer session that took place in December 2015, and provided no hint that Dart planned to expand his claims of attorney-client and work product privilege.

[7] At the same time, the Sheriff produced 30 previously withheld documents (totaling 141 pages). Only one of these was associated with Ms. Zugschwert. Shapiro Decl. ¶ 6.

privilege, work product privilege, or both.[8]  Although the second log appeared to claim privilege for 625 fewer pages of documents associated with Ms. Zugschwert than did the first log, this appearance was deceptive.  Notwithstanding the shifting rationales for withholding documents, the Sheriff and his counsel produced *none* of the materials associated with Ms. Zugschwert covered by Plaintiff's motion to compel (totaling 3,050 pages).

The difference between the Defendant's first and second privilege logs is that Dart increased his reliance on attorney-client and work product privilege as a rationale for withholding Ms. Zugschwert's documents after the Court expressed doubts about his other privilege claims.  Thus, where Dart's 2015 Log claimed various combinations of deliberative process or law enforcement privilege for 168 documents, the 2016 Log simply converted the claims to assertions of attorney-client or work product privilege (or both).  Altogether, Dart claimed attorney-client or work product privilege for 328 documents associated with Ms. Zugschwert (and asserted work product privilege for an additional 574 pages associated with Ms. Zugschwert in the first log, but now attributed to Julie Bisbee, another Dart employee).  Ex. 152-1; Shapiro Decl. ¶¶ 5, 11.

After providing the 2016 Log, Dart attempted to defend his expanded claims of attorney-client and work product privilege for Ms. Zugschwert's materials.  He claimed it did not matter whether or not she had a current law license, but that privilege turned on "whether she is a 'member of the bar.'"  Doc. #154 at 4.  Defendant asserted that "Sheriff Dart and other employees of his office reasonably believed they were communicating with an attorney."  *Id*. at 5.  Dart argued Ms. Zugschwert (as well as Cara Smith) "had dual roles as both legal and policy

---

[8]  Most of the documents (266) were withheld based on attorney-client privilege, fifteen were withheld based on claims of work product privilege, and forty-seven were withheld based on claims of both work product and attorney client privilege.  Shapiro Decl. ¶ 10.

advisors." *Id*. at 4 n.4.[9]  Conflating the two, Dart concluded that the key policy memorandum authored by Ms. Zugschwert that his office produced – effectively the only substantive document of hers that was produced – "demonstrates that [she]was acting as a legal advisor."  *Id*. at 7-8.  However, as the Court may recall, Ms. Zugschwert sent this strategy memorandum – which became the outline of Sheriff Dart's strategy to target the credit card companies – to her family and friends, effectively waiving any privilege.  Backpage Preliminary Injunction Hearing Exhibit PX05 (Doc. #82-4) at CSCO 016110-16.[10]

The Court did not decide this discovery dispute at the time because Plaintiff's motion for summary judgment was pending and, the Court said, it needn't "resolve hundreds of privilege claims unnecessarily."  Transcript of August 9, 2016 Hearing, Doc. #174, at 13:8-25.  It denied the motion to compel without prejudice.  *Id*. at 14:1-3.  The Court indicated if summary judgment were denied, Plaintiff would be able "to reassert any claim with respect to privileged documents or challenge as to privileged documents at that time."  *Id*. at 13:19-24.  *See* Doc. #172.

### B.   Defendant's False Privilege Claims Were Made Knowingly and Repeatedly

All of the assertions of attorney-client and work product privilege for documents associated with Ms. Zugschwert were false and those falsehoods were knowingly made to this Court.  According to Ms. Zugschwert's complaint for wrongful termination, she was not hired to act in a legal capacity.  Shapiro Decl. App. A, ¶ 3 ("Ms. Zugschwert was never acting as an attorney for the Cook County Sheriff's Office, and the Cook County Sheriff's Office knew this from the date of Ms. Zugschwert's hire.").  Although she is a law school graduate, Ms. Zug-

---

[9]   As Backpage pointed out, however, Ms. Smith was employed by Dart as a "Chief Strategist" for policy, not as an attorney, and that any claim to privilege, even if it had been legitimate, was waived by Ms. Smith's testimony.  *See* Doc. #152 at 7-9.

[10] The opposition to Plaintiff's motion to compel was signed by Paul J. Kozacky of Kozacky Weitzel McGrath, P.C., counsel for Sheriff Dart.  Doc. #154.

schwert worked as a legislative and policy analyst for over 20 years, and was only briefly licensed to practice law in Minnesota from 1993-1996.  *Id.* ¶ 16.  She avers that this background was "the main topic of conversation" during the hiring process in March 2015, and both Joseph Ryan, Dart's Director of Policy, and Cara Smith, his Chief of Policy, "assured her that she would not have any of the responsibilities of an attorney, and that the requirement [of being licensed] would be waived."  *Id.* ¶¶ 17-20.

Once hired, Ms. Zugschwert was tasked with developing "a policy approach to stop Backpage.com," but never served as a legal advisor.  *Id.* ¶ 23.  After discovery commenced in this case, however, Ms. Zugschwert became aware the Sheriff's Office refused to produce the bulk of her work product to the Plaintiff on the premise that it "constituted privileged attorney-client communications."  *Id.* ¶ 28.[11]  But Ms. Zugschwert has explained that this was categori-cally untrue and she told Dart's senior advisors this when discovery was ongoing:  "The argument put forth by the Sheriff's Office contradicted the express terms of Ms. Zugschwert's employment, and contradicted the many arguments and email exchanges that Ms. Zugschwert engaged in with her supervisor and Sheriff's Office Counsel starting in the early days of discovery in the *Backpage.com v. Dart* case."  *Id.* ¶¶ 31-32.

Once she learned that her documents were an issue, Ms. Zugschwert approached her supervisor, Joseph Ryan, and Dart's General Counsel, Nicholas Scouffas, to make sure that they, and the other attorneys in the office, "knew that she had not been acting as a lawyer throughout her employment."  *Id.* ¶ 34.  They referred her to Cara Smith, "who reassured Ms. Zugschwert that everyone knew that she was not an attorney."  *Id.* ¶ 35.  Both Ryan and Smith "agreed that

---

[11]  Ms. Zugschwert attached Dart's opposition to Backpage's motion to compel (Doc. #154) as an exhibit to her wrongful termination complaint, and specifically disputed Defendant's assertion that she was not licensed "only because she failed to pay her annual fees," but that she otherwise "provided privileged legal advice at all times during her employment."  *Id.* ¶ 30.

Ms. Zugschwert had not been acting as an attorney, and that she had not been providing legal advice, at any point in her employment." *Id*. ¶ 36.

Notwithstanding these conversations and assurances, Ms. Zugschwert still was concerned the Sheriff's Office "was misrepresenting her role as that of an attorney." *Id*. ¶ 37.[12]  This concern reached a peak when she learned that Backpage had filed a motion to compel production of documents and that Dart's office "intended to fight production of these documents by arguing that the Sheriff's Office viewed her as an attorney throughout her employment." *Id*. ¶ 39.  This touched off a number of internal conversations confirming the office-wide understanding that she had *not* been hired as an attorney, *id*. ¶¶ 40-43, but that culminated in her engaging separate counsel in case she was accused of practicing law without a license.  *Id*. ¶¶ 40, 44-45.

At this point, as Dart prepared his opposition to Backpage's motion to compel, the Defendant and his counsel took a number of steps to conceal and to backfill their false claims of attorney-client privilege.  Ms. Zugschwert was specifically instructed not to read the opposition (or any of the contested documents) in case she was called as a witness, and at the time she was not provided and did not see the opposition that made the false privilege claims.  *Id*. ¶ 47.  On the advice of counsel, Ms. Zugschwert took steps to be reinstated as a member of the Bar, and Dart's office adjusted her work schedule to facilitate her doing so.  *Id*. ¶¶ 48-50.  However, upon learning that she had to apply for a limited license in Illinois to serve as in-house counsel, Ms. Zugschwert became concerned that the application and employer's certification would place her

---

[12]  Specifically, Ms. Zugschwert disputed Dart's assertion of work product privilege for documents "that were created by Ms. Zugschwert at the direction of and under the supervision of licensed attorney Cara Smith."  Doc. #154 at 6.  She pointed to "Mr. Ryan's and Ms. Smith's repeated confirmation early in her employment that she did not need to be licensed because she would not be providing legal advice," and the fact that "all of Ms. Zugschwert's memoranda and reports were heavily edited by Mr. Ryan, a non-attorney."  Shapiro Decl. App. A, ¶ 37.  In any event, Ms. Zugschwert's supervisor was Mr. Ryan, not Ms. Smith.  *Id*. ¶ 21.

in legal jeopardy. *Id*. ¶¶ 51-53. She informed her supervisors that "if asked, she was going to have to tell the State that she was not hired to practice law prior to her application for a limited license, and that this information would become public record such that Backpage.com and the U.S. District Court would know her side of the story." *Id*. ¶ 54.

Ms. Zugschwert then informed Dart's Office she could not perform any tasks that were "legalish looking" until she had a limited license to practice law in Illinois. *Id*. ¶¶ 58, 60. She was then informed the Sheriff's Office "would not sign the Employer Certification form [to the Illinois Bar] because Ms. Zugschwert was not in the legal department." *Id*. ¶ 59. However, after Ms. Zugschwert observed that she would have to explain why she had to withdraw her application to the Illinois Bar, and that, "no matter what, the truth about my hiring would come out," Dart fired her without prior notice. *Id*. ¶¶ 60-62. Throughout her employment, "[t]he only point of contention that ever arose between Ms. Zugschwert and her employers . . . related to the Defendants' actions to misrepresent Ms. Zugschwert's employment history and job duties in the *Backpage.com v. Dart* litigation in order to withhold documents in discovery." *Id*. ¶ 65.

## III.   ARGUMENT

This is a motion for sanctions based on dishonest representations made to block discovery into documents that go to the heart of a prior restraint scheme the Seventh Circuit described as a "quintessential first-amendment violation." *Dart*, 807 F.3d at 235 (citation omitted). As explained below, sanctions are mandatory in this situation because such miscon-duct violates the Federal Rules and undermines the integrity of the judicial system.[13] Any remedy must include immediate disclosure of all documents withheld under false claims of

---

[13]   In civil cases, the facts underlying a motion for sanctions under the Rules or under the court's inherent authority need only be established by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016), *cert. denied*, -- U.S. --, 2017 WL 2339748 (Mem.) (Oct. 2, 2017) (No. 16-1418).

privilege, because both Backpage and the public deserve to know what Sheriff Dart was hiding regarding his unconstitutional behavior.[14]

### A. This Court Should Impose Sanctions to Protect The Integrity of the Judicial Process

Defendant's knowingly false privilege claims warrant firm and decisive action by this Court. As Judge Chang observed in a recent case, "[m]istakes do happen in discovery," and that "[m]ost often, the mistakes are innocent and no fault can be fairly assigned to the lawyer." But, he added, "when a lawyer acts unreasonably and the other side does not get all the evidence to which it is entitled, then a remedy must follow to prevent the lawyer's negligence from unfairly harming the opponent. Even worse, when a lawyer crosses the line into *intentional* wrongdoing, then more severe punishment is warranted, because our system of justice depends on the honesty and good faith of lawyers to abide by the rules of discovery." *Colyer v. City of Chi.*, 2016 WL 25710, at *13 (N.D. Ill. Jan. 4, 2016) (emphasis in original). Such is the case here.[15]

The documents Dart and his counsel withheld are central to the constitutional violation the Seventh Circuit identified as an unconstitutional informal prior restraint. They were either drafted by or sent to Ms. Zugschwert, the person Dart hired to devise a plan to take down Backpage "legally or otherwise." PX 2, PX 3. Dart withheld almost all of her documents under

---

[14]  Although the Court left open the possibility of renewing Plaintiff's motion to compel, this is not a discovery motion. For reasons set forth in the motion to compel, Doc. #132, Plaintiff believes none of Dart's privilege claims are warranted. However, this motion for sanctions is concerned only with documents withheld on false claims of privilege relating to Ms. Zugschwert.

[15]  *See Kupferman v. Cons. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) ("While an attorney 'should represent his client with singular loyalty that loyalty does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court.' And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court.") (citation omitted); *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court.").

various assertions of privilege, then shifted the claims after the Court expressed skepticism about the original claims, suggesting the Defendant "revisit … your privilege log," Doc. #141 at 27:3-5. Dart did "revisit" the privilege log, concocting an entirely new one. But, rather than eliminate the baseless claims premised on the fiction that Ms. Zugschwert was an attorney, the Sheriff and his counsel instead asserted that *all* of Ms. Zugschwert's documents were protected by attorney-client or work product privilege. In effect, Defendant not only repeated his misrepresentations but expanded on them, while taking steps to prevent Ms. Zugschwert from revealing the truth. Now, Ms. Zugschwert has explained that she never acted as a lawyer for the Sheriff's Office, that was expressly understood and agreed, and yet the Sheriff's Office actively concealed that fact specifically to thwart discovery in this case. Compounding the error, Dart's counsel misrepresented Ms. Zugschwert's status in meet-and-confer negotiations, in privilege logs, in pleadings, and in hearings before this Court. And, to make matters worse still, the Sheriff's Office fired Ms. Zugschwert after she told her supervisors she would tell the truth about her professional status.

Both the Federal Rules of Civil Procedure and inherent judicial authority empower courts to sanction discovery abuse and fraud on the court. *Ramirez*, 845 F.3d at 775-76; *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 399-401 (7th Cir. 2015). For example, Rule 37(a)(4) treats an evasive and incomplete answer in discovery as equivalent to a non-answer, and thus a failure to comply with court-ordered discovery. Fed. R. Civ. P. 37(a)(4); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). Rule 37 also obliges litigants "to comply with the court's discovery orders and, more broadly, to comport [themselves] appropriately before the court and refrain from attempts to deceive [their] opponent and to perpetrate a fraud on the court." *Ramirez*, 845 F.3d at 779. In this regard, a formal, written order to comply with discovery is not required. *See Quela v. Payco-General Am. Credits, Inc.*, 2000 WL 656681, at

*6 (N.D. Ill. Aug. 15, 2000) ("an order is not required to provide notice that parties must not engage in such abusive litigation practices as coercing witness testimony, lying to the court, and tampering with the integrity of the judicial system").  In exercising these powers, courts can broadly interpret what constitutes an order for purposes of imposing sanctions.  *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994).

In addition, "a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."  *Ramirez*, 845 F.3d at 776; *Secrease*, 800 F.3d at 401 ("These powers … are essential to a court's ability to preserve the integrity of its proceedings.").  *See United States v. Dish Network, L.L.C.*, 2015 WL 5970446, at *5 (C.D. Ill. Oct. 13, 2015) ("A court also has the inherent power to assess sanctions for the failure to preserve or produce documents."); *Zang v. Alliance Fin. Serv. of Ill., Ltd.*, 875 F. Supp. 2d 865, 884-85 n.19 (N.D. Ill. 2012) (analysis under Rule 37 and under court's inherent power is essentially the same).  The court may impose sanctions "pursuant to its inherent authority where the party has 'willfully abused the judicial process or otherwise conducted litigation in bad faith.'"  *Fuery v. City of Chi.*, 2016 WL 5719442, at *11 (N.D. Ill. Sept. 29, 2016) (quoting *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012), *appeal filed*, No. 16-3786 (7th Cir. Oct. 28, 2016)).

Dart's machinations to withhold Ms. Zugschwert's documents from discovery, including efforts to deceive the Plaintiff and this Court, require the imposition of sanctions.  This Court faced a similar situation in *Colyer*, where a Chicago city attorney wrongfully failed to disclose or produce an audio recording of a police dispatch that was central to a civil rights claim concerning a police shooting.  The attorney failed to reveal the existence of the recording, and, upon its discovery, offered the court deceptive and conflicting explanations about when he learned of it

and why he failed to produce it. *Colyer*, 2016 WL 25710, at *12-13. The Court held that sanctions were required under both the federal rules and the court's inherent authority, as each "independently supports particular sanctions." *Id*. at *14.

In finding bad faith behavior, the Court in *Colyer* considered as a "last straw" the "inconsistency in [the attorney's] explanation for why he did not immediately disclose the information." *Id*. at *18. *See also e360 Insight, Inc*., 658 F.3d at 643 (shifting explanations for non-responsiveness in supplemental interrogatory answers "provided powerful evidence that [the party] was not engaging in the discovery process in good faith"). Here, there was substantial evidence Dart was not asserting good-faith privilege claims even before Ms. Zugschwert's revelations in her wrongful termination suit. After the Court expressed doubt about his claims of deliberative process and law enforcement privilege, Dart simply produced a new privilege log, reshuffled his privilege claims, and asserted attorney-client or work privilege for all Ms. Zugschwert's documents notwithstanding the fact she was not licensed and was not working as a lawyer. Dart's claims in the privilege logs he and his counsel provided were implausible before; at least with regard to documents involving Ms. Zugschwert, they are patently fraudulent now.

The need for sanctions is particularly pressing because Ms. Zugschwert's complaint made clear that the actions of Dart and his counsel were willful, dishonest, and calculated to thwart discovery. As she put it, "the Cook County Sheriff's Office intentionally lied and misrepresented her employment relationship to the U.S. District Court, Northern District of Illinois, in order to prevent the production of Ms. Zugschwert's work product pursuant to written discovery requests in the case *Backpage.com v. Thomas J. Dart*." Shapiro Decl. App. A, ¶ 1. Such actions are a fraud on the court for which sanctions are imperative.

14

**B. Sanctions Are Mandatory Under the Federal Rules of Civil Procedure**

Even if Defendant's actions were not intentionally deceptive, sanctions are required under Rule 26. Rule 26(g)(1) requires that every discovery request, response or objection bear the signature of an attorney for the party serving it. Fed. R. Civ. P. 26(g)(1). The signature certifies that the signer has made a reasonable inquiry into the factual and legal basis for the document, and has found it was not interposed for any improper purpose, and was not unreasonable, or unduly burdensome or expensive. The rule also requires signatures on disclosures, certifying the disclosure is complete and correct to the best of the signer's knowledge, formed after a reasonable inquiry. *See Colyer*, 2016 WL 25710, at *24-25; *Hernandez v. Cook Cty. Sheriff's Office*, 2015 WL 5307627, at *5 (N.D. Ill. Sept. 10, 2015). To meet these requirements, "the attorney must make an inquiry *before* signing the certification," that must be "reasonable under the circumstances." *Dish Network*, 2015 WL 5970446, at *10 (emphasis added).

In this case, there can be no serious argument Dart's counsel made the necessary inquiries or sought to confirm that privilege claims for Ms. Zugschwert were not asserted for improper purposes. Plaintiff pressed Dart's team to justify the assertions of privilege for Ms. Zugschwert's documents in August 2015 in a hearing before this Court. *See supra* at 3. The Sheriff's counsel asserted attorney-client (and other) privileges for these documents despite the fact that Ms. Zugschwert had specifically negotiated with Dart's staff months earlier, in *March 2015*, seeking assurance she would not be performing legal tasks. Shapiro Decl. App. A, ¶¶ 17-20. Members of Dart's staff became concerned about the discoverability of her documents "starting in the early days of discovery" in the summer of 2015, *id.* ¶¶ 31-32, yet they nevertheless withheld thousands of pages of documents and prepared a privilege log asserting attorney-client and work product privilege, as well as various forms of "process" privilege. Doc. #132-9. After this Court questioned some of the privilege claims and received assurance from

Dart's counsel that they would "revisit" their claims, they prepared a second privilege log that *increased* their reliance on attorney-client privilege, and produced none of Ms. Zugschwert's documents. *See supra* at 5.

As all this was happening, when Dart's staff grew more concerned her documents would come to light, they took steps to make it appear she had a law license and had been engaged to do legal work. These efforts failed, however, and Ms. Zugschwert was fired after she declined to misrepresent the facts, as outlined in her complaint. Shapiro Decl. App. A, ¶¶ 47-65. Nevertheless, on April 20, 2016, Dart's counsel drafted and signed an opposition to Plaintiff's motion to compel seeking to justify these increased claims of attorney-client and work product privilege. Doc. #154 at 4-8.

Based on these facts, there are only two possible conclusions: Either the false designations of privilege were knowingly made with intent to deceive the Court, or there was no investigation whatsoever of the validity of the privilege claims.[16] But it doesn't matter which explanation is true. Failure to make a reasonable inquiry is sanctionable. *Colyer*, 2016 WL 25710, at *24-25 (relying on work of others and signing certification without determining status of documents and who was responsible for them "does not come close to qualifying as a reasonable inquiry"); *Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 390-394 (D. Md. 2013) (misleading claim of having made "reasonable inquiry" into discoverable documents is sanctionable).

Sanctions are not discretionary if the court finds counsel has made a false certification. Rule 26(g)(3) provides that "[i]f a certification violates this rule without substantial justification,

---

[16] It is difficult to imagine how personnel within Dart's Office could claim inadvertence in this deception. *See generally* Shapiro Decl. App. A. If outside counsel denies involvement in intentional efforts to block discovery, they must explain how they could make Rule 26(g) certifications after the privilege issue was raised in multiple meet-and-confer sessions, written submissions, and court sessions.

the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). The rule "gives the judge discretion over the nature of the sanction but not whether to impose one." *Rojas v. Town of Cicero*, 775 F.3d 906, 909 (7th Cir. 2015). *See Hernandez*, 2015 WL 5307627, at *5; *Dish Network*, 2015 WL 5970446, at *11 ("Sanctions for violation of Rule 26(g) are mandatory."). In this case, there can be no doubt but that the rule was violated and sanctions must be imposed.

### C.     This Court Has Full Discretion to Fashion Appropriate Sanctions

This Court has substantial discretion in determining what sanctions are appropriate, up to and including granting a default judgment against the Defendant. *Secrease*, 800 F.3d at 401-02. Such a remedy is fully warranted as a sanction where a defendant has willfully failed to comply with discovery and has deceived the court. *See*, *e.g.*, *Philips Med. Sys., Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992); *Profile Gear Corp. v. Foundry Allied Indus., Inc.*, 937 F.2d 351, 353-54 (7th Cir. 1991); *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138-39 (7th Cir. 1987); *Quela*, 2000 WL 656681, at *8. Here, however, Plaintiff is seeking a less drastic remedy, including: (1) immediate disclosure of documents improperly withheld; (2) award of attorney's fees and expenses associated with discovery and this motion; and (3) setting a briefing schedule to finally rule on Plaintiff's pending motion for summary judgment.[17]

**The Court should compel disclosure of all wrongfully withheld documents associated with Ms. Zugschwert**. The Seventh's Circuit ruling imposing a preliminary injunction observed that Sheriff Dart's threatening letter to the credit card companies was "[c]entral to Backpage's case," and that "[f]urther insight into the purpose and likely effect of such a letter is

---

[17]   Of course, this Court has the discretion to impose any additional remedies it may consider appropriate, such as referral of this matter to the Illinois Bar for disciplinary proceedings. *See*, *e.g.*, *Keener v. Dep't of Army*, 136 F.R.D. 140, 151 (D. Tenn. 1991).

provided by a strategy memo written by a member of the sheriff's staff," Ms. Zugschwert. *Dart*, 807 F.3d at 231-32. Because Ms. Zugschwert's job was to design the campaign to crush Backpage, *id*. at 230, the rest of her documents that were wrongfully withheld are equally pertinent to the issues that still must be decided.[18] This Court should compel the production of those documents both because Backpage is entitled to them as a matter of course, but also because Dart should not be allowed to benefit from his misconduct.[19] But there is also a broader public interest involved. As the Seventh Circuit held, the government "is not permitted to employ threats to squelch the free speech of private citizens," *id*. at 235, and the public is entitled to know what unconstitutional actions Sheriff Dart and his staff have undertaken in this regard.

**The Court should require Defendant and his counsel to bear the costs associated with Plaintiff's discovery motions as well as this motion for sanctions**. Rule 26(g)(3) expressly provides that a sanction for false certification "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). The court may assess the monetary sanction against "the signer, the party on whose behalf the signer was acting, or both." *Id*. *See, e.g.*, *Thornton v. Wahl*, 787 F.2d 1151, 1153 (7th Cir. 1986) (an appropriate sanction may include attorney's fees). Where, as here, both the

---

[18] The relevance of these documents is illustrated by an email exchange between Visa employees that the Seventh Circuit quoted: "[O]ne said: 'Yes, love the subtle messages they've been sending us that could easily be taken for blackmail.' To which the other replied that he'd told the boss of the Director of Communications 'that he needs to tone down the threatening language ... all of his emails as a public employee are, of course, discoverable and public, if anyone asks for them.... Sigh.'" *Dart*, 807 F.3d at 233.

[19] Even if the Court were convinced Backpage already has sufficient evidence to proceed with its motion for summary judgment motion, it should nevertheless order production of the documents. Such a sanction is warranted "even where there is no prejudice" but the actions of the party "raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Fuery*, 2016 WL 5719442, at *11 (quoting *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993)).

Defendant and his counsel appear to have been aware of the illegitimacy of the privilege claims for Ms. Zugschwert "starting in the early days of discovery in the *Backpage.com v. Dart* case," Shapiro Decl. App. A, ¶¶ 31-32, they should be held jointly and severally responsible for costs incurred in seeking to obtain those documents. *E.g.*, *Colyer*, 2016 WL 25710, at \*26-27 (court may allocate responsibility for costs among culpable parties and counsel). Dart and his counsel should be required to pay fees and expenses associated with Plaintiff's review of Defendant's privilege claims, the motion to compel and subsequent briefing, and costs associated with this motion for sanctions. *See Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 688-89, 691 (D.C. Cir. 1987) (defendant ordered to pay fees for discovery abuse from "the date on which defendant first erroneously responded to plaintiff's discovery requests").

**The Court should establish a briefing schedule to resolve this case on the merits.** As Plaintiff has suggested previously, it is long since time for this case to be briefed and decided on the merits. Doc. #169, #204. As Dart has admitted, this case is not moot,[20] which means that, at this point, it is merely lingering. Once Ms. Zugschwert's wrongfully withheld documents are made available, Plaintiff will be in a position to file an updated motion for summary judgment and this case may finally be resolved. Whether this step should be considered part of a "sanction" or just the normal course of litigation once all the relevant facts have come out, such an order is appropriate. Sheriff Dart should no longer be permitted to benefit from dragging out the inevitable.

## IV.    CONCLUSION

Sheriff Dart and his counsel wrongfully withheld thousands of pages of documents under shifting claims of privilege that go to the essence of his unconstitutional scheme to impose an

---

[20] *See* Response to Backpage's Brief on Mootness (Doc. #200), *passim*; *see also* Back-page.com's Opp. to Mot. to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #199), at 1-5.

informal prior restraint.  The source of those documents, Dart's former strategist, has now confirmed in her separate lawsuit for wrongful termination what has long been evident – that the claims of privilege were illegitimate, and these false claims were knowingly made to impede this litigation.  In these circumstances, this Court must award sanctions, and Plaintiff asks that they include immediate production of the documents, legal fees and expenses, and timely resolution of this case.

Dated:  December 15, 2017.

<div style="margin-left: 40%;">

Respectfully submitted,

By:     *s/ Robert Corn-Revere*

James C. Grant (admitted *pro hac vice*)
Ambika K. Doran (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150

Robert Corn-Revere (admitted *pro hac vice*)
Ronald G. London (admitted *pro hac vice*)
Lisa B. Zycherman (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C.  20006
Telephone:  (202) 973-4200

Charles H.R. Peters
SCHIFF HARDIN
233 South Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5500

*Attorneys for Plaintiff Backpage.com, LLC*

</div>