**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BACKPAGE.COM, LLC,

                Plaintiff,

    v.

THOMAS J. DART, Sheriff of Cook County,
Illinois

                Defendant.

No. 1:15-cv-06340

Judge John J. Tharp, Jr.

Magistrate Judge Young B. Kim

**PLAINTIFF'S REPLY TO SHERIFF DART'S
OPPOSITION TO MOTION FOR SANCTIONS BASED ON
SHERIFF DART'S FRAUD ON THE COURT**

The author of Sheriff Thomas Dart's out-of-the-box plan to "crush Backpage.com," policy advisor Stephanie Zugschwert, sued her former employer for wrongful termination, alleging "the Cook County Sheriff's Office intentionally lied and misrepresented her employment relationship to the U.S. District Court, Northern District of Illinois, in order to prevent the production of Ms. Zugschwert's work product pursuant to written discovery requests in the case *Backpage.com v. Thomas J. Dart, Cook Co. Sheriff*, Case No. 15-CV-6340." *Zugschwert v. Cook Co. Sheriff's Office et al.*, No. 2017-L-010368 (filed Oct. 12, 2017), Pls. Mot. for Sanctions (Doc. #205-4), App. A ¶ 1. Based on those allegations, and bolstered by discovery arguments made earlier in Plaintiff's Motion to Compel (Doc. ##132, 152), Backpage moved for imposition of sanctions to protect the integrity of the judicial process under Federal Rules of Civil Procedure 37(a)(4) and 26(g), and under the Court's inherent authority. Doc. #205.

Sheriff Dart's Opposition to the Motion for Sanctions does not directly address, much less answer, any of the specific factual allegations in Zugschwert's complaint, and relies instead on generalized and carefully-worded denials and a handful documents submitted for *in camera*

review.  This sparse response begs the essential question of how Sheriff Dart or his lawyers could assert attorney-client or work product privilege based on "good faith belief" Ms. Zugschwert was acting as a lawyer, where it is undisputed she has not held a law license for over twenty years and has never been licensed to practice in the State of Illinois.  It also does not dispute the legal conclusion that sanctions are mandatory if this Court finds Dart and his counsel misled the Court, or even if they inadequately investigated facts underlying the privilege claims.

## I.  BACKGROUND

Sheriff Dart's highly questionable privilege claims for documents concerning Ms. Zugschwert were fully addressed in briefing for Backpage's Motion to Compel.  Doc. ## 132, 152.  The issue of possible sanctions arose when Ms. Zugschwert's lawsuit provided a perspective from inside the Sheriff's office on these assertions of privilege.  Among other things, Ms. Zugschwert alleged:

- She "was never acting as an attorney for the Cook County Sheriff's Office, and the Cook County Sheriff's Office knew this" from the date she was hired.  Mot. App. A ¶ 3.

- Although she is a law school graduate, she had worked as a legislative and policy analyst for over 20 years, and was only briefly licensed to practice law in Minnesota from 1993-1996.  This background was "the main topic of conversation" during the hiring process in March 2015.  *Id.* ¶ 16.

- At that time, Joseph Ryan, Dart's Director of Policy, and Cara Smith, his Chief of Policy, "assured her that she would not have any of the responsibilities of an attorney, and that the requirement [of being licensed] would be waived."  *Id.* ¶¶ 17-20.

- Once hired, she was tasked with developing "a policy approach to stop Backpage.com," but never served as a legal advisor.  *Id.* ¶ 23.

- When discovery commenced in this case and she learned Sheriff Dart's lawyers planned to assert attorney-client privilege, she told Dart's senior advisors that this argument contradicted the express terms of her employment, and "contradicted the many arguments and email exchanges that [she] engaged in with her supervisor and Sheriff's Office Counsel starting in the early days of discovery in the *Backpage.com v. Dart* case."  *Id.* ¶¶ 31-32.

- She specifically disputed Dart's assertion that she was not licensed "only because she failed to pay her annual dues," and rejected his claim that she "provided privileged legal advice at all times during her employment." *Id*. ¶ 30.

- Once she learned her documents were an issue in this case, she approached her supervisor, Joseph Ryan, and Dart's General Counsel, Nicholas Scouffas, to ensure that they, and other attorneys in the office, "knew that she had not been acting as a lawyer throughout her employment." *Id*. ¶ 34.

- Both Joseph Ryan and Cara Smith "agreed [she] had not been acting as an attorney, and that she had not been providing legal advice, at any point in her employment." Smith "reassured [her] that everyone knew she was not an attorney." *Id*. ¶¶ 35-36.

- Contrary to Dart's claim she had created privileged documents under Cara Smith's direction, Ms. Zugschwert's supervisor was Mr. Ryan, a non-attorney, and all of her memoranda and reports were heavily edited by him. *Id*. ¶ 37.

- Backpage's filing of a motion to compel touched off a number of internal conversations confirming the office-wide understanding she had not been hired as an attorney. *Id*. ¶¶ 40-43.

- After Backpage filed its motion, she was specifically instructed not to read Sheriff Dart's opposition (or any of the contested documents) in case she was called as a witness. *Id*. ¶ 47.

- On the advice of independent counsel she took steps to be reinstated as a member of the Bar, and Dart's office adjusted her work schedule to facilitate her doing so. *Id*. ¶¶ 48-50. However, she never completed that process.

- She told her supervisors that "if asked, she was going to have to tell the State that she was not hired to practice law prior to her application for a limited license, and that this information would become public record such that Backpage.com and the U.S. District Court would know her side of the story." *Id*. ¶ 54.

- The Sheriff's Office "would not sign the Employer Certification form [to the Illinois Bar] because [she] was not in the legal department." *Id*. ¶ 59.

- After she told her supervisors she would have to explain the withdrawal of her application to the Illinois Bar, and that, "no matter what, the truth about my hiring would come out," Dart fired her without prior notice. *Id*. ¶¶ 60-62.

Based on these allegations, Backpage filed its Motion for Sanctions and asked this Court to order: (1) production of any documents authored by or associated with Ms. Zugschwert that were withheld based on claims of attorney-client or work product privilege; (2) reimbursement of Plaintiff for all fees and costs arising from this motion and all pleadings associated with

Plaintiff's motion to compel production of documents; and (3) a briefing schedule for resolution of the case on summary judgment. Mot. at 17-19.

Sheriff Dart's Opposition addresses none of the details in the Zugschwert complaint that serves as the primary bases for Plaintiff's Motion for Sanctions. Offering only the truism that "[a]llegations in a complaint are not evidence," Opp. at 6, Dart provided only the following response:

- A statement that Ms. Zugschwert's job title was "Assistant General Counsel," and this title was used on her email signature block that she created. Opp. 1, 6.

- An assertion that allegations in Ms. Zugschwert's complaint "are easily proven false" by a Declaration of Joseph Ryan that contains a denial, devoid of specifics, that he ever told Ms. Zugschwert that she would not act as an attorney and a statement he is "unaware" of any co-worker making such a statement. *Id*. Ex. B.

- Seven emails submitted *in camera* (out of over 4,000 pages withheld from production) are cited as examples of Ms. Zugschwert providing legal advice. A footnote purporting to explain their relevance is redacted. Opp. 7 & n.1.

- An unsworn statement that "[t]he Sheriff's attorneys have performed a good faith analysis of all documents, and for any documents over which the CCSO is claiming a privilege." Opp. 8.

That's it. These very limited averments do not begin to address the numerous details set forth in the Zugschwert complaint. The Opposition offers no explanation or detail regarding any inquiry or investigation counsel performed pursuant to Rule 26 regarding Ms. Zugschwert's professional status, and states only "for each of the reasons set forth above, the Sheriff's privilege log was well based in fact." Opp. 14.

## II.     ARGUMENT

Sheriff Dart opposes the Motion for Sanctions by attacking its timing. He states that if Backpage had concerns about his shifting claims of privilege regarding Ms. Zugschwert, "it could have addressed this issue much earlier, rather than filing a motion for sanctions more than twenty months after the CCSO produced the revised privilege log." Opp. 10. But the simple fact

is, Backpage raised its concerns from the beginning, as is plain from the docket in this case and as set forth in detail in its Motion for Sanctions. Mot. 2-7. Concerns about Sheriff Dart's excessive privilege claims were raised in August 2015, expanded upon in meet-and-confer sessions in December 2015, were the subject of a motion to compel in March 2016, discussed in hearings before this Court, and explored in further negotiations with opposing counsel through the Spring of 2016.

Pointing to his revised privilege log, Dart asserts a litigant should not be sanctioned "for reconsidering its initial privilege assertions." Opp. 10. But Dart and his counsel reconsidered nothing. Not a single document associated with Ms. Zugschwert was produced after this "reconsideration."[1] Instead, after this Court expressed doubt about his initial privilege claims, Dart merely reshuffled his assertions to rely entirely on attorney-client and work product privilege. Now, however, because of Ms. Zugschwert's lawsuit filed in October 2017, we know these assertions of privilege are false and those falsehoods were made knowingly. That is why this sanctions motion is now before the Court.

### A. Backpage Provided a Sufficient Factual Basis For the Court to Consider Awarding Sanctions

Sheriff Dart's principal argument is that the Court should not award sanctions because misconduct has not yet been proven. Opp. 4. The Defendant maintains that mere allegations are not proof (a lesson he perhaps should take to heart) and dismisses the Zugschwert complaint as no more than complaints of a "disgruntled former employee." Opp. 6. Dart tries to distinguish cases Backpage cites by saying sanctions were imposed only "after an evidentiary hearing in which both parties produced evidence of alleged sanctionable conduct." Opp. 11-12 (discussing

---

[1] Although Sheriff Dart produced some additional documents after this Court questioned assertions of deliberative process or law enforcement privileges, none of those documents was associated with Ms. Zugschwert. Mot. 6-7.

*e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011); *Colyer v. City of Chicago*, 2016 WL 25710, at \*13 (N.D. Ill. 2016)). But Dart's claim that this Court should not consider sanctions places the cart before the horse. The motion was filed precisely so the Court could decide whether to impose sanctions "after an evidentiary hearing in which both parties produced evidence."

Dart's claims of privilege were fishy enough to warrant this Court's skepticism given the fact that Zugschwert was hired to spearhead a project that the Sheriff's Office insisted was not an official government action. Dart and his lawyers repeatedly represented to this Court that his actions under this project were merely those of a "father and a caring citizen." Mot. to Dismiss, Doc. #21, at 1, 13, 15. However, after claims of deliberative process privilege could no longer be credibly maintained, Dart merely shifted the privilege claims wholesale to attorney-client and work product privilege. Even if there could be some truth to Dart's later-asserted privilege claims, it strains credulity for Dart to maintain that every single document in this "private" initiative could be withheld. The only consistent aspect of Dart's behavior is his desire to conceal his work with Zugschwert.

Dart's argument that the Court should disregard allegations in Ms. Zugschwert's wrongful termination complaint is puzzling, to say the least. Dart claims that her allegations are "unproven" and also "not particularly germane" since the client's "reasonable belief" is all that matters. Opp. 14. At the same time, Dart tries to rely on Ms. Zugschwert to support his assertion that he "reasonably believed" documents were privileged. He argues he reasserted privilege in response to the Plaintiff's motion to compel after "the Sheriff's attorneys performed their due diligence *and consulted with Ms. Zugschwert regarding her role*." Opp. 3. So, are Ms. Zugschwert's views on her job germane to this sanctions motion, or not?

6

Obviously, they are. The entire thrust of her claim against Sheriff Dart is that "the Cook County Sheriff's Office intentionally lied and misrepresented her employment relationship … in order to prevent the production of Ms. Zugschwert's work product pursuant to written discovery requests" in this case. Mot. App. A ¶ 1. More specifically, she alleges that both before and after the motion to compel was filed, she spoke with others in her office, including her supervisors, confirming the office-wide understanding that she had not been hired as an attorney. *Id.* ¶¶ 40-47. Under these circumstances, Defendant's assertion that the privilege claims were based on a "good faith belief" are not credible.[2] Quite to the contrary, the actions of Dart and his attorneys constitute willful misconduct.

Dart has a point when he argues the Court should not yet award sanctions when all it has before it are allegations and there has been no responsive pleading or evidentiary hearing. But then, filing any motion is the beginning of a process that includes further briefing and, where necessary, a hearing. Toward that end, Plaintiff submits as Appendix B the sworn Declaration of Stephanie Zugschwert stating that:

- During her tenure with the Sheriff's Office she worked exclusively as a policy analyst and was never engaged as an attorney.

---

[2] The cases Dart cites on this point do not even remotely apply to this situation. *See* Opp. 5. *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1320 (7th Cir. 1978), addressed whether a large law firm was involved in a conflict and concluded it was not, observing "[t]he professional relationship does not arise where one consults an attorney in a capacity other than as an attorney." *Rubin & Norris, LLC v. Panzarella*, 51 N.E.3d 879, 891 (Ill. App. 2016), is a fee recovery case where the court explained the client's view of whether an attorney-client relationship was formed is important to protect "the lay client" (while allowing a claim for *quantum meruit* to go forward). *Herbes v. Graham*, 536 N.E.2d 164, 168 (Ill. App. 1989), is another case that suggests the client's understanding is important in protecting a lay person who "is consulting a lawyer in that capacity and [has] manifest[ed] [an] intention to seek professional legal advice." *Fematt v. Finnegan*, 2012 WL 3308759 (N.D. Ill. 2012), is the same, and found no attorney-client relationship was formed. Likewise, in *International Paper Co. v. Lloyd Mfg. Co.*, 555 F. Supp. 125, 132-33 (N.D. Ill. 1982), the court found no attorney-client relationship was formed.

- She was terminated because she refused to remain silent after learning the Sheriff's Office intentionally misrepresented her employment relationship in order to avoid production in this case of materials and communications she authored, received, or to which she was a party.

- Her termination also was based on her refusal to dishonestly claim that she had worked as an attorney in the Cook County Sheriff's Office in connection with the discovery dispute in this case.

- She specifically attests to the facts as set forth in her wrongful termination complaint that provide a detailed account of her engagement by, employment with, and termination from the Sheriff's Office, as well as the interactions and events leading to her termination.

App. B ¶¶ 2-5. Based on the record, it will be up to the Court to rule on the need for an evidentiary hearing. And, as to a responsive pleading, that element was satisfied by the filing of Defendant's Opposition to this motion, which did not address the issues in the Zugschwert complaint, and which raises far more questions than it answers.

The terse Declaration of Joseph Ryan attached to the Opposition says very little. It states only that he believed Ms. Zugschwert was working as a lawyer (notwithstanding her lack of a professional license), that he is "unaware" of anyone else in the office who felt otherwise, and that three emails listed by Bates stamp number (submitted *in camera*) are examples of where he sought legal advice. Opp. Ex. B. But this says nothing about the specific claims about the nature of Ms. Zugschwert's job, the understanding that the Sheriff's Office waived the requirement of a law license, or the many conversations surrounding these issues in response to the motion to compel in this case. Apart from these narrowly focused statements mentioned above, the Ryan declaration includes no specific denials of Ms. Zugschwert's detailed allegations.

Even more telling is what is missing from the Opposition. There are no statements—sworn or unsworn—from others whose actions are described in the Zugschwert complaint. These include Cara Smith, Sheriff Dart's Chief of Policy, and his General Counsel, Nicholas Scouffas, among others. The Opposition also lacks any fact-based response to the claim that the

8

various lawyers representing Sheriff Dart, in their signed pleadings and in-court statements, failed to satisfy the requirements of Rule 26(g) to ensure that discovery responses are supported by both facts and the law. The Opposition states only that "the Sheriff's attorneys performed their due diligence and consulted with Ms. Zugschwert regarding her role." Opp. 3. Such a spare, unsupported statement does not even attempt to explain how such a limited inquiry satisfies Rule 26(g)'s requirement that the attorney reasonably investigate the factual basis of discovery responses or objections. It also begs the question of how the Defendant can rely on the claim that his lawyers "consulted with Ms. Zugschwert regarding her role," when Ms. Zugschwert herself has provided a very different account of what happened.

Nor does the citation of a handful of emails submitted for *in camera* review carry any weight. First, whether or not a few emails indicate that legal topics came up, it says nothing about the conditions under which the employment relationship was entered, the understandings between the parties, or the fact that Ms. Zugschwert had not been licensed to practice law for two decades. Second, it says nothing about the validity of privilege claims for the thousands of other pages of documents withheld, whether the Defendant honestly represented their status, or whether his lawyers performed the required inquiry to support privilege claims. In addition, it would be fundamentally unfair for the Court to rely on *in camera* documents or redacted arguments without providing Plaintiff a full opportunity to respond. [3]

---

[3] Additionally, by placing these documents at issue, Dart has waived any claim of attorney-client or work product privilege. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272, 276 (N.D. Ill. 1997). A party waives the privilege when it "relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).

**B.     Backpage Provided a Sufficient Legal Basis For the Court to Consider Awarding Sanctions**

There is no serious dispute as to the law.  If, as Ms. Zugschwert has sworn, Dart's office and his attorneys misrepresented her status in order to thwart discovery in this case, then sanctions must be imposed.  *See* Mot. 10-20.  Although Sheriff Dart quibbles about whether such actions would violate a preexisting discovery "order," Opp. 11, this ignores the fact that a formal, written order to comply with discovery is not required.  *Quela v. Payco-General Am. Creditas, Inc.*, 2000 WL 656681, at *6 (N.D. Ill 2000) ("[A]n order is not required to provide notice that parties must not engage in such abusive litigation practices as coercing witness testimony, lying to the court, and tampering with the integrity of the judicial system.").  *See* Mot. 12-13.  It also fails to address the fact that the Court may impose sanctions under its inherent authority, and that under Rule 26(g)(3), sanctions are mandatory where investigation was inadequate to support discovery responses.

The sanctions Plaintiff is seeking in this case are quite modest.  Although the Court has wide discretion in determining an appropriate sanction, and serious misconduct (like perpetrating a fraud on the court) can justify a default judgment, Mot. 17-18, Plaintiff seeks only an order requiring disclosure of improperly withheld documents, payment of fees and expenses associated with the motion to compel and sanctions motion, and a schedule for briefing and arguing summary judgment.  The Defendant makes no argument suggesting these remedies are not supported by the law or would be inappropriate in this case.

Instead, the Defendant takes issue with a footnote reference and complains that "Backpage's counsel even suggests that this court refer this matter 'to the Illinois Bar for disciplinary proceedings,'" which he asserts is "improper under the Illinois Rules of Professional Conduct 8.4(g)."  Opp. 5-6.  This is wrong for several reasons.  First, Backpage did not ask for

10

disciplinary sanctions and seeks only the three remedies listed above.  In discussing the Court's

ability to fashion an appropriate sanction, the Plaintiff merely observed in a footnote that the

Court "has the discretion to impose any additional remedies it may consider appropriate,"

including referral to the Bar.  Mot. 17 & n.17.  Second, Backpage would have been well within

its rights to seek referral of this matter to the Illinois Bar, and doing so presents no conceivable

violation with RPC 8.4(g). [4]  Third, as long as Dart and his counsel are poking around the Rules

of Professional Conduct, they might have considered taking a look at Rule 8.4(c) which bars

attorneys from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." [5]

Had they adhered to that rule, we would not be here.

### III.    CONCLUSION

For the foregoing reasons, this Court must award sanctions, and Plaintiff asks that they

include immediate production of documents associated with Ms. Zugschwert, payment of legal

fees and expenses, and timely resolution of this case.

---

[4]    Rule 8.4(g) states that it is misconduct "for a lawyer to present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter."  In this case, Plaintiff's counsel neither contacted Sheriff Dart's lawyers nor issued any kind of a "threat."  Quite to the contrary, raising the issue in this motion is arguably required by the Rules of Professional Conduct.  *See* Rule 8.3(a) ("A lawyer who knows that another lawyer has committed a violation of Rule 8.4(b) or Rule 8.4(c) shall inform the appropriate professional authority.").  In any event, raising a possibility of disciplinary action in a sanctions motion does not in any way implicate Rule 8.4(g).  *See Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 234 (2000); *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 896-97 (N.D. Ill. 2013).

[5]    A party violates Rule 8.4(c) "where the misrepresentation is made knowingly, or where it is made with a reckless ignorance of the truth or falsity thereof."  *In re Hussain*, 533 B.R. 658, 696 (Bankr. N.D. Ill. 2015) (interpreting the analogous section of the ABA Model Rules).

Dated:  February 2, 2018.

Respectfully submitted,

By:  *s/ Robert Corn-Revere*

James C. Grant (admitted *pro hac vice*)
Ambika K. Doran (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150

Robert Corn-Revere (admitted *pro hac vice*)
Ronald G. London (admitted *pro hac vice*)
Lisa B. Zycherman (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C.  20006
Telephone:  (202) 973-4200

Charles H.R. Peters
SCHIFF HARDIN
233 South Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5500

*Attorneys for Plaintiff Backpage.com, LLC*