IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BACKPAGE.COM, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-06340 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| THOMAS J. DART, Sheriff of Cook ) | |
| County, Illinois, ) | Magistrate Judge Young B. Kim |
| ) | |
| Defendant. ) | |

**SHERIFF'S COMBINED MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THIS ACTION AND TO DISSOLVE THE INJUNCTION**

Despite what Backpage told this Court on numerous occasions, it is not merely an online intermediary publishing the information content of others. In fact, quite the opposite is true. As the Sheriff consistently has maintained, Backpage knowingly facilitated prostitution and human trafficking for years, including by sanitizing proposed ads of their facially-apparent criminal content to elude law enforcement, and profited handsomely. To continue this multimillion-dollar criminal empire, Backpage lied to this Court, lied to the Seventh Circuit Court of Appeals, lied to the United States Supreme Court, lied to every other state and federal court in which it has appeared, lied to every public official and law enforcement officer investigating it, and lied to victims of sex trafficking or their grieving families. Now, however, the truth is out, and it is time to dismiss this case with prejudice, dissolve the preliminary injunction and award appropriate sanctions against Backpage.

Since entry of the preliminary injunction in this matter, facts have come to light which conclusively establish that this lawsuit never had any merit, and that the case is moot and should be dismissed. The preliminary injunction should be dissolved immediately because it

serves no legitimate purpose. Most astoundingly, Backpage and its CEO now admit—technically, confess—that the entire basis for its civil lawsuit, including the preliminary injunction, is an orchestrated hoax:

- Backpage confesses that it facilitated the placement of prostitution advertisements on its website, *contra* Complaint (ECF No. 1), ¶¶ 19, 23, 25, 56 & Amended Complaint (ECF No. 173), ¶¶ 19, 23, 25, 56;

- Backpage admits that Visa and MasterCard severed their relationships with Backpage because of its illegal activities, *contra* Complaint, ¶¶ 40, 41, 44—45, 62 & Amended Complaint, ¶¶ 40, 41, 44—45, 62; and

- Backpage admits that through dummy corporations, Backpage was able to continue the processing of credit card transactions after Visa and MasterCard stopped dealing with Backpage directly, *contra* Complaint, ¶¶ 42—45 & Amended Complaint, ¶¶ 42—44.

## Background

This all started when the Cook County Sheriff's Office tried to work with Backpage to rid it of the criminal prostitution that ran rampant throughout its website. Backpage paid lip service to helping law enforcement clean up its site, protesting that it was not responsible for the content posted thereon, yet all the while knowing that it was abetting prostitution through its so-called "moderation" efforts. Soon, the Sheriff's Office uncovered evidence that Backpage was sanitizing prostitution ads to conceal criminal conduct, including the minority age of children being prostituted. That was the Red Beauty Sting Operation. (*See* ECF No. 155 at 5—6). Later, mountains of evidence surfaced showing that Backpage engaged in a systematic cover-up of known criminal conduct, proving its civil rights case was phony from the get-go. (*See* ECF No. 201) (motion for leave to issue subpoenas concerning cache of Philippine revelations).

Backpage perpetuated its lies at the preliminary injunction hearing held August 20, 2015, maintaining it was not responsible for any of the content placed on its website and

denying any criminal complicity. (ECF No. 65 at 194). At the hearing, the Sheriff showed that MasterCard already was considering severing its relationship with Backpage due to pressures received from stockholders and others (ECF No. 88-55), and presented testimony from Visa, Inc. that "at no point did Visa perceive Sheriff Dart to be threatening Visa with prosecution or any other official state action, nor did Visa base its decision on any such threat." (ECF No. 52-19, ¶ 4). On August 21, 2015 this Court denied Backpage's motion for a preliminary injunction. (ECF No. 59). In hindsight, the guilty pleas confirmed that this Court was correct in its fact-finding.

On September 17, 2015, Backpage filed its notice of appeal to the Seventh Circuit. (ECF No. 73). It continued to maintain falsely that it was not facilitating prostitution and not providing any of the content on its website. (Appellant's Opening Brief at 3). The Seventh Circuit reversed this Court's decision, ruling that Backpage was entitled to a preliminary injunction, based on Backpage's knowingly false denials of facilitating prostitution and knowingly false claims that it was not providing content for any of the advertisements posted on its website. *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015). On December 23, 2015 this Court granted Backpage's preliminary injunction as ordered by the Court of Appeals. (ECF No. 109). The Sheriff's Office has complied with the injunction.

For almost three years, Backpage fiercely fought discovery motions—prosecuting and defending them—aggressively and repeatedly sought summary judgment, opposed leave to plead affirmative defenses of illegality, promoted its immunity under the Communications Decency Act and even sought sanctions against the Sheriff's Office, continuing to maintain falsely that it was not facilitating prostitution and not providing any of the content on its website. (ECF Nos. 124, 160, 205, 214—16). Then, as the Sheriff continued to press for discovery into

3

how much money Backpage earned in its illegal enterprise, Backpage filed its first amended complaint on August 9, 2016 abandoning its claims for monetary damages. (ECF No. 173).

Then Backpage's house of cards began to collapse. On January 9, 2017 the U.S. Senate Permanent Subcommittee on Investigations issued a report following its twenty-plus month investigation into human trafficking titled "BACKPAGE.COM's KNOWING FACILITATION OF ONLINE SEX TRAFFICKING." (ECF No. 197-1). The Subcommittee concluded not only that Backpage profited handsomely from illegal advertisements, but that Backpage, contrary to its assertions, edited ads posted on its website to conceal criminal activity and advised customers how to edit their ads for prostitutes to give Backpage plausible deniability about the illegal nature of the ads. *Id.* The report concluded that Backpage was aware that it facilitated prostitution and that "Backpage's public defense is a fiction." (*Id. at* 3 & 36).

On January 9, 2017 Backpage removed the adult sections from its websites. (ECF No. 196 at 1). Later, the Sheriff would learn that Backpage merely migrated the criminal ads to its personals section. (ECF No. 200).

In July 2017, THE WASHINGTON POST and NBC NEWS each published explosive articles reporting that Backpage actively recruited prostitutes and even created ads for them to post on its website. (ECF Nos. 201-1, 201-2). The articles explained that the discovery of incriminating documents showing Backpage's solicitation and ad creation resulted accidentally following the seizure of computers from one of Backpage's Philippine agents. The seized documents contradict the premise of the original and amended complaints that Backpage does not provide any content of the ads soliciting prostitution.

On March 28, 2018, in a ninety-three-count indictment, the DOJ indicted seven individuals associated with Backpage for crimes such as conspiracy to facilitate prostitution,

4

facilitating prostitution and money laundering. On April 5, 2018 the illegal activity outlined by the Senate became undeniable when Backpage and its CEO Carl Ferrer entered guilty pleas pursuant to plea agreements for charges of felony money laundering and conspiracy to commit violations of the Travel Act – Facilitate Prostitution (18 U.S.C. § 1952(a)(3)(A)), Concealment Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)), International Promotional Money Laundering (18 U.S.C. § 1956(a)(2)(A)), Transactional Money Laundering (18 U.S.C. § 1957(a)), and International Concealment Money Laundering (18 U.S.C. § 1956(a)(2)(B)(i)), true and correct copies of which are attached hereto as Exhibits A & B. As part of the Backpage Plea Agreement, Backpage agreed that "[i]t is the parties' intention that the defendant [Backpage] will cease to exist or operate following its entry of a guilty plea in this matter." (Ex. A, ¶ 3(d)). As a part of the Ferrer Plea Agreement, Ferrer agreed that "upon entry of his guilty plea, he will take all steps within his power to immediately shut down the website www.backpage.com ("Backpage") in the United States and all other countries in which the website operates. Such steps shall include, but not be limited to, surrendering to the United States the registration account, including login and password information, for the www.backpage.com domain name necessary to operate the various Backpage websites and providing technical assistance to the United States to effectuate the shutdown." (Ex. B, ¶ 3(a)). In addition, Backpage, through Ferrer, admitted that ads on Backpage were for prostitution not protected by the first amendment, and that Backpage was aware of this and "conspired to find ways to knowingly facilitate the state-law prostitution crimes being committed by Backpage's customers." (Ex. A, ¶ 10(a)). Ferrer agreed to these same facts in the Ferrer Plea Agreement and admitted his personal involvement in the same. (Ex. B, ¶ 10(a)). On April 6, 2018 the U.S. Justice Department seized

Backpage.com and its affiliated websites, shutting down Backpage's website and business. (Ex. C).

## ARGUMENT

Backpage's remaining claims for injunctive and declaratory relief should be dismissed with prejudice because they are moot. Backpage no longer exists or operates. Further, the preliminary injunction should be dissolved because Backpage's parade of lies has been exposed, obliterating the bases on which it was granted, and like the action is moot. Finally, if this action is dismissed, the injunction must be dissolved as a matter of law.

### I. BACKPAGE'S CLAIMS ARE MOOT BECAUSE ITS WEBSITES ARE SHUT DOWN AND IT AGREED TO CEASE EXISTENCE

"Article III, § 2 of the Constitution grants jurisdiction to federal courts to adjudicate only actual, ongoing controversies. For a case to be justiciable, a live controversy must continue to exist at all stages of review, not simply on the date the action was initiated. A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be an opinion advising what the law would be upon a hypothetical state of facts." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). When only injunctive and declaratory relief and no money damages are sought, a case is moot when "a judicial decision" in favor of the moving party can "no longer benefit" the moving party. *Id.* at 596-597. In addition, the Supreme Court has "often stressed" that courts "ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Matal v. Tam,* 137 S. Ct. 1744, 1755 (2017).

"A court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009). A claim for declaratory judgment is moot where "relief ... would have no impact on the parties to [the] suit." *Tobin for Governor*

*v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir.2001). "The issue of whether a claim for specific injunctive relief is moot is a fact-specific one, that requires the court to assess not only the adjudicative facts of the case but also the probable impact of the requested relief on that factual situation." *Square D Co. v. Fastrak Softworks, Inc.*, 107 F.3d 448, 451 (7th Cir. 1997) (citation omitted). Specifically, when the facts show that a party seeking only injunctive or declaratory relief no longer exists or operates, its claims are moot. *See, e.g., Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 239–40 (1985); *Mad Malcolm's, Inc. v. Vill. of Niles*, No. 85 C 7060, 1989 WL 135250, at *1 (N.D. Ill. Oct. 26, 1989) (court dismissed claims for injunctive relief as moot in case where plaintiff had gone out of business). The Supreme Court held a case was moot where the petitioner had "gone out of business." *Bd. of License Comm'rs of Town of Tiverton,* 469 U.S. at 239–40. The Supreme Court explained that although at "oral argument counsel discussed some circumstances under which a decision on the merits by [the] Court might conceivably affect substantive rights of interested parties … such speculative contingencies afford no basis for [the Court's] passing on the substantive issues [the petitioner] would have [it] decide, in the absence of evidence that this is a prospect of immediacy and reality." *Id.* (citations and quotations omitted).

        When Backpage and its CEO pleaded guilty to felony charges, Backpage agreed that it would "cease to exist or operate" and Ferrer agreed to "take all steps within his power to immediately shut down" Backpage. (Ex. A, ¶ 3(d) and Ex. B, ¶ 3(a)). Backpage no longer "exists" or "operates" and Ferrer now must take all steps to ensure Backpage is "immediately shut down." *Id.* Because Backpage no longer exists, its claims for injunctive and declaratory relief are moot. The Supreme Court made clear in *Tiverton* that a case is moot where a complaining party has "gone out of business" and that "speculative contingencies" about how a

7

decision "might conceivably affect substantive rights of interested parties" are not enough to avoid dismissal based on mootness. 469 U.S. at 239–40. As such, this case is moot and should be dismissed with prejudice.

## II. A PRELIMINARY INJUNCTION BASED ON REPUDIATED ALLEGATIONS SHOULD BE DISSOLVED

Since this Court entered an injunction on December 23, 2015, the lies upon which Backpage relied to obtain the preliminary injunction have been exposed:

- On January 9, 2017, the Senate Permanent Subcommittee on Investigations concluded that Backpage edited ads for prostitution and was fully aware that its website was used to facilitate prostitution and child trafficking.

- In January 2017, Backpage shut down the adult section of its websites.

- In July 2017, a large cache of Backpage documents possessed by a Backpage contractor was discovered in the Philippines, demonstrating Backpage was actively recruiting prostitutes and creating ads for them to post on its web site.

- On April 6, 2018, the DOJ seized Backpage's web sites and shut down Backpage's business because Backpage is "the Internet's leading forum for prostitution ads, including ads depicting the prostitution of children."

- On April 6, 2018, the DOJ filed a ninety-three-count indictment against Backpage and seven individuals for crimes such as conspiracy to facilitate prostitution, using a facility in interstate or foreign commerce to commit prostitution, and money laundering.

- On April 12, 2018, Backpage's and its related entities' guilty pleas to conspiracy to launder money were unsealed.

- On April 12, 2018, Backpage CEO Carl Ferrer's guilty pleas to conspiracy to prostitute and conspiracy to engage in money laundering were unsealed.

- In the April 12, 2018 plea agreements of Backpage and Ferrer, both admit that most advertisements from which Backpage derived revenue were for prostitution services; Backpage and its employees conspired to facilitate

8

prostitution by, among other things, editing ads that it knew were for prostitution to create a veneer of deniability for Backpage; and Backpage and its officers conspired to engage in money laundering.

- In the April 12, 2018 plea agreements of Backpage and Ferrer, both admit that "banks, credit card companies and other financial institutions refused to do business with Backpage due to the illegal nature of its business."

A federal court has an inherent right to modify or dissolve a preliminary injunction in light of changed circumstances, or in this case, exposed lies. *United States v. Swift & Co.,* 286 U.S. 106, 113 (1932); *U.S. v. City of Chicago,* 663 F.2d 1354, 1359 (7th Cir. 1981). The burden for dissolving a preliminary injunction is not as high as the burden for dissolving a permanent injunction. *See Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.*, 54 B.R. 353, 361 (Bankr. W.D. Wis. 1985) (suggesting that the burden should be placed on the party seeking to maintain the preliminary injunction). *See also Movie Systems, Inc. v. MAD Minneapolis Audio Distributors*, 717 F.2d 427, 430 (8th Cir. 1983); *Basic Research, L.L.C. v. Cytodyne Technologies, Inc.,* No. 2:99-CV—343K, 2000 WL 33363261, * 11 (D. Utah 2000).

When the purpose of the preliminary injunction is no longer served by maintaining it, it should be dissolved. *Burlington Northern & Santa Fe Ry. Co. v. Brotherhood of Locomotive Engineers*, 367 F.3d 675, 679 (7th Cir. 2004) (preliminary injunction issued to prevent labor union striking while dispute with employer was heard by arbitral board was dissolved after board decided most issues in favor of employer); *Stewart v. General Motors Corp.* 756 F.2d 1285, 1291-93 (7th Cir. 1985) (preliminary injunction issued to eliminate discriminatory promotional practices was dissolved when employer became party to a collective bargaining agreement that contained a uniform and objective evaluation process for promotions); *Moore v. Miller,* 612 F. Supp. 952 (N.D. Ill. 1985) (preliminary injunction requiring Illinois Department of Public Aid to calculate income levels in a certain manner was dissolved after

9

federal government passed law dictating that income levels be calculated in a manner similar to that set forth in preliminary injunction); *McMillen v. Las Vegas Tp. Constable's Office*, No. 2:14–CV–00780–APG–NJK, 2015 WL 403563 (D. Nev. Jan. 29, 2015) (preliminary injunction prohibiting Township Constable from enforcing a fee for failure to register vehicle was dissolved after Township Constable waived fee); *Univ. of Hawaii Professional Assembly v. Cayetano*, 125 F. Supp. 2d 1237 (D. Haw. 2000) (preliminary injunction prohibiting state from implementing statute to pay employees on a delayed payroll basis in violation of collective bargaining agreement was dissolved because it served no purpose after CBA expired).

Due to Backpage's lies being exposed, it is clear that no purpose exists for maintaining the preliminary injunction against the Sheriff. When Backpage sought the preliminary injunction, it alleged falsely that the Sheriff's letters to the credit card companies caused them to sever ties with Backpage (ECF No. 1, ¶¶ 4, 6, 39—45; ECF No. 173, ¶¶ 4, 6, 39—45). Now, Backpage admits that credit card companies severed ties *because of Backpage's illegal conduct.* (Ex. A and B). Thus, there never was any valid reason to enjoin the Sheriff from contacting financial institutions, and the preliminary injunction should be dissolved.

Often, courts looking at the dissolution issue consider if the changed circumstances result in the inability of the plaintiff to demonstrate the essential elements needed to grant a preliminary injunction in the first place. *Centurion Reinsurance Co., Ltd. v. Singer,* 810 F.2d 140, 143 (7th Cir. 1987); *U.S. Commodity Futures Trading Commission v. Gorofalo,* No. 10 C 2417, 2010 WL 11245430, * 3 (N.D. Ill. Dec. 21, 2010). A preliminary injunction will only be granted when the moving party demonstrates that it has no adequate remedy at law, it will suffer irreparable harm if relief is denied, and it has some likelihood of success on the merits. *See Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011).

**Backpage cannot show a likelihood of success on the merits.** A prior restraint is an order by a government body forbidding certain communications when issued in advance of the time that the communications occur. *Alexander v. U.S.*, 509 U.S. 544, 550 (1993). Prior restraints occur when, for example, the government seizes or otherwise restrains materials suspected of being obscene without a prior judicial determination that they were in fact obscene. *See, e.g., Marcus v. Search Warrant of Kansas City, Mo., Property,* 367 U.S. 717 (1961); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963). Subsequent punishment, on the other hand, does not seek to regulate speech or conduct before it takes place, but is a penalty for past criminal conduct. *Alexander,* 509 U.S. at 553.

The action that the Sheriff is enjoined from doing can no longer be considered a prior restraint because Backpage has admitted to criminal wrongdoing. Any action the Sheriff now takes is not to stop future communications by Backpage, but in response to Backpage's admitted past criminal conduct. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1987) (county sheriff could close adult book store based on past illegal conduct). Because a prior restraint can no longer occur, the injunction serves no purpose and must be dissolved. Also, because Backpage is out of business, it is not engaging in any speech that could be restrained.

**Backpage cannot show irreparable harm.** If a company is out of business, it cannot show future irreparable harm and a preliminary injunction cannot issue. *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 239–40 (1985); *T & L Redemption Center Corp. Phoenix Beverages, Inc.*, 752 F. Supp. 64, 67 (E.D. N.Y. 1989); *Mad Malcolm's, Inc. v. Village of Niles*, No. 85 C 7060, 1989 WL 135250, at *1 (N.D. Ill. Oct. 26, 1989) (court dismissed claims for injunctive relief as moot in case where plaintiff had gone out of business). Backpage is out of business, and the reality is that it will never do business. Federal authorities

11

seized its assets and shut down its websites. It admitted serious wrongdoing in its plea agreement and the CEO and owner agreed that Backpage will stop doing business.

Preliminary injunctive relief is not appropriate where, as in this case, the threat of irreparable harm already occurred. *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8; *American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1 (1st Cir. 1997); *Confederated Tribes of Coleville Indian Nation v. State of Wash.*, 591 F.2d 89, 90 n.1 (9th Cir. 1979); *Alpha Founders Holding, LLC v. Magellan Health, Inc.*, 2018 WL 1247405, * 5 (E.D. N.Y. Mar. 9, 2018). The threat of irreparable harm to Backpage was that its first amendment rights would be violated by the Sheriff's communications with Visa and MasterCard. Protection of Backpage's first amendment rights is now moot because Backpage no longer engages in speech. The only harm for which Backpage seeks preliminary injunction has already occurred and will never occur again. The preliminary injunction is senseless and should be dissolved.

**Backpage defrauded the courts to obtain its injunction.** When a party obtains an injunction through fraudulent means, continuation of the injunction is inequitable, and a court will dissolve it. *Star v. Hawaii,* No. CV 05–00665 DAE LEK, 2007 WL 542060, (D. Haw. Mar. 19, 2007) (preliminary injunction in employment discrimination case dictating steps that employer must take to accommodate employee and prohibiting disciplinary action was dissolved because employee continuously arrived late to work, failed to account for work time and took excessive lunch breaks). Backpage, of course, has been a little more than tardy to work. It has confessed to facilitating prostitution and made admissions on its true role sanitizing ads of unlawful activities to conceal crimes from law enforcement officials. It has pretended to be a civil rights plaintiff, all the while knowing its factual assertions were untrue.

It is inequitable to allow a preliminary injunction based on falsehoods to stand. *Qad. inc. v. ALN Associates, Inc.*, 974 F.2d 834, 839 (7th Cir. 1992) (court dissolved injunction due to the misrepresentations made to the court, and Seventh Circuit affirmed, stating "[t]he district court did not abuse its discretion . . . in dissolving the injunction based on qad's less-than-candid posture at the injunction hearing"); *Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 818 (5th Cir.1989) (injunction procured by material misrepresentations may not be sustained).

### III. THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED IF THE CASE IS DISMISSED

Logically, if a case is dismissed, a preliminary injunction previously granted in the case must be dissolved. *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994) (a "preliminary injunction cannot survive dismissal of a complaint"). *See also Rodriquez v. 32nd Legislature of Virgin Islands,* 859 F.3d 199, 207 (3d Cir. 2017) (injunction dissolved automatically when district court dismissed case); *Wyandotte Nation v. Sebelius,* 443 F.3d 1247, 1253 n.10 (10th Cir. 2006) (preliminary injunction dissolved upon dismissal of complaint); *Fundicao Tupy S.A. v. U.S.*, 841 F.2d 1101, 1103 (Fed. Cir. 1988) (preliminary injunction "is *ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause") (citations omitted). As the Sheriff has demonstrated, this action must be dismissed, so too then should the preliminary injunction be dissolved.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Thomas J. Dart, Sheriff of Cook County, Illinois, requests that the preliminary injunction be dissolved, that the action be dismissed with prejudice and that this Court grant whatever other relief this Court deems appropriate.

    Respectfully submitted,

    THOMAS J. DART,
    SHERIFF OF COOK COUNTY


    By:   Paul J. Kozacky
        One of his attorneys


Paul J. Kozacky
Alastar S. McGrath
Jerome R. Weitzel
KOZACKY WEITZEL MCGRATH, P.C.
55 West Monroe Street, 24th Floor
Chicago, Illinois 60603
(312) 696-0900