**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BACKPAGE.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-06340 |
| | ) | |
| v. | ) | Judge John J. Tharp Jr. |
| | ) | |
| THOMAS J. DART, Sheriff of Cook | ) | Magistrate Judge Young B. Kim |
| County, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

**SURREPLY OF NON-PARTY DAVIS WRIGHT TREMAINE LLP**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

Davis Wright Tremaine LLP ("DWT"), by its counsel, files this Surreply to respond to Backpage's waiver of attorney-client privilege and three matters that were improperly argued for the first time in Sheriff Dart's Reply Brief in support of his pending Motion for Sanctions ("Sheriff's Reply"), which was filed on May 31, 2018 (ECF No. 245).

1.      Backpage's waiver of attorney-client privilege:  In his Reply, Sheriff Dart insists that "Backpage waived its attorney-client communications privilege in conjunction with entering its guilty plea on April 5, 2018."  (Sheriff's Reply at 12.)  Sheriff Dart then made the same point in his Supplement to his Motion for Sanctions (the "Supplement").  (*See* ECF No. 246.)  The issue of Backpage's waiver is unnecessary and irrelevant to the sanctions issue for three reasons.

First, in its Opposition to the Motion for Sanctions, DWT acknowledged that, under Rule 1.6(b)(5) of the ABA Model Rules of Professional Conduct, "an attorney may use privileged communications in defense of a claim challenging the attorney's conduct."  (DWT Response at 1.) Contrary to the improper suggestions of the Sheriff in his Supplement, DWT's position was – and is – that the attorney-client privilege has been waived with respect to this sanctions motion.  We

agree: subject to the second and third points below, DWT could have used formerly privileged communications between DWT and Mr. Ferrer in defending against the Motion for Sanctions.

<u>Second</u>, Sheriff Dart improperly implies that DWT could have used any privileged or formerly-privileged materials related to its representation of Backpage in responding to the Motion for Sanctions. However, Sheriff Dart fails to mention that before entering into the plea agreements on April 5, Mr. Ferrer and Backpage were part of joint defense agreements with other individuals which complicates Mr. Ferrer's purported unilateral waiver of the privilege. If DWT were relying on the waiver, DWT would need to navigate the contours of these joint defense agreements. Likewise, while Rule 1.6(b)(5) allows for the permissive disclosure of privileged materials in responding to a claim, there are limits in that "the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense." Model Rules of Prof'l Conduct R. 1.6(b)(5) (Comment 10). While the Sheriff tries to assign nefarious motivations to DWT's professional and measured decision to not disclose its former client's privileged and confidential information (at this point), the truth is no such disclosure was necessary even if it was permitted.

<u>Third</u>, and most importantly, DWT made clear in its response that it was not relying on Rule 1.6(b)(5) and was not using formerly privileged materials in response to the Motion for Sanctions because Sheriff Dart has established <u>no</u> basis for sanctions under the law or the facts. (DWT Response at 1.) That is still the case after Sheriff Dart's Reply and Supplement.

2.    <u>Seeking sanctions against individual lawyers</u>: At page 12 of the Reply, under the guise of making an alternative argument seeking discovery and an evidentiary hearing, the Sheriff contends for the first time that sanctions should be imposed individually against attorneys James Grant and Robert Corn-Revere, two partners at DWT. While totally baseless, this argument has been waived. *Salmans v. Byron Udell & Assocs.*, Inc., No. 12 C 3452, 2013 WL 707992, at *1 n.1

(N.D. Ill. Feb. 26, 2013) (Tharp, J.) (finding that issues raised for the first time in reply that could and should have been raised in an opening brief are waived in order to prevent "sandbagging"); *Ferris Mfg. Corp. v. Carr*, No. 14 C 04663, 2015 WL 279355, at *5 n.4 (N.D. Ill. Jan. 21, 2015) (Tharp, J.) (noting that arguments raised for the first time in reply are waived) (citing *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 526 (7th Cir. 2013)); *see also RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, No. 90 CIV. 4918 (LMM), 1991 WL 136035, at *5 n.7 (S.D.N.Y. July 18, 1991) (denying sanctions against attorneys requested for the first time in reply).

We acknowledge that the Sheriff's Motion asked for sanctions against Backpage and its "lawyers" and that Mr. Corn-Revere's name was mentioned in the Motion for Sanctions because he was involved in the Senate investigation. (Sheriff's Motion at 14.) However, at no time in the sanctions motion were sanctions sought individually or specifically against Mr. Grant or Mr. Corn-Revere. Indeed, Mr. Grant's name does not appear anywhere in the sanctions motion. On May 17, Jeff Colman and John Storino of Jenner & Block LLP filed appearances for DWT, and DWT filed its Opposition to the sanctions motion. No appearances were filed for Mr. Grant or Mr. Corn-Revere. For the reasons set forth in DWT's Opposition, no sanctions are warranted against the firm, and none are warranted against any of its individual lawyers. But, this Court should strike and/or otherwise disregard the belated request for sanctions against individual attorneys. *See Salmans*, 2013 WL 707992, at *1 n.1. It simply would be a denial of due process and fair treatment to consider sanctions against individual lawyers without affording them an opportunity to be heard.

3. <u>Invoking Rule 37 as a basis for sanctions</u>: In his Motion, Sheriff Dart expressly relied upon Federal Rule of Civil Procedure 26(g)(3), 28 U.S.C. § 1927, and the inherent powers of the Court. (Sheriff's Motion at 1.) For all of the reasons set forth in DWT's Opposition, there is no basis for sanctions under § 1927, the inherent powers of the Court, or Rule 26(g)(3). While

Sheriff Dart mentioned Rule 37 in passing in the Motion for Sanctions,[1] Sheriff Dart is now – for the first time – specifically requesting sanctions under Federal Rule of Civil Procedure 37.  (*See* Sheriff's Reply at 2, 10.)  Indeed, in his Motion for Sanctions, Sheriff Dart develops <u>no</u> argument that supports sanctions under Rule 37.  The only purported Rule 37 authority in the Motion for Sanctions is *Khalil v. Town of Cicero*, 916 F.2d 715 (7th Cir. 1990), which involved sanctions under Federal Rule of Appellate Procedure 38 and had nothing to do with Rule 37.

The Sheriff's new argument that sanctions are warranted under Rule 37 is waived by his failure to raise and develop it in his sanctions motion.  *See Ferris Mfg. Corp.*, 2015 WL 279355, at *5 n.4; *B/P Servs., Inc. v. Target Corp.*, No. 16-CV-04403, 2017 WL 4180301, at *3 (N.D. Ill. Sept. 21, 2017) (Tharp, J.) (noting that "[p]erfuctory or undeveloped arguments are waived"); *Wipf v. Kowalski*, No. 4:05-CV-4078-JPG, 2006 WL 1064068, at *1 (S.D. Ill. Apr. 21, 2006) (finding that plaintiff waived argument for Rule 37 sanctions by raising it for the first time in its reply).

Moreover, the cases cited in the Sheriff's Reply at pages 2 and 10 do not in any way support his argument for sanctions under Rule 37.  Contrary to the Sherriff's argument (Sheriff's Reply at 10), in *Hall v. John* the Supreme Court did not address the issue of sanctions pursuant to the Federal Rules of Civil Procedure.  412 U.S. 1, 4–5 (1973).  Indeed, *Hall* had absolutely nothing to do with Rule 37.  The Sheriff also cites (Sheriff's Reply at 2) to the Seventh Circuit's decisions in *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997), *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 583 n.6 (7th Cir. 1981), and *Margoles v. Johns*, 587 F.2d 885, 889 (7th Cir. 1978) to support his argument that no evidentiary hearing is required under Rule 37.  These cases have

---

[1] In the Motion for Sanctions, Sheriff Dart also referenced Rules 11, 26, and 56 in passing, but he is not now.  As with Rule 37, Sheriff Dart has waived his argument for sanctions under these rules by failing to develop arguments and cite to pertinent authority.  *See Weinstein v. Schwartz,* 422 F.3d 476, 477 n.1 (7th Cir. 2005) (finding that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

no bearing here because those decisions involved noncompliance with the district courts' specific discovery orders where there had been briefing and affidavits recounting the circumstances of noncompliance. *See, e.g.*, *Langley by Langley*, 107 F.3d at 515. Neither the Sheriff's Reply nor the Sheriff's Motion identifies any court orders which DWT has failed to comply with; accordingly, there is no basis for Sheriff Dart's vague and belated invocation of Rule 37.

4.      <u>Misstatements</u>:  As in his sanctions motion, the Sheriff's Reply is replete with gross generalizations, misstatements of the record, and distortions.  The Sheriff asserts that he has presented "evidence," and he even faults DWT for not submitting any affidavits. (Sheriff's Reply at 1–2.)  But, the Sheriff has not submitted evidence of any kind that DWT engaged in sanctionable conduct.  Instead, the Sheriff relies on insults and innuendo.  Suffice it to say that, in its Opposition, DWT demonstrated that each of the so-called "Red Flags" were all matters that were previously known to the Sheriff, argued before the Court, and baseless insofar as the Sheriff  repeatedly attempted to use them to falsely try to justify his First Amendment violations.  (DWT Response at 3, 12–15.)  The purported Red Flags were nothing new and they provide no legitimate basis for sanctions. Now, in his Reply, the Sheriff makes three new arguments that are simply false.

<u>First</u>, at pages 4 and 5 of the Reply, the Sheriff asserts that:  "Later, on January 10, 2017, Robert Corn-Revere submitted written testimony to the Senate indicating his firm had been involved in issues pertaining to Backpage's editing functions for '20 months.'"  From this quote, the Sheriff asserts, "This means that DWT counseled Backpage about its editing practices—and thereby became charged with investigating those practices—no later than May 2015, two months *before* Backpage filed its deceitful civil rights complaint."

The Sheriff's quotation and conclusion are both brand new and demonstrably false because Mr. Corn-Revere actually stated:

> Over the course of the past approximately 20 months, Backpage.com and certain of the witnesses appearing today have consistently asserted their First Amendment rights with respect to the Subcommittee's demands for information regarding Backpage's core editorial function: the determination of what third party content the website would publish, and what content it would not. These issues have been discussed extensively with Subcommittee staff, and while the Subcommittee has made its position on this matter known, the validity of these assertions of constitutional rights is currently pending before the U.S. Court of Appeals for the D.C. Circuit.

*Backpage.com's Knowing Facilitation of Online Sex Trafficking: Hearing on S. 115-6 Before the Permanent Subcomm. on Investigations of the S. Comm. on Homeland Sec. and Gov't Aff.*, 115th Cong. 114 (2017) (statement of Robert Corn-Revere). The quoted words of Mr. Corn-Revere bear no resemblance to the proposition that Sheriff Dart cited the statement for, and nothing in Mr. Corn Revere's Senate testimony justifies an award of sanctions.

Second, at page 9 of the Reply, the Sheriff asserts for the first time that DWT attempted to mislead the Court through Mr. Grant's affidavit (ECF No. 160-1) that challenged the Sheriff's "Red Beauty Sting Operation." The Sheriff's repackaging of his failed "Red Beauty" argument as a "Red Flag" is, in reality, a red herring. The Sheriff does not explain how the sequence of events and the documents in Mr. Grant's affidavit are untrue, and the Sheriff ignores the Court's earlier rejection of the Sheriff's "Red Beauty" argument:

> [T]he sheriff's theory[] completely ignores the law of prior restraint as the Seventh Circuit has interpreted it in this case specifically. The Seventh Circuit has said that the sheriff's conduct constitutes a prior restraint, and we're not free to ignore that. Even if you accept Dart's position that Backpage is committing sanitizing otherwise illegal ads and participating therefore in the posting of illegal ads, the answer to that problem is to investigate and prosecute Backpage. It is not to impose an informal prior restraint on speech.

(Aug. 9, 2016 Tr., at 7:19-8:3, ECF No. 174.) Consequently, Sheriff Dart cannot demonstrate that Mr. Grant's affidavit and Backpage's corresponding Opposition to Sheriff Dart's Motion for Leave

6

to Amend Affirmative Defenses (ECF No. 160) unreasonably and vexatiously multiplied the proceedings in any manner that warrants imposing sanctions. *See Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994).

Third, while we believe it to be another classic red herring, the Sheriff contends at page 10 of his Reply that Mr. Ferrer left the United States because he knew the Senate subcommittee was calling for his testimony. The Sheriff then cites to ECF No. 162-2, but that document does not exist and ECF No. 162 (attached as Exhibit 1) does not in any way, shape, or manner support the Sheriff's contention. The Sheriff might be trying to cite to a letter from his counsel to Mr. Grant (ECF No. 160-3), but even that document (attached as Exhibit 2 at 3) does not support the Sheriff's contention that "before he left the country, CEO Ferrer knew that the Senate subcommittee was calling for his testimony." (Sheriff's Reply at 10.)

This was hotly contested litigation by both sides, and the Sheriff obviously feels aggrieved. But, no matter how much he may protest, the Sheriff violated the First Amendment and the lawyers at DWT conducted themselves in a highly professional and skilled manner. For all of the reasons set forth in DWT's Opposition, and this Surreply, the Sheriff's Motion for Sanctions should be denied and this matter should be concluded.

Respectfully submitted,

s/ John R. Storino
Jeffrey D. Colman
John R. Storino
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel.: 312-222-9350
Fax: 312-527-0484

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 8, 2018, I caused to be served a copy of DWT's Surreply in Opposition to Defendant's Motion for Sanctions via the Court's ECF system on all counsel of record registered through that system to receive electronic filings in this case.

BY:    <u>s/ John R. Storino</u>
Jeffrey D. Colman
John R. Storino
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel.: 312-222-9350
Fax: 312-527-0484