**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BACKPAGE.COM, LLC,

              Plaintiff,

    v.

THOMAS J. DART,
Sheriff of Cook County, Illinois,

              Defendant.

Civil No. 1:15-cv-06340

Judge John J. Tharp, Jr.

## ORDER

Sheriff Dart's motion for partial consideration [254] is denied. See Statement for details.

## STATEMENT

On March 25, 2019, this Court granted a motion by Sheriff Dart for the imposition of sanctions on Backpage.com based on misrepresentations of fact it made in the course of this proceeding. At the same time, the Court denied Sheriff Dart's motion to the extent that it sought sanctions against Backpage.com's counsel, DavisWright Tremaine LLP ("DWT"). The Court denied the motion for sanctions against DWT largely because the Sheriff had identified no clear evidence that DWT was aware that the representations of the company concerning its activities were false: "[T]he Sheriff's motion falls short in documenting any instance in which counsel (as distinguished from Backpage) made or facilitated a specific representation of fact that was known to be untrue when it was made."

The Sheriff has moved for reconsideration of the denial of its request for sanctions against DWT based on what it says is "the discovery of new evidence" regarding Backpage's workarounds pertaining to transactions with credit card companies and its use of cryptocurrencies as a substitute means of payment. Specifically, Sheriff Dart points to statements provided by Carl Ferrer, Backpage.com's former CEO, in a June 2018 declaration filed in a related criminal proceeding indicating that "DWT provided legal advice concerning a range of additional legal issues, including credit card payment processing issues and cryptocurrency issues."[1] This means, according to the

---

[1] According to the Sheriff's motion (at 5), the Ferrer declaration also states that DWT provided this advice by means of scores of telephone conversations and hundreds of email communications. That is not an accurate characterization of the declaration, which actually states that Ferrer had scores of calls and hundreds of emails with DWT

Sheriff, that "we now know that not only did DWT have specific proof via the California Indictment that Backpage was able to circumvent the credit card bans to gain significant income from commercial transactions for at least one year following the filing of its complaint against the Sheriff, but that DWT was counseling Backpage on these very issues." Motion, ECF No. 254, at 5. "This," the Sheriff contends, "is damning testimony against DWT."

The Court is not persuaded. The Ferrer declaration confirms only that DWT provided legal advice to Backpage on these subjects, not that it knew that any specific representations made by Backpage during this proceeding were false. And, indeed, given Mr. Ferrer's plea agreement, which requires complete and truthful cooperation with government prosecutors, one would expect that, if Mr. Ferrer could provide testimony that DWT actually knew that representations made by Backpage in court proceedings were false, that testimony would now be of record. The mere fact that DWT provided legal advice regarding credit card processing issues and cryptocurrency issues does not warrant an inference that DWT knowingly defrauded the Court by advancing an argument that Backpage.com would be irreparably harmed if its customers (*all* customers, not just those placing ads in the adult services section) were unable to pay for advertisements with credit cards. Indeed, the filing of this law suit easily fits within the description of legal advice that DWT might have provided with respect to "credit card processing issues," as the law suit is based on the claim that the Sheriff threatened (that's how DWT characterized it and the Seventh Circuit agreed) Visa and MasterCard to stop processing credit card payments for Backpage. Knowing that DWT provided "legal advice" concerning "credit card payment processing issues" thus tells us nothing new at all. So, too, Ferrer's statement that DWT's legal advice extended to cryptocurrency issues." It comes as no surprise to this Court that Backpage.com was exploring any number of alternative means of payment for advertising to fill the void resulting from termination of their ability to take credit card payments. That DWT provided advice about cryptocurrencies does not begin to show that it knew the extent of cryptocurrency revenues Backpage was receiving, much less that acceptance of cryptocurrencies would in fact make up for losses Backpage experienced as a result of the termination of payment processing by credit cards.

Accordingly, the Court denies the Sheriff's motion for reconsideration.

Date: February 18, 2020

_____
John J. Tharp, Jr.
United States District Judge

---

attorneys about a host of matters, not just the two identified by the Sheriff. See ECF No. 254-2 at ¶ 16 ("In my role as CEO of Backpage.com, DWT provided legal advice concerning a range of additional legal issues, including credit card payment processing issues and cryptocurrency issues.").